**VERONICA A.F. NEBB**
City Attorney, SBN 140001
**BY:    KATELYN M. KNIGHT**
Assistant City Attorney, SBN 264573
**CITY OF VALLEJO**, City Hall
555 Santa Clara Street, 3rd Floor
Vallejo, CA  94590
Tel:    (707) 648-4545
Fax:    (707) 648-4367
Email: katelyn.knight@cityofvallejo.net

Attorneys for Defendants CITY OF VALLEJO and SHANE BOWER

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| RYAN MCMAHON, an individual, <br>                     Plaintiff, <br><br>          vs. <br><br> JOHN WHITNEY, SHANE BOWER, CITY OF VALLEJO; and DOES 1 through 10, inclusive, <br>                     Defendants. | Case No. 2:23-cv-01972-KJM-JDP <br><br> **DEFENDANTS' CITY OF VALLEJO AND SHANE BOWER'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:   January 26, 2023 <br> Time:  10:00 a.m. <br> Courtroom:    3, 15th Floor <br> Judge:  Hon. Kimberly J. Mueller |

Pursuant to Federal Rule of Evidence 201, Defendants City of Vallejo and Shane Bower respectfully request that the Court take judicial notice of the following facts and documents in support of Defendants' Motion to Dismiss pursuant to Federal Rule of Evidence 201(b)(2):

1.      Verified Complaint, omitting exhibits, filed by John Whitney in the matter of *Whitney v. City of Vallejo, et al.*, Solano County Superior Court, Case No. FCS055842, a true and correct copy of which is attached hereto as Exhibit A.

2.      That Patrick Buelna is counsel of record representing the Plaintiffs in *McCoy et al. v. City of Vallejo, et al.*, Eastern District Case No. 2:19-cv-00191-JAM-CKD.

3.      That Ryan McMahon is a named Defendant in *McCoy et al. v. City of Vallejo, et al.*, Eastern District Case No. 2:19-cv-00191-JAM-CKD.

4.     The Complaint filed in the instant action, a true and correct copy of which is attached hereto as Exhibit B.

DATED:  November 13, 2023                    Respectfully submitted,


                                             _/s/ Katelyn M. Knight_____
                                             KATELYN M. KNIGHT
                                             Assistant City Attorney
                                             Attorney for Defendants CITY OF VALLEJO
                                             and SHANE BOWER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**EXHIBIT A**

28

1    Alison Berry Wilkinson, SBN 135890
2    Berry | Wilkinson | Law Group
     165 North Redwood Drive, Suite 206
3    San Rafael, CA 94903
     Telephone/Facsimile: 415.259.6638
4    Email: alison@berrywilkinson.com

5    Attorneys for Plaintiff-Petitioner
     JOHN P. WHITNEY



FILED/ENDORSED
Clerk of the Superior Court

DEC 2 2 2020

By X. Shong
DEPUTY CLERK

$435- CM FF395432

**By Fax**

RECEIVED
PERSONAL SERVICE
JANUARY 20, 2021
CITY ATTORNEY'S OFFICE
CITY OF VALLEJO

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SOLANO

11    JOHN P. WHITNEY,

12         Plaintiff-Petitioner,

13    v.

14    THE CITY OF VALLEJO and its
15    POLICE DEPARTMENT, CHIEF
     JOSEPH ALLIO, CHIEF ANDREW
16    BIDOU, AND CITY MANAGER
17    NYHOFF

18         Defendants-Respondents.

CASE NO. FCS055842

**VERIFIED PETITION FOR WRIT OF
MANDATE; COMPLAINT FOR
DAMAGES**

**[Code of Civil Proc. §1085; Government
Code §§ 3304, 3309.5; Labor Code section
1102.5; Cal. Const. Art. 1, Section 1; Penal
Code sections 502 and 1546]**

19

20      Plaintiff-Petitioner JOHN P. WHITNEY hereby alleges, as follows:

21        **INTRODUCTION AND NATURE OF THE CASE**

22      The City of VALLEJO and the VALLEJO POLICE DEPARTMENT retaliated

23 against Captain JOHN P. WHITNEY for speaking truth to power. When Captain

24 WHITNEY protested and reported unlawful, unethical, and corrupt behavior, his efforts to

25 professionalize the VALLEJO POLICE DEPARTMENT were spurned, and he was

26 punished for his whistleblowing activities. Rather than reward Captain WHITNEY's

27 efforts to ensure professional policing for the betterment of the community. an excuse to

28

**ASSIGNED TO
JUDGE Wendy G. Getty
FOR ALL PURPOSES**

1

2  Alison Berry Wilkinson, SBN 135890
   Berry | Wilkinson | Law Group
3  165 North Redwood Drive, Suite 206
   San Rafael, CA 94903
   Telephone/Facsimile:  415.259.6638
4  Email:  alison@berrywilkinson.com

5  Attorneys for Plaintiff-Petitioner
   JOHN P. WHITNEY

6

7

8                SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                    IN AND FOR THE COUNTY OF SOLANO

10

11  JOHN P. WHITNEY,
                                          CASE NO.
12           Plaintiff-Petitioner,
                                          **VERIFIED PETITION FOR WRIT OF**
13  v.                                    **MANDATE; COMPLAINT FOR**
                                          **DAMAGES**
14  THE CITY OF VALLEJO and its
15  POLICE DEPARTMENT, CHIEF             **[Code of Civil Proc. §1085; Government**
    JOSEPH ALLIO, CHIEF ANDREW          **Code §§ 3304, 3309.5; Labor Code section**
16  BIDOU, AND CITY MANAGER             **1102.5; Cal. Const. Art. 1, Section 1; Penal**
    NYHOFF                              **Code sections 502 and 1546]**
17

18           Defendants-Respondents.

19

20       Plaintiff-Petitioner JOHN P. WHITNEY hereby alleges, as follows:

21                  **INTRODUCTION AND NATURE OF THE CASE**

22       The City of VALLEJO and the VALLEJO POLICE DEPARTMENT retaliated

23  against Captain JOHN P. WHITNEY for speaking truth to power.  When Captain

24  WHITNEY protested and reported unlawful, unethical, and corrupt behavior, his efforts to

25  professionalize the VALLEJO POLICE DEPARTMENT were spurned, and he was

26  punished for his whistleblowing activities.  Rather than reward Captain WHITNEY's

27  efforts to ensure professional policing for the betterment of the community, an excuse to

28

terminate Captain WHITNEY was crafted and the CITY unilaterally refused to permit him to use the mandated review processes that would have revealed it was a sham.

Through this action, Petitioner seeks to compel the City of Vallejo to set aside his termination as procedurally flawed, comply with constitutional due process as well as the Public Safety Officers' Procedural Bill of Rights Act (Government Code section 3300 *et seq.*) and the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association, provide him fair process, compensate for his lost wages and benefits, as well as hold the City accountable for having retaliated against a whistleblower.

## THE PARTIES

1.     **Plaintiff-Petitioner JOHN P. WHITNEY** (hereafter "Whitney," "Captain Whitney," or "Plaintiff") is an experienced, veteran law enforcement professional. Plaintiff began his employment with the City of Vallejo in 2000 where he continuously served as a full-time sworn peace officer as that term is defined by Penal Code section 830.1 until his summary termination on August 26, 2019. At the time of his employment termination, Mr. Whitney had ascended through the ranks from the classification of police officer to police captain.

2.     By bringing this action to enforce his legal rights, Mr. Whitney does not waive the confidentiality privilege provided under Penal Code section 832.7 for any of the confidential personnel records at issue herein.  As the City has already improperly released confidential personnel file materials in response to Public Records Act requests made by private citizens, Captain Whitney hereby provides notice that he intends to seek an Order maintaining under seal and preventing public disclosure of the remainder of his privileged documents.   References to the underlying facts contained herein are presented in a summary fashion to balance the need to preserve this statutory confidentiality while complying with the Court rules, and does not constitute a waiver of the confidentiality

provided by Penal Code section 832.7 for any of the information gathered or relied upon in connection with the issues identified herein.

3.      **Defendant-Respondent CITY OF VALLEJO** (hereafter "City" or "Defendant") is, and at all times herein relevant was, a Charter City located in Solano County, California. The City is organized and operates under the California Constitution and the laws of the State of California.

4.      Pursuant to Charter Section 106, the City uses a "Council-Manager" form of Government. The City Council and the Mayor are the elected officers responsible for appointing a City Manager to manage the City's day to day affairs as the "chief executive and administrative officer of the City." (City Charter Article III; City Charter Article IV, Section 400.) The City Council and the Mayor are required to deal with City officers and employees solely through the City Manager. (*Id.* at Section 503.) A true and correct copy of the City of Vallejo Charter (hereafter "Charter") is attached hereto as Exhibit G.

5.      **Defendant-Respondent VALLEJO POLICE DEPARTMENT** (hereafter "Police Department," "Department" or "Defendant") is, and all times herein relevant was, a public safety department organized and existing under the laws of the State of California, the California Constitution, and the City Charter. The Department's statement of Core Values includes a commitment to, among other things, (1) maintaining "professional and ethical standards of leadership, communication, and responsibility," (2) high standards of integrity; and (3) "foster[ing] a quality culture throughout the organization." A true and correct copy of the Department's Mission Statement and Core Values is attached hereto as Exhibit H. All members of the Department are obligated to adhere to these core values. At all times herein pertinent, Captain Whitney adhered to these values.

6.      **Defendant-Respondent City MANAGER GREG NYHOFF** (hereafter "Nyhoff" or "City Manager") is, and at all times herein relevant was, the chief executive

-3-

and administrative officer for the City. Mr. Nyhoff was appointed as the City Manager on January 22, 2018.  Pursuant to City Charter Section 500, Mr. Nyhoff's duties include:

    a.  Appointing, suspending and removing all City employees and appointive administrative officers.  The City MANAGER may "authorize any administrative officer who is subject to his/her direction and supervision to exercise these powers with respect to subordinates in that officer's department, office or agency." (Exhibit G at Article V, Section 500(a).)

    b.  Directing and supervising the administration of all departments, offices and agencies of the City.  (*Id.* at Section 500(b).)

    c.  Investigating "the operations of the departments and other agencies of the City" to "assure proper performance." (*Id.* at Section 500(i).)

    d.  Appointing Department Heads and Acting Department Heads when necessary.  (Exhibit G at Article V, Section 501.)

    e.  Employing "experts or consultants to perform work or give advice connected with the departments of the City" when necessary.  (*Id.*)

7.    **Defendant-Respondent CHIEF ANDREW BIDOU** (hereafter "Bidou" or "Chief Bidou") was the Chief Executive Officer of the Police Department from October 2014 to June 30, 2019, when he retired.   During that time period, and pursuant to Charter Article V, Section 501, Bidou reported to the City Manager for the efficient administration of the Police Department.  Bidou replaced Joe Kreins, who had served as the Police Chief from July 2012 to October 2014.

8.    **Defendant-Respondent CHIEF JOSEPH ALLIO** (hereafter "Allio" or "Chief Allio") replaced Bidou as the Chief Executive Officer of the Police Department in June 2019, a position he held until November 2019 when a permanent police chief was appointed.   During that time period, and pursuant to Charter Article V, Section 501, Allio reported to the City Manager for the efficient administration of the Police Department.

9.     At all times herein pertinent, the City, the City Manager, its Police Chiefs, and the Police Department had an obligation to abide by the California Constitution, all laws of the State of California, and all local policies and procedures.

**JURISDICTION AND VENUE**

10.     At all times herein relevant, JOHN WHITNEY held peace officer status pursuant to Penal Code section 830.1, and, as such, was entitled to all the rights and protections afforded by the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.* (hereafter "POBR").

11.     This action seeks, in part, to enforce the mandates contained in the POBR, which is "concerned primarily with affording individual police officer's certain procedural rights during the course of proceedings which might lead to the imposition of penalties against them." (*Los Angeles Police Protective League v. City of Los Angeles* (1995) 35 Cal. App. 4th 1535, 1540 [citing *White v. County of Sacramento* (1982) 32 Cal. 3d 676].) As noted by the California Supreme Court, the "[p]rotection of peace officers from abusive or arbitrary treatment in their employment is the essence of the Act." (*Pasadena Police Officers' Assn. v. City of Pasadena* (1990) 51 Cal. 3d 564, 572.)

12.     Among the POBR rights Petitioner seeks to enforce is the right to secure the fair disciplinary appeal hearing process required by Government Code section 3304(b). Although the procedures for a disciplinary appeal hearing are left to the agency to formulate (see, Gov't C. §3304.5), those procedures "are subject to scrutiny" by the courts to determine whether they satisfy the principles of fairness and constitutional due process. (*Giuffre v.* Sparks (1999) 76 Cal. App. 4th 1422, 1331 [citing *Runyan v. Ellis,* 40 Cal. App. 4th 961, 964-965).) Indeed, in *Los Angeles Police Protection League v. City of Los Angeles* (2002) 102 Cal. App. 4th 85, 92, the court held that in serious discipline cases, "it is imperative" public employers "use the procedures which have traditionally been associated with the judicial process."

-5-

13.     Government Code section 3309.5(a) makes it "unlawful for any public safety department to refuse to any public safety officer the rights and protections guaranteed" by POBR.

14.     Jurisdiction of the superior court over these POBR claims is granted by Government Code section 3309.5(b), which provides:

> The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this chapter.

(Gov't C. 3309.5(b).) "[T]he import of 'initial' in section 3309.5 is to remove the defense of failure to exhaust administrative remedies in the event the employee elects to go to court with his claim of [a POBR] violation." (*Daugherty, supra,* 24 Cal. App. 5th at 945 [citing *Alameida v. State Personnel Bd.* (2004) 120 Cal. App. 4th 46, 54.)

15.     A violation of POBR occurs when "any public safety department [denies or refuses] to any public safety officer the rights and protections guaranteed to him or her." (Gov't C. 3309.5(a); see also, *Daugherty v. City and County of San Francisco* (2018) 24 Cal. App. 5th 928, 945.) If a violation is found, the statute mandates the superior court "render appropriate injunctive or other extraordinary relief" to correct the violation, and authorizes as well monetary and punitive damages.

16.     Venue in the County of Solano is proper pursuant to Code of Civil Procedures sections 393 and 394.  This is an action against a "local agency" under the definition in section 394, and therefore venue is properly in the County in which the respondent is situated.  Further, under section 393, the cause of action arose based on decisions, actions, and omissions within the County of Solano.

## CLAIM PRESENTATION

17.     Pursuant to California Government Code sections 905, 910, and 915, WHITNEY initially presented his claim for damages to the City on February 21, 2020. An Amended Claim was filed on or around March 24, 2020.  The City did not give notice of claim rejection pursuant to Government Code section 913, nor did it provide written

-6-

notice pursuant to Section 915.4.  As a result, this action is timely filed within the limitations period set forth in Government Code section 945.6.

## FACTS AND ALLEGATIONS

**A.     *Employment History, Background, and Qualifications***

18.     John Whitney is a twenty-three (23) year career law enforcement veteran who served at the VALLEJO POLICE DEPARTMENT with distinction, and promoted through the ranks to the classification of Captain.

19.     Captain Whitney began his law enforcement career in 1996 at the Alameda County Sheriff's Office.  In 1997, Whitney transferred to the Solano County Sheriff's Office, where he worked patrol, SWAT, the Mobile Field Force, and in the Courts.  In 2000, Whitney transferred to the Vallejo Police Department as a police officer.  In 2007 he promoted to the rank of Sergeant, was promoted to the rank of Lieutenant in 2012, and then to the rank of Captain in 2015.   During the course of his law enforcement career, Captain Whitney:

  a.  Held a variety of assignments, including those detailed at length in his law enforcement resume, a true and correct copy of which is attached hereto as Exhibit A.

  b.  Was appointed as an Adjunct Professor at the Napa Valley College Criminal Justice Training Center in the Basic Police Academy, Dispatch Academy, and the Corrections Academy, where he is a master instructor in several topics. (Exhibit A at page 1.)

  c.  Received numerous commendations, true and correct samples of which are attached hereto as Exhibit B.

  d.  Received numerous letters of support, true and correct samples of which are attached hereto as Exhibit C.

  e.  Fulfilled the requirements for character, education, training and experience necessary to be awarded the following certificates from the California

Commission on Peace Officer Standards and Training:  Basic Certificate (1998), Intermediate Certificate (2000), Advanced Certificate (2005), Supervisory Certificate (2010), and the Management Certificate (2014). True and correct copies of these certificates are attached hereto as Exhibit D.

f.  Pursued college degrees and certificates, including, but not limited to, a Master's Degree in Law Enforcement and Public Safety Leadership from the University of San Diego (2019), a Master's Degree in Criminal Justice Administration from the Columbia Southern University (2007), a Bachelor's Degree from the Union Institute & University (2005), and certificates from the Harvard Kennedy School of Executive Education (2015, 2017, 2018), and Cornell University (2015, 2016).  True and correct copies of these certificates are attached hereto as Exhibit E.

g.  Received numerous awards, including, but not limited to, a Congressional Certificate of Recognition (April 2015), the Good Conduct Medal (April 2008, November 2010, May 2014, April 2017), the Medal of Merit (April June 2012, May 2014, April 2015), and the Medal of Courage (April 2008). True and correct copies of these awards are attached hereto as Exhibit F.

h.  On March 14, 2019, just five months before his termination, Whitney was awarded a Lifetime Achievement Award from the American Society for Industrial Security (ASIS) for his dedication to law enforcement, education, and community service.  (Exhibit F at page 8; Exhibit A at page 6.)

i.  On May 30, 2019, just three months before his summary termination, Whitney was presented with the prestigious Lifetime Achievement Award for Excellence in Training by the California Commission on Peace Officer Standards and Training ("POST"). (Exhibit F at pages 2-7.)

20.  Throughout his law enforcement career, Captain Whitney maintained a commitment to both modeling and enforcing high standards in the profession.  As a result,

-8-

he never hesitated to insist that those who failed to follow law and policy be held accountable, and to report to higher authorities when policies, procedures, and laws were not being followed.

21.     His personal commitment to professionalism and accountability should have been an asset to the Vallejo Police Department, but was instead derided, ignored, and repudiated.  Consequently, Whitney suffered retaliation in the form of unjust and unfounded accusations, and unwarranted criticism. Nonetheless, Captain Whitney persisted.  His continued commitment to professionalism and accountability ultimately lead to his summary termination.

**B.      *The Events Leading to Captain Whitney's Wrongful Termination***

22.     In December 2018, Chief Bidou learned that Captain Whitney was keeping notes about things happening in the workplace, as well as maintaining all his emails, and text messages as evidence of the toxic environment the Chief was fostering.  He then ordered Captain Whitney to regularly delete his emails and text messages at least weekly, if not more often.  At that time, Chief Bidou also inspected Captain Whitney's department-issued cell phone to make sure it was set to delete all texts.  Captain Whitney followed that order only because he had been informed that all the texts and emails he sent and received in his position were preserved on the City server and in backups, and therefore could not be permanently erased.  Six months later, on June 4, 2019, Chief Bidou then reversed positions, accusing Captain Whitney of violating the City's litigation hold policy and engaging in conduct unbecoming a police officer for destroying texts and emails in accordance with the order provided.  That accusation came on the heels of Captain Whitney reporting the Chief's mismanagement of the Police Department to the City Manager and the Mayor.

23.     In January 2019, Captain Whitney reported to the City Manager that there was a toxic environment at the police department, which did not support Captain Whitney's desire to perform at his highest level and was fostering an environment where

he could not express his honest opinion without fear of retaliation.  Captain Whitney told Mr. Nyhoff that he needed to work for a city that was transparent, worked collaboratively with the community, and was committed to doing the right thing.

24.    In January 2019, Captain Whitney also reported the hostile work environment to the Human Resources Director, who refused to accept the complaint.

25.    In following months, Captain Whitney made several other reports of malfeasance, mismanagement, and violations of law and policy to Police Department and City officials.

26.    For example, in February 2019, Captain Whitney reported that the sergeant of the detective bureau, a police union official, was mistreating a detective corporal. Captain Whitney investigated the situation, and believed that the treatment may have been discriminatory on the basis of race.  However, the Chief refused to initiate an investigation.

27.    Also, in or around February 2019, Captain Whitney discovered that the phrase *Veritas Aequitas* had been embedded on an officer's firearm end-plate.  Captain Whitney reported that discovery up the chain of command and advocated that an internal investigation be conducted of the incident.

28.    The officer who had the end-plate inscription was later placed on administrative leave, and was required to surrender his badge.  The badge that was turned in had two corners bent, which the officer explained signified the two people he had killed in the line of duty while serving as a Vallejo police officer.   Captain Whitney insisted the Chief conduct an internal investigation into whether members of the Vallejo Police Department were engaged in the unauthorized practice of badge bending.  Chief Bidou refused.

29.    Captain Whitney ordered all supervisors to inspect their subordinates' uniforms and collect any bent badges.  Approximately ten bent badges were produced. Concerned that the damage to so many badges could cost him his position as Interim

-10-

Chief, Bidou ordered the badges returned to the officers, who were instructed to fix them. Captain Whitney disagreed with that instruction, as it would destroy evidence and cover-up serious misconduct.  Consequently, Captain Whitney brought his concerns about the badges to Vallejo City Manager Greg Nyhoff and Mayor Bob Sampayan, as well as then-City Attorney Claudia Quintana.  No investigation was initiated despite those reports.

30.    From April 15-30, 2019, Captain Whitney served in the position of Acting Police Chief while Bidou was on vacation. In the role of Acting Chief, Whitney was a direct report to City Manager Nyhoff, and required to follow his lawful directives.

31.    On or around April 24, 2019, Whitney met with the City Manager as part of his duties and responsibilities as Acting Chief.  During the meeting, Defendant Nyhoff was angry that Police Department issues continued to negatively affect the reputation of the City, questioned Chief Bidou's statement that he had everything under control, and asked then-Acting Chief Whitney what he thought about Chief Bidou's ability to lead the Vallejo Police Department.  Whitney demurred, stating he preferred not to discuss it because if Chief Bidou founding out he had answered questions about him, he would suffer retaliation.  Mr. Nyhoff insisted.

32.    Having been ordered to answer his direct superior's inquiries, then-Acting Chief Whitney truthfully answered the questions posed by the City Manager.  One of those questions concerned where the supervisors were during the Taco Bell shooting on February 10, 2019.  Acting Chief Whitney told the City Manager that he only knew what was rumored.  The City Manager nonetheless required Acting Chief Whitney to report the rumor, which was that the supervisors were in the station watching Netflix at the time of the incident.   Captain Whitney had previously notified Chief Bidou of the rumor and insisted it be investigated. Chief Bidou informed Captain Whitney that he did not want to do the investigation because it might create a liability for failure to supervise.

33.    Then-Acting Chief Whitney also advised the City Manager that morale was the worst he had seen in 19 years, the police union had too much influence with Chief

-11-

Bidou, and the entire agency needed to be rebuilt from the ground up.  The City Manager advised Captain Whitney that because of Chief Bidou's mismanagement he intended to have independent auditors and the Department of Justice conduct a complete agency review of the Police Department.

34.     On or around April 25, 2019, a meeting was held with the City Manager, the Mayor, and two police captains, with Chief Bidou participating by phone.  The purpose of the meeting was to show the City Manager an incident video regarding a use of force that potentially could further negatively impact the reputation of the Police Department.  The City Manager and the Mayor questioned the merits of the video and the officers' actions. Chief Bidou and the other police captain advocated that the incident was justified.  When asked his opinion, Captain Whitney articulated that he felt the officers unnecessarily escalated the incident, that he did not agree with the use of the Taser, and felt Departmental training needed to be revised to focus more on de-escalation and tactical communications to prevent further such incidents. Chief Bidou became angry with Captain Whitney for his assessment that the training the Chief had provided the Department was inadequate, and that the incident was not justified.

35.     Later that same day the Mayor invited then-Acting Chief Whitney to a closed door meeting at which he specifically asked him about Chief Bidou's performance. Captain Whitney again demurred, expressing concern that he could be retaliated against for his honest opinions.  During the conversation, the Mayor told Captain Whitney that City Manager Nyhoff did not believe Chief Bidou was capable of running the Vallejo Police Department and expressed the opinion Captain Whitney should serve as Acting Chief until a replacement was found.  The Mayor further advised that Chief Bidou would be informed of this plan upon his return from vacation.

36.     On or around April 26, 2019, prior to Chief Bidou returning from vacation, the City issued a press release announcing that it had formally invited the Department of

-12-

Justice "to improve our police department" and help "ensure alignment with operational best practices."

37.     On April 30, 2019, when Chief Bidou returned from vacation, he shared his anger over the Department of Justice being brought in to assist, and was upset he had not been informed in advance of the press release.

38.     Within weeks of Whitney reporting mismanagement of the department to the City Manager and the Mayor, Chief Bidou ordered an investigation into Captain Whitney. On May 22, 2019, Captain Whitney was served with a Notice of Interview alleging he passed confidential information to unauthorized persons. On May 28, 2019, Captain Iacono advised Captain Whitney that he was being placed on administrative leave for having engaged in a "tactically inappropriate" conversation with the Mayor.

39.     During the internal investigation, Captain Whitney learned that the Chief claimed he had leaked the confidential information which ultimately resulted in Otis Taylor making two public records requests on or around April 15, 2019. Despite numerous members of the Department being aware of the information related to the events that were allegedly leaked, only Captain Whitney was singled out as the only accused officer.

40.     The first request, PRA #19-212 sought "communications, internal affairs reports or other records that contain *Aftermarket parts* and/or *Veritas Aequitas.*" This request clearly related to the phrase *Veritas Aequitas* being embedded on an officer's firearm endplate, which was discovered in February 2019 during a weapons functionality test following an officer-involved shooting incident. Captain Whitney reported that discovery up the chain of command and advocated that an internal investigation be conducted of the incident. Multiple other members of the Police Department were also aware of the incident but were not investigated as the source of the leak.

41.     The second request, PRA #19-213 sought information regarding Vallejo Police Department Case No. 18-1399, which resulted in an internal investigation into

-13-

whether the incident was properly handled by the involved officers. Multiple other members of the Police Department were also aware of the events and allegations but were not investigated as the source of the leak.

42.     At the conclusion of the investigation, the Department did not sustain the charge that Captain WHITNEY was the source of the leak that resulted in the public records requests.

43.     Nonetheless, on August 26, 2019, the Police Department summarily terminated Captain Whitney's employment.

44.     Captain Whitney was informed that the reason for the termination was his allegedly having deleted personal content from his department-owned cell phone before turning it in for inspection. The information deleted included the applications he used for personal banking, retirement planning, medical services, to control the garage door at his residence, and to access to his wife's iCloud account, as well as family photos that depicted his wife and daughter on the beach in swim attire.

45.     The Vallejo Police Department permits command staff members to use their work phones for personal purposes.

46.     City of Vallejo Administrative Rule 2.33 also permits personal use of work phones so long as it does not interrupt the workday or hinder system operations.

47.     The Vallejo Police Department does not have a policy that prohibits deleting personal (or even work) content maintained on an assigned department phone.  The policy only requires that supervisors "retain" records that pertain "to threatened or actual litigation." (City of Vallejo Administrative Rule No. 4.7; *see also*, Vallejo Policy Manual section 702.2.) Those records are retained not only on individual devices, but also through the backups and servers in place for long-term information storage.  None of the material deleted pertained to threatened or actual litigation.

48.     Before turning his phone in for inspection as requested by the Police Department on May 28, 2020, Captain Whitney followed the procedure that had been

-14-

taught to him by the Vallejo Police Department's Information Technology Manager on the other occasions he had been required to turn in his phone. During that training, Captain Whitney had been advised that if he followed the protocol, no work-related materials would be destroyed, as the materials are maintained on a server, and a backup of the phone would reconstruct all the data that was on his phone if a subpoena issued for its contents.

49.     Captain Whitney's Department-issued cell phone was an Apple iPhone XS Max that he had named "PC XS." The IMEI Number was 35 727009854242 4. Captain Whitney was the sole authorized possessor of that device.

50.     On May 28, 2019, the phone was turned into the Vallejo Police Department. It was never returned.

51.     Although the Police Department contended Captain Whitney committed a "factory reset" that deleted all the content of his phone, the evidence he was provided at the time of his summary termination proved otherwise. A photograph of his phone taken after it was turned in showed unread emails, calendar and text message notifications, and four application pages. Captain Whitney contends this evidence shows his phone was either never erased, or was restored from a backup.

52.     Further, despite the alleged "factory reset," the Department was able to access the personal information Captain Whitney had tried to remove in order to protect his personal and family privacy.

53.     Specifically, Whitney's personal Gmail account was accessed on June 3, 2019 at 1501 by a device identified as "554 iPhone." The number "554" was Captain Whitney's badge number while at the Vallejo Police Department. Captain Whitney then blocked that iOS device from his personal Gmail account. That unauthorized access by the City of Vallejo was a crime. (See, e.g., Penal Code section 502.)

54.     On June 4, 2019, Captain Whitney was unable to log into his University of San Diego college account and email. Captain Whitney investigated, and was informed

-15-

an unknown iOS device had tried to access the account so it had been locked.  Captain Whitney had not attempted such access.

55.     On June 8, 2019 at 0818 hours, Captain Whitney was looking at his family iCloud account and discovered a device labeled "PC XS" had tried to gain access.  "PC XS" was the name Captain Whitney had given to his Vallejo Police Department phone. Captain Whitney tried to locate his department phone using the "Find My iPhone" application, but discovered that function had been shut off and so he could not track the device.  Captain Whitney then deleted the device from his account.

56.     On June 28, 2019 at 1735 hours, Captain Whitney discovered his old Vallejo Police Department iPhone XS Max, using the name "PC XS" that he had given it while employed, had again attempted accessed his wife's iCloud account.  That unauthorized access by the City of Vallejo was a crime.  (See, e.g., Penal Code section 502.)  Captain Whitney again deleted the phone from his account.

57.     At the time of his termination, Captain Whitney was an at-will employee.

58.     Captain Whitney is informed and believes that the City was motivated to terminate him because of his having reported widespread mismanagement and opposed unlawful practices during Chief Bidou's tenure, including:

a.   Reporting to the Human Resources Department that Chief Bidou changed the 2017 sergeant's promotional examination to benefit applicant VPOA President Mat Mustard, who received an overall higher score than he would have if the original weighting of the test segments had been maintained.

b.   Reporting disparate treatment of employees who engaged in misconduct. For example, in 2017, after a police union official was observed kissing a female inside a city vehicle while on duty, Captain Whitney conducted an informal inquiry, gathered evidence, and recommended a formal investigation be conducted.  Chief Bidou denied that request.  Captain Whitney protested, reminding Chief Bidou he had previously fired another

-16-

officer for having a sexual relationship on duty, and that all employees should be treated the same.  Chief Bidou still refused to allow an investigation of the police union official.

c.  In July 2017, Captain Whitney became aware of a video related to the force used to arrest an individual who was working on his fence.  Captain Whitney notified Chief Bidou and recommended an internal investigation be conducted.  None was initiated. Captain Whitney protested that the Department was not properly reviewing use of force incidents and that allowing the matter to go uninvestigated would violate their responsibilities to ensure officers were using force properly.

d.  In February 2018, officers were dispatched to a domestic violence incident, activated their body worn cameras, and thereafter cleared the call with no report taken. A call from the San Francisco Police Department about the incident resulted in a review of the body worn camera footage. Captain Whitney raised concerns with regard to how the incident was handled by the officers, and advocated for an internal affairs investigation as it appeared the officers violated department policy.  Chief Bidou refused to initiate an investigation, claiming he had a deal with the union not to use body camera footage incident reviews to hold officers accountable.

e.  In September 2018, Captain Whitney objected to false statements being made by Captain Horton, as well as his neglects of duty.  Chief Bidou took the position there was nothing he could do about it and refused to take any action despite the fact that it was creating a toxic and hostile work environment for Captain Whitney.

f.  Captain Whitney refused to follow Chief Bidou's effort to get him to suborn perjury, and instead encouraged his employees to tell the truth rather than delete and conceal evidence related to the kidnapping of Denise Huskins,

-17-

specifically Chief Bidou had ordered a lieutenant to hold a press conference to "burn that bitch." Captain Whitney thereafter ordered the assigned detectives to continue the investigation that was previously declared a hoax, which resulted in the discovery of evidence that the kidnapping had occurred, and that Ms. Huskins had been raped.  When this was discovered, Chief Bidou ordered Captain Whitney not to apologize during his press conferences.  During the later lawsuit, Chief Bidou physically took Captain Whitney's phone and set it to delete messages because he was worried that there were texts related to the "burn that bitch" comment and his order not to apologize. Chief Bidou then told Whitney he was going to claim he did not remember making those comments and asked Captain Whitney to direct the lieutenant not to remember the comment also.  Captain Whitney refused to suborn perjury, disobeyed the Chief's unlawful directive, and instead encouraged the lieutenant to tell the truth.

## C. *Facts Related to the City's Failure to Provide Whitney the Process he was Due*

59.    After the City summarily terminated Captain Whitney on August 26, 2019, it contended he was not entitled to any pre-termination safeguards or appeal because he was an "at will" employee.

60.    The rights of an at-will, non-tenured civil servant when discharged were established forty years ago in *Lubey v. City and County of San Francisco* (1979) 98 Cal. App. 3d 340.  There, the court held that when the reason for the dismissal involves "charges of misconduct which 'stigmatize [the employee's] reputation, or 'seriously impair' his opportunity to earn a living … or which 'might seriously damage his standing and associations in the community," a "liberty interest" hearing must be held before the dismissal so that the employee has "an opportunity to refute the charge" and "to clear his name." (*Lubey, supra*, 98 Cal. App. 3d at 346.).

-18-

61.     The allegations against Captain Whitney and for which he was terminated qualify as sufficiently stigmatizing as to impact his reputation since they involve ethics violations and accusations of misconduct. Thus, he was entitled to a pre-termination due process hearing prior to his termination. No such proceeding occurred.

62.     Once he was terminated, the City also refused him an appeal hearing as required by the Public Safety Officers' Procedural Bill of Rights Act, as well as the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association. Those rights extend to at-will employees.

63.     Although Captain Whitney was permitted a post-termination meeting with Chief Allio, that process did not satisfy his statutory appeal rights, because the person who recommended and imposed his termination - Chief Allio - also presided over the appeal hearing.

64.     The meeting with Chief Allio post-termination did not satisfy either the requirements of the Public Safety Officers' Procedural Bill of Rights Act, the due process required by the California Constitution, or the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association, of which Captain Whitney was a member.

65.     The termination of Captain Whitney, as well as its refusal to provide him with adequate pre- and post-disciplinary process, was not based on any sustainable findings of misconduct, but because he insisted the CITY OF VALLEJO and its POLICE DEPARTMENT follow the law and standards of professionalism the community deserve.

66.     Indeed, the CITY's Mayor stated in a letter of recommendation issued after Captain Whitney's termination for future employers, as follows:

> I was absolutely shocked to learn that John's integrity, ethics, and
> professionalism was doubted and questioned. For as long as I've known
> John, his integrity has always been above reproach. Those that know
> John either professionally or socially will say the same.

-19-

1
2

> Frankly, I believe that because John spoke out about a negative culture on the Vallejo Police Department, his reputation was soiled by those that did not want any "dirty laundry" aired.

3    A true and correct copy of that letter is attached hereto as Exhibit I.

4      67.    The CITY OF VALLEJO and members of the VALLEJO POLICE

5 DEPARTMENT continued their campaign of harassment and retaliation even after

6 Captain Whitney was terminated, including sending a threatening letter about his wife,

7 spreading lies to potential employers, and interfering with his ability to secure gainful

8 employment elsewhere in law enforcement to support his family. These actions were

9 malicious, spiteful, oppressive, and in bad faith.

10

**FIRST CAUSE OF ACTION**
**PETITION FOR WRIT OF MANDATE**
**[Code of Civil Procedure Section 1085]**

11
12

13      68.    Plaintiff-Petitioner WHITNEY re-alleges and hereby incorporates by

14 reference all preceding paragraphs, inclusive, as though fully set forth at length in this

15 cause of action.

16      69.    At all times herein pertinent, the City, its Police Department, and

17 Defendant-Respondents Allio, and Nyhoff had a clear, present, and ministerial duty to

18 comply with the procedural rights afforded to Captain Whitney by the California

19 Constitution, the decision in *Lubey v. City and County of San Francisco* (1979) 98 Cal.

20 App. 3d 340, and the Public Safety Officers Procedural Bill of Rights Act, Government

21 Code section 3300 *et seq.*

22      70.    At all times herein pertinent, the City, its Police Department, and

23 Defendant-Respondents Allio, and Nyhoff have been and are able to perform the duties

24 contained in the California Constitution, the decision in *Lubey v. City and County of San*

25 *Francisco* (1979) 98 Cal. App. 3d 340, and the Public Safety Officers Procedural Bill of

26 Rights Act, Government Code section 3300 *et seq.*

27      71.    Plaintiff-Petitioner Whitney notified the City of Vallejo, its Police

28 Department, and Defendant-Respondents Allio and Nyhoff of their obligations under the

-20-

California Constitution and the Public Safety Officers Procedural Bill of Rights Act, Government Code section 3300 *et seq.* But they refused to comply.

72.     Other than this lawsuit, Plaintiff-Petitioner Whitney has no plain, speedy, and adequate remedy in the ordinary course of law to stop the City, its Police Department, and Defendant-Respondents Allio, and Nyhoff from violating the California Constitution, the decision in *Lubey v. City and County of San Francisco* (1979) 98 Cal. App. 3d 340, and the Public Safety Officers Procedural Bill of Rights Act, Government Code section 3300 *et seq.*

WHEREFORE, Petitioner-Plaintiff WHITNEY prays for the relief set forth below.

## SECOND CAUSE OF ACTION
## COMPLAINT FOR EXTRAORDINARY RELIEF
### [Government Code section 3309.5(d)(1)]

73.     Plaintiff-Petitioner WHITNEY re-alleges and hereby incorporates by reference all preceding paragraphs, inclusive, as though fully set forth at length in this cause of action.

74.     Government Code section 3309.5(a) makes it unlawful for any public safety department to deny or refuse as to any public safety officer the rights and protections guaranteed by the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.*

75.     Government Code section 3309.5(c) gives this Court initial jurisdiction over any proceeding brought by a public safety officer against any public safety department for alleged violations of the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.*

76.     Government Code section 3309.5(d)(1) requires this Court "render appropriate injunctive or other extraordinary relief to remedy" any violation of the Public Safety Officers' Procedural Bill of Rights Act, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction.

-21-

77.    Government Code section 3304(b), a provision of the Public Safety Officers' Procedural Bill of Rights Act, required the City of Vallejo and its Police Department, as well as Defendant-Respondents Allio and Nyhoff to provide Petitioner-Plaintiff Whitney with an appeal of his termination.  Under Government Code section 3304.5, the appeal had to be held in conformity with the rules and procedures adopted by the City and its Police Department.  It did not.

78.    The adopted procedure is contained in the Memorandum of Understanding between the City and the Vallejo Police Officers' Association ("VPOA").  That appeal process applies to all VPOA bargaining unit members, including the Captain rank.  That procedure states: "Appeals of disciplinary action shall be subject to Section J of this Grievance Procedure." Section J provides for binding arbitration.

79.    The City, the Police Department, and Defendants Allio and Nyhoff refused to submit Captain Whitney's appeal to arbitration as required.

WHEREFORE, Petitioner-Plaintiff WHITNEY prays for the relief set forth below.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### [Penal Code section 1546 *et seq.*]

80.    Petitioner-Plaintiff Whitney re-alleges and hereby incorporates by reference all preceding paragraphs, inclusive, as though fully set forth at length in this cause of action.

81.    The California Electronic Communications Privacy Act (CalECPA) prohibits a government entity from compelling the production of, or access to, electronic device information from any person or entity other than the authorized possessor of the device absent a search warrant or consent.  (Penal Code section 1546.1(a)(1).)

82.    The term "authorized possessor" includes a person authorized by the owner of the device to possess and use the phone. (Penal Code section 1546(b).)

-22-

83.     At all times herein pertinent, Petitioner-Plaintiff Whitney was the authorized possessor of his departmentally issued cell phone, an Apple iPhone XS Max, which he was authorized to physically possess and use, pursuant to City policy, for both work and personal business.

84.     Petitioner-Plaintiff WHITNEY did not consent to a search of his work phone by the Vallejo Police Department.  Rather it was done involuntarily, and he was ordered to comply or be subject to disciplinary action.  He complied with that order, even though it was unlawful.

85.     The Vallejo Police Department did not secure a search warrant for his departmentally-issued cell phone.

WHEREFORE, Petitioner-Plaintiff Whitney prays for the relief set forth below.

### FOURTH CAUSE OF ACTION
### INVASION OF PRIVACY
### (Penal Code section 502; Cal. Const. Art. I, Section 1)

86.     Petitioner-Plaintiff WHITNEY re-alleges and hereby incorporates by reference all preceding paragraphs, inclusive, as though fully set forth at length in this cause of action.

87.     Captain Whitney had a personally protected privacy interest in the content of his cell phone under Article I, Section 1 of the California Constitution and Penal Code sections 502 and 1546.

88.     Although Captain Whitney returned his phone to the Vallejo Police Department on May 28, 2019, he at no time authorized them to search his phone, access his private information, or access any personal, non-work related accounts.  Nonetheless, the City, along with Defendants Allio and Nyhoff, approved and conducted a search.

89.     Nonetheless, on June 4, 2019, Whitney discovered a device labeled "554 iPhone" had accessed his personal Gmail account on June 3, 2019 at 1501 hours.

90.     On June 8, 2019 as well as June 28, 2019, Whitney discovered his old Vallejo Police Department iPhone XS Max had accessed his family iCloud account.

-23-

91.    Whitney also discovered that using information from his CITY-issued phone, the CITY attempted to access his accounts at the University of San Diego and on LinkedIn.

92.    Penal Code section 502 prohibits unauthorized access of an individual's electronic data and accounts.

93.    The California Electronic Communications Privacy Act (CalECPA) prohibits a government entity from compelling the production of, or access to, electronic device information from any person or entity other than the authorized possessor of the device absent a search warrant or consent.  (Penal Code section 1546.1(a)(1).)

94.    The California Constitution guarantees each individual citizen a right of privacy in his personal information.

WHEREFORE, Petitioner-Plaintiff WHITNEY prays for the relief set forth below.

### FIFTH CAUSE OF ACTION
### RETALIATORY DISCHARGE
#### (Labor Code Section 1102.5)

95.    Plaintiff-Petitioner Whitney re-alleges and hereby incorporates by reference all preceding paragraphs, inclusive, as though fully set forth at length in this cause of action.

96.    At all relevant times, through his termination on August 26, 2019, the City of Vallejo employed Whitney in the position of Police Captain.

97.    Whitney provided information related to misconduct by public officials, which was not publicly known.  These reports were made to his employer, the CITY OF VALLEJO, a public body, and its officials, including the City Manager and Police Chief.

98.    Whitney had reasonable cause to believe that the information he provided disclosed violations of state law and local regulations.

99.    August 26, 2020.

100.    WHITNEY's disclosures were, at a minimum, a contributing factor in the City's decision to summarily terminate his employment effective August 26, 2020.

-24-

1   Whitney's reports were made in close temporal proximity to his termination, and
2   disclosed blatant corruption as well as misconduct by the very officials that terminated his
3   employment.
4          101.   Whitney was damaged by his unlawful discharge, in at least the following
5   ways:
6          a.   Lost compensation from August 26, 2019 through present, and ongoing;
7          b.   Lost health, retirement, and fringe benefits;
8          c.   Mental suffering caused by the City's extreme and outrageous conduct in
9               terminating his employment for reporting misconduct.
10
11                                      **PRAYER**
12   WHEREFORE, Petitioner JOHN P. WHITNEY, prays:
13          1.   That this Court issue a peremptory writ of mandate commanding Respondents
14   to vacate Petitioner's termination due to their collective failure to comply with the
15   California Constitution, the decision in *Lubey v. City and County of San Francisco,* (179)
16   98 Cal. App. 3d 340, the Public Safety Officers' Procedural Bill of Rights Act,
17   Government Code section 3300 *et seq.*, and the Memorandum of Understanding between
18   the City of Vallejo and the Vallejo Police Officers' Association;
19          2.   That this Court issue a peremptory writ of mandate commanding Respondents
20   to reinstate Petitioner to his position of police captain with the City of Vallejo and the
21   Vallejo Police Department with full back pay and benefits given their non-compliance
22   with the obligations imposed by the California Constitution, the decision in *Lubey v. City*
23   *and County of San Francisco,* (179) 98 Cal. App. 3d 340, the Public Safety Officers'
24   Procedural Bill of Rights Act, Government Code section 3300 *et seq.*, and the
25   Memorandum of Understanding between the City of Vallejo and the Vallejo Police
26   Officers' Association;
27
28

3.  That this Court issue a peremptory writ of mandate commanding Respondents, and all its agents, servants, employees and all persons acting under, in concert with, or for them, from doing any action in violation of the California Constitution, the decision in *Lubey v. City and County of San Francisco,* (179) 98 Cal. App. 3d 340, the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.*, and the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association;

4.  That this Court issue an order pursuant to Government Code section 3309.5 enjoining, staying, and prohibiting any further administrative or disciplinary proceedings related to Petitioner's August 26, 2019 summary termination;

5.  That this Court issue an order pursuant to Government Code section 3309.5 providing extraordinary relief prohibiting Respondents from taking any punitive action against Petitioner for any of the acts, omissions, or other conducted related to his summary termination on August 26, 2019;

6.  That this Court issue a finding under Government Code section 3309.5(e) that Respondents maliciously violated the rights of Petitioner, with intent to injure, and award a civil penalty in the amount of $25,000 for each and every POBR violation committed, as well as actual damages and reasonable attorneys' fees;

7.  For a judgment that Respondents terminated Petitioner in retaliation for protected disclosures to a public body, in violation of Cal. Labor Code section 1102.5;

8.  For a judgment that Respondents violated the California Electronic Communications Privacy Act (Penal Code section 1546, *et seq.*)

9.  For a judgment that Respondents violated his right to privacy under the California Constitution, Article I, Section 1;

10. For a judgment that Respondents violated Penal Code section 502;

11. For general damages according to proof, including, without limitation, the pain and anguish caused by Respondents' extreme and outrageous conduct;

-26-

12. For special damages according to proof, including without limitation, lost earnings, the value of lost benefits, lost future health, retirement, and fringe benefits, and damage to future earning potential through injury to professional reputation;

13. For prejudgment interest in an amount according to proof;

14. For reasonable attorneys' fees and costs;

15. For other damages as permitted by law;

16. For costs of suit herein; and

17. For such other and further relief as the Court may deem just and proper.

Dated:  December 17, 2020

Respectfully submitted,

Berry | Wilkinson | Law Group

By_____

Alison Berry Wilkinson
Attorneys for Plaintiff-Petitioner JOHN P. WHITNEY

1

2

**VERIFICATION**

3

4      I, JOHN P. WHITNEY, am the Petitioner-Plaintiff in the instant action.  I have

5  read the **VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR**

6  **DAMAGES** filed here and know its contents.  The facts stated therein are true and within

7  my personal knowledge, except as to those matters stated on information and belief and as

8  to those, I believe them to be true.

9      I declare under penalty of perjury under the laws of the State of California that the

10  foregoing is true and correct.  Executed this ___ day of December 2020 in

11  _____, California.

12

13

14                                      _____

15                          JOHN P. WHITNEY

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

Lenore L. Albert, Esq. SBN 210876
Email: lenalbert@InteractiveCounsel.com
LAW OFFICES OF LENORE ALBERT
1968 S. Coast Hwy #3960
Laguna Beach, CA 92651
Telephone (424)365-0741
Attorney for Plaintiff, RYAN MCMAHON

RECEIVED

SEP 2 5 2023

CITY ATTORNEY'S OFFICE
CITY OF VALLEJO

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN MCMAHON, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>JOHN WHITNEY, SHANE BOWER,<br>CITY OF VALLEJO; and DOES 1 through<br>10, inclusive,<br><br>                    Defendants. | CASE NO.<br><br>Assigned to the Hon.<br>Crtm.<br>Complaint filed:<br><br>**COMPLAINT**<br><br>1.  Violation of Civil Rights<br>2.  Violation of Civil Rights<br>3.  Violation of Civil Rights<br>4.  Invasion of Privacy<br>5.  Govt Code §815.6 Liability<br>6.  Govt Code §815.4 Liability<br>7.  Negligence Per Se<br>8.  Public Disclosure of Private Facts<br>9.  Bus & Prof Code § 17200 Violation<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff RYAN MCMAHON brings this action against Defendant CITY OF

VALLEJO, JOHN WHITNEY, SHANE BOWER, and Does 1 through 10 ("Does 1-

10"), and each of them so captioned, (collectively the "Defendants") and alleges the following on information and belief, except as to those allegations which pertain to the Plaintiff and are within her personal knowledge:

## Jurisdiction

1.      This Court has subject matter jurisdiction under 28 U.S.C. §1331 (federal question) wherein plaintiff is seeking injunctive relief and damages for civil rights violation being pursued in this U.S. District Court under 42 U.S.C. §1983 (*Monell* liability).

## Parties

2.      Plaintiff, RYAN MCMAHON, ("plaintiff" or "McMahon") at all times mentioned herein relevant to this complaint is employed in and is a resident of Solano County, California. He was hired to work at the Vallejo police department in or about 2017.

3.      Defendant, CITY OF VALLEJO, ("defendant" or "The City") at all times mentioned herein relevant to this complaint is a local government agency located in this district that employed plaintiff at the Vallejo police department.

4.      Defendant, JOHN WHITNEY, ("defendant" or "The Captain") at all times mentioned herein relevant to this complaint was employed at the police department as Captain for the CITY OF VALLEJO until approximately August 2019.

5.      Defendant, SHANE BOWER, ("defendant" or "Bower") at all times mentioned herein relevant to this complaint was employed with the Vallejo police department in internal affairs.

6.      The SUN, at all times mentioned herein relevant to this complaint, is a local newspaper that used to be called the Times Herald.

7.      Plaintiff does not know the true names and capacities of the Defendants DOES 1 through 10, inclusive, and, as such, names said Defendants by such fictitious names. Plaintiff will amend the complaint to state the true name and capacity of the DOE Defendant(s) when such information is ascertained.

8.       Plaintiff is informed and believes, and alleges thereon, that each Defendant is responsible in some manner for the occurrences alleged in this complaint, and that Plaintiff's' damages were proximately caused by the Defendants at all times mentioned in this complaint.

### Facts

9.       Sergeants can write up a training document on an officer. The training document gets scanned into the system to put in the officer's personnel records until the officer's next annual performance review. The personnel records are kept in a locked file cabinet system by internal affairs. If in a year the officer has performed as trained, then the training document is purged from the officer's file. Plaintiff is informed and believes and alleges thereon that Shane Bower is in charge of who will purge the documents from the personnel records.

10.      Jodi Brown worked in internal affairs. One week before she left internal affairs, plaintiff's file ended up in the newspaper.

11.      Defendant CITY OF VALLEJO knew or should have known it had a problem with keeping confidential files confidential because Captain Whitney was terminated from the police department in or about 2018 or 2019 after he was caught taking confidential information from personnel records from the police department.

12.      However, the CITY OF VALLEJO never notified the plaintiff of the data breach.

13.      Plaintiff learned he may have been a victim of the breach by John Whitney on or about January 17, 2023 when he read the Sun article online and saw that it contained confidential information from his personnel records that should have been previously purged.

14.      Plaintiff's confidential personnel records were provided to the Vallejo Sun without plaintiff's knowledge or consent then posted on the internet on or about January 17, 2023 where anyone with internet access could freely obtain them.

15.     Plaintiff discovered his confidential personnel records were also provided to attorney Patrick Buelna of Pointer & Buelna, LP without plaintiff's knowledge, consent or court order on June 23, 2023 by the CITY OF VALLEJO.

16.     A personnel record includes a department file, bureau file, training file, internal affairs file, and medical file. The confidential document(s) posted or referred to by the Sun included training documents from 2017 to 2018 that were supposed to be purged from his file the following year based on his passing performance evaluation he received in 2018.

17.     Plaintiff has been publicly embarrassed by the public disclosure of these private facts and/or has been cast in a false light to others.

18.     Plaintiff had worked as an officer for seven years prior to obtaining a position in Vallejo without incident.

19.     Due to his religious beliefs, he had placed a cross on his firearm which was contained in his personnel records. The information that he placed a cross on his firearm was later posted on the internet.

20.     Plaintiff is informed and believes and alleges thereon that defendant CITY OF VALLEJO, JOHN WHITNEY, and SHANE BOWER,  and DOES 1-10 were jointly and severally liable for public disclosure of plaintiff's confidential personnel records to his injury to wit:

> a.  Plaintiff McMahon was injured by his former employer, CITY OF VALLEJO when The City failed to adequately secure confidential, sensitive or private information in McMahon's personnel records which was then disclosed to third parties, including it being posted on the internet by a local news organization.
>
> b.  Plaintiff McMahon was also injured by JOHN WHITNEY for disclosing confidential, sensitive or private information in McMahon's personnel records to third parties, including it being posted on the internet.

**4**
Complaint
*McMahon v Whitney, et al*

   c.  Plaintiff McMahon was also injured by SHANE BOWER for failing to
       adequately ensure plaintiff's personnel record was secure within the
       confines of the police department.

   d.  Plaintiff McMahon was also injured by DOES 1-10 for disclosing
       confidential information contained in his personnel records at the CITY OF
       VALLEJO police department.

21.    Plaintiff is informed and believes and alleges thereon that CITY OF VALLEJO,
JOHN WHITNEY, SHANE BOWER and DOES 1-10 are jointly and severally
responsible for the disclosure of his confidential, sensitive, and private information that
was contained in his personnel records.

22.    On or about February 9, 2019, there was a high-profile officer involved shooting
that occurred at the local Taco Bell where a resident was killed.

23.    Plaintiff was the last officer on the scene.

24.    Although he was the last officer on the scene and cleared by two organizations of
any wrongdoing, he has been vilified in the press based on the death that occurred at
Taco Bell on February 9, 2019.

25.    Upon receiving death threats, he relocated his family and gained employment
elsewhere.

26.    In or about 2022, plaintiff found a new job working for the Broadmoor police
department.

27.    He had been working at the Broadmoor police department for approximately six
months without incident until on or about January 17, 2023 when the Sun posted a news
article online with confidential, sensitive, and/or personal information from plaintiff's
confidential personnel records located at the CITY OF VALLEJO police department.

28.    Based on the news article, plaintiff had to leave the department and find other
employment.

29.    The policy of the CITY OF VALLEJO police department was to purge all
training documents, after one year upon a successful performance review.

30.     The content contained in the Sun news article contained content that was allegedly destroyed and no longer existing in plaintiff's personnel records since in or about 2019.

31.     Plaintiff is informed and believes and alleges thereon that his training memos that were supposed to be purged after his 2018 evaluation were taken and given to the Sun which then published them, not as training memos but as purported disciplinary records. Additionally, other information such as placing a cross on plaintiff's firearm as a means of his religious belief in divine protection on the job was disbursed outside of his personnel file and used to accuse plaintiff of being in an extremist type of gang after the 2-19-19 shooting wherein plaintiff was one of the last officers to actually arrive on scene.

32.     Although plaintiff was cleared of any wrongdoing during the shooting, the effect on the reader of the Sun's articles about plaintiff which contained this confidential personnel record or portions thereof caused others to despise plaintiff and fill with hatred and ridicule.

33.     But for giving this confidential information to the Sun, the Sun could not have drafted these stories in a distorted fashion.

34.     Plaintiff is informed and believes and alleges thereon the defendants and each of them knew that this information if made public, and if given to the Sun, could be used to cause other to despise, hate and ridicule plaintiff, putting his family and himself in potential physical harm.

35.     Plaintiff is informed and believes and alleges thereon that former Capt. JOHN WHITNEY later admitted he took personnel records from the CITY OF VALLEJO police department and kept them on a memory device.

36.     This was clearly against and in violation of policy and procedure at the CITY OF VALLEJO, and former Capt. JOHN WHITNEY knew or should have known that this was against City policy and procedure to do so.

37.     Additionally, on or about June 23, 2023 plaintiff was told that attorneys were given confidential, sensitive, and personal information directly from the CITY OF VALLEJO,

**6**
Complaint
*McMahon v Whitney, et al*

1   just "a few months ago" which included items that were supposed to have been previously

2   destroyed without a *Pitchess* motion.

3   38.     The disclosure of these portions of plaintiff's personnel records was contrary to

4   clearly established law under Cal. Penal Code § 832.7 which provides.

> The personnel records of peace officers and custodial officers and records
> maintained by a state or local agency pursuant to Section 832.5, or
> information obtained from these records, are confidential and shall not be
> disclosed in any criminal or civil proceeding except by discovery pursuant
> to Sections 1043 and 1046 of the Evidence Code. Penal Code § 832.7

9   39.     On or about January 23, 2023, McMahon filed a tort claim with the City and

10   requested the CITY OF VALLEJO investigate who had kept the contents of his

11   personnel records that had been previously destroyed.

12   40.     He sat for an interview with their representative, but it was never resolved.

13   41.     He then amended his claim requesting damages on April 26, 2023 and again after

14   June 23, 2023.

15   42.     Hearing no response which is a rejection of the claim, he now files this lawsuit.

16   43.     The CITY OF VALLEJO, JOHN WHITNEY, SHANE BOWER, and DOES 1-10

17   wrongful act of failing to properly secure confidential, sensitive and personal information

18   contained in plaintiff's personnel records that he was told had been destroyed caused

19   McMahon to lose his employment at the Broadmoor police department, further harmed

20   his professional reputation, and put his family at further risk of harm.

21   44.     Plaintiff is informed and believes, and alleges thereon, that each Doe Defendant

22   directed, materially assisted, aided and abetted, adopted, ratified, approved, conspired, or

23   acted in concert with Defendant CITY OF VALLEJO.

## FIRST CAUSE OF ACTION

### Violation of Constitutional Rights
### (Plaintiff Against Defendant JOHN WHITNEY AND DOES 1-2)

27   45.     Plaintiff incorporates paragraphs 1 through 44 above in this pleading as though

28   fully set forth herein.

46.     Plaintiff is informed and believes and alleges thereon that Defendant JOHN WHITNEY and DOES 1-2 violated plaintiff's right to privacy under the First Amendment and Fourteenth Amendment when he obtained plaintiff's personnel records at the CITY OF VALLEJO police department, downloaded it onto his memory stick, and took it out of the office which included plaintiff's religious beliefs.

47.     Defendant's conduct was in violation of Cal Civ Code § 1798.1 and clearly established policy of the Vallejo police department including but not limited to, Policy 322, 324, 804, 805 and 1014, a true and correct copy of which are attached to this pleading as Exhibit 1.

48.     Defendant JOHN WHITNEY was acting or purporting to act in the performance of his official duties when he entered the office and downloaded plaintiff's personnel records.

49.     Defendant JOHN WHITNEY and DOES 1-2 acted intentionally or with indifference and their conduct violated plaintiff's right to freedom of religion and right to privacy.

50.     As a direct and proximate result, the plaintiff was harmed to wit: he lost his employment with the Broadmoor police department, his reputation, and suffered severe emotional distress.

51.     Defendant JOHN WHITNEY and DOES 1-2 were a substantial factor in causing that harm.

52.     As a result of the harm caused by the Defendants, and each of them, Plaintiff is entitled to damages, costs, reasonable attorney fees, and expert witness fees, if any.

53.     Defendant's conduct was malicious, fraudulent or despicable in willful disregard of plaintiff's rights, entitling plaintiff to punitive damages as alleged in the exemplary damages section below.

## SECOND CAUSE OF ACTION
### Violation of Constitutional Rights
**(Plaintiff Against Defendant SHANE BOWER AND DOES 3-5)**

**8**
Complaint
*McMahon v Whitney, et al*

54.    Plaintiff incorporates paragraphs 1 through 53 above in this pleading as though fully set forth herein.

55.    Plaintiff is informed and believes and alleges thereon that Defendant SHANE BOWER and DOES 3-5 violated plaintiff's right to privacy under the First Amendment and Fourteenth Amendment when he failed to properly supervise and/or otherwise ensure that plaintiff's personnel records were adequately secured at the CITY OF VALLEJO police department.

56.    Plaintiff is informed and believes and alleges thereon that Jodi Brown who was working in internal affairs under SHANE BOWER left the internal affairs department one week prior to the January 17, 2023 posting of plaintiff's personnel records by the Sun.

57.    Defendants' conduct was in violation of Cal Civ Code § 1798.1 and clearly established policy of the Vallejo police department including but not limited to, Policy 322, 324, 804, 805 and 1014, a true and correct copy of which are attached to this pleading as Exhibit 1.

58.    Defendant SHANE BOWER was acting or purporting to act in the performance of his official duties when he supervised and/or otherwise secured the personnel records at the police department.

59.    Defendant SHANE BOWER and DOES 3-5 acted intentionally or with indifference and their conduct violated plaintiff's right to freedom of religion and right to privacy.

60.    As a direct and proximate result, the plaintiff was harmed to wit: he lost his employment with the Broadmoor police department, his reputation, and suffered severe emotional distress.

61.    Defendant SHANE BOWER and DOES 3-5 were a substantial factor in causing that harm.

62.    As a result of the harm caused by the Defendants, and each of them, Plaintiff is entitled to damages, costs, reasonable attorney fees, and expert witness fees, if any.

63.    Defendant's conduct was malicious, fraudulent or despicable entitling plaintiff to punitive damages as alleged in the exemplary damages section below.

### THIRD CAUSE OF ACTION

**Violation of Constitutional Rights**
**(Plaintiff Against Defendant CITY OF VALLEJO)**

64.    Plaintiff incorporates paragraphs 1 through 63 above in this pleading as though fully set forth herein.

65.    Plaintiff is informed and believes and alleges thereon that Defendant CITY OF VALLEJO violated plaintiff's right to privacy under the First Amendment and Fourteenth Amendment by (1) giving plaintiff's personnel records to Patrick Buelna and/or his law firm; and/or (2) bending his badge after a shooting; and/or (3) failing to notify him that John Whitney had downloaded and taken personnel records from the office that may have included his records.

66.    The custom and practice of the police department aka CITY OF VALLEJO (as opposed to its written policies) resulted in the turnover of plaintiff's personnel records that contained confidential including facts about plaintiff's religious beliefs to Patrick Buelna in violation of Penal Code § 832.7 and plaintiff's First Amendment and Fourteenth Amendment rights.

67.    Defendant CITY OF VALLEJO also had a custom and practice of bending officer's badges and bent plaintiff's badge which later led to ridiculing plaintiff and making him appear to be some part of gang which he was not after it received unfavorable press.

68.    Defendant CITY OF VALLEJO acted intentionally or with indifference and its conduct violated plaintiff's right to freedom of religion and right to privacy.

69.     As a direct and proximate result, the plaintiff was harmed to wit: he lost his employment with the Broadmoor police department, his reputation, and suffered severe emotional distress.

70.    Defendant CITY OF VALLEJO was a substantial factor in causing that harm.

71.   As a result of the harm caused by the Defendants, and each of them, Plaintiff is entitled to damages, costs, reasonable attorney fees, and expert witness fees, if any.

## FOURTH CAUSE OF ACTION

### Invasion of Privacy – Cal Constitution Art 1 § 1

### (Plaintiff Against All Defendants)

72.   Plaintiff incorporates herein by reference paragraphs 1 through 71 above in this pleading as though fully set forth herein.

73. Plaintiff had a legally protected privacy interest in not having his personnel records disclosed to third parties and parts posted on the internet by the Sun where any person with access to the internet could obtain them.

74. Additionally, the defendant gave plaintiff's personnel records to an outside attorney without plaintiff's knowledge, consent, or a court order in violation of state law.

75.   Plaintiff had a reasonable expectation of privacy that the contents of his personnel records that were posted on the internet would remain confidential unless or until a Pitchess motion took place because such process is codified in Cal. Evid. Code § 1043, Cal. Evid. Code §1045 and Penal Code § 832.7.

76.   The public posting of plaintiff's personnel records on the internet or distribution to outside third parties such as to attorney Patrick Buelna was an unjustified and serious invasion of privacy.

77.   Defendants, CITY OF VALLEJO, JOHN WHITNEY, SHANE BOWER and DOES 1-10's conduct, jointly and severally, constituted a serious invasion of privacy causing injury to the Plaintiff because either they failed to prevent third parties from accessing plaintiff's personnel records or gained unauthorized access to the file which allowed it to be posted on the internet where anyone with internet access could find it.

78.   The information disclosed to others would be highly offensive to an objectively reasonable person.

79.   Plaintiff is informed and believe that Defendants still have not secured the information or destroyed it leaving plaintiff at further risk warranting injunctive relief.

80. As such, Plaintiff is entitled to damages and injunctive relief against all Defendants.

81. Plaintiff is also entitled to costs and reasonable attorney fees.

### FIFTH CAUSE OF ACTION

### Govt Code §815.6 Liability – Negligence of Public Entity

### (Plaintiff against Defendant CITY OF VALLEJO)

82. Plaintiff incorporates herein by reference paragraphs 1 through 81 above in this pleading as though fully set forth herein.

83. The contents of plaintiff's personnel records were posted on the internet because the CITY OF VALLEJO failed to use reasonable care in keeping this information confidential.

84. Defendant CITY OF VALLEJO was under a mandatory duty to:

    a. Keep all CITY OF VALLEJO employee personnel records at the police department confidential unless and until a court ordered contents of those files produced pursuant to Cal. Evid. Code § 1043, Cal. Evid. Code §1045 and Penal Code § 832.7;

    b. Adequately secure the information to ensure other employees did not download the files of other employees and walk out the door with them;

    c. Employ the retention and destruction policies for the files founder in their policies and procedures;

    d. Give notice of a data breach, including but not limited to, when JOHN WHITNEY took personnel records out of the department.

    e. Follow their own policies and procedures, including but not limited Policy 322 (Information Technology Use); 324 (Media Relations); 804 (Records Maintenance & Release); 805 (Protected Information); and 1014 (Personnel Records).

85. The enactment of these statutes, rules and policies were designed to protect against the type of harm (privacy harm) suffered by the plaintiff.

86.   Once the City collects confidential information, it is not the rule of the City or its officers to distribute that confidential information or allow it to be distributed onto the internet.

87.   Defendant as the collector of personal information owed plaintiff a duty to implement and maintain adequate security measures to safeguard plaintiff's personal information and existence of nonpublic employee reviews and the like consistent with public policy, police department policies, statutes, and California privacy laws.

    a.   It was foreseeable that plaintiff would be harmed if the CITY OF VALLEJO failed to use reasonable care in ensuring confidential personnel records were securely stored in a way third parties could not access them or if they did could not read them because they were encrypted.

    b.   It was reasonably certain that the plaintiff would suffer a privacy injury if those confidential personnel records were made public.

    c.   Defendant's conduct is closely connected to the injuries the plaintiff suffered.

    d.   Defendant bears some moral blame for failing to protect the confidential information it collected and confidential employee performance reviews it instituted on plaintiff.

88.   It is foreseeable that the plaintiff's personnel records would reach the internet when there was no adequate security measure in place.

89.   The Defendant breached one more of the duties alleged above which was a proximate cause of plaintiff's harm.

90.   As a result of the breach, Plaintiff suffered a privacy injury by having the information held by the CITY OF VALLEJO posted on the internet, resulting in loss of employment, shame, humiliation, threats, fear, anxiety and emotional distress.

91.   Plaintiff will continue to suffer harm in the future on the grounds he will now be burdened with ensuring that the information does not reappear on the internet.

**13**
Complaint
*McMahon v Whitney, et al*

92.     As a direct and proximate cause, Defendant CITY OF VALLEJO was a substantial factor in causing the harm suffered by the plaintiff including but not limited to loss of employment, lost time and emotional distress.

93.     Plaintiff must now take their time and effort to mitigate the actual and potential impact of the data breach out of his everyday life by closely reviewing and monitoring public internet spaces, newspapers and blogs and the like to ensure that the information does not spread further and reignite incitement of hatred that could be a threat to him or his family.

94.     Plaintiff also must be ever vigilant against retaliatory actions against him, and his reputation has been irreparably harmed.

95.     The harm caused by the defendant resulted in damage to the plaintiff in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### Govt Code §815.4 Liability

### (Plaintiff against All Defendants)

96.     Plaintiff incorporates herein by reference paragraphs 1 through 95 above in this pleading as though fully set forth herein.

97.     Defendant CITY OF VALLEJO was under a mandatory duty to keep plaintiff's personnel records confidential as more fully alleged above.

98.     The enactment was designed to protect against the type of harm (privacy harm) suffered by the plaintiff.

99.     Defendant JOHN WHITNEY was hired by the CITY OF VALLEJO to be the Capt. of Police at the police department while plaintiff was employed there and was under the duty to refrain from taking confidential personnel records home with him on his memory stick.

100.    Defendant failed to exercise reasonable care when he took the personnel records out of the office.

101.   Defendant SHANE BOWER failed to ensure adequate security measures were in place so others could not download and take information from the plaintiff's personnel records or if they did the information would be encrypted and unreadable.

102.   Failure to implement these reasonable security measures (CIS Controls) proximately led to the data breach alleged herein.

103.   Defendant SHANE BOWER and JOHN WHITNEY's unreasonable care was a substantial factor in the CITY OF VALLEJO's breach of this mandatory duty and was the direct and proximate cause of injury suffered by the plaintiff such as loss of employment, privacy harm, mitigation costs, emotional distress, and loss of time.

104.   The CITY OF VALLEJO is liable for Employee, SHANE BOWER and JOHN WHITNEY's failure to use reasonable care under Govt Code §815.4, making Employee, JOHN WHITNEY and the CITY OF VALLEJO jointly and severally liable.

## SEVENTH CAUSE OF ACTION

### Negligence per Se

### (Plaintiff against All Defendants)

105.   Plaintiff incorporates herein by reference paragraphs 1 through 104 above in this pleading as though fully set forth herein.

106.   Plaintiff's personnel records were disclosed to one or more third parties.

107.   Defendants and each of them violated Cal. Evid. Code § 1043, Cal. Evid. Code §1045 and Penal Code § 832.7.

108.   Defendants' violation of statute Cal. Evid. Code § 1043, Cal. Evid. Code §1045 and Penal Code § 832.7 was the proximate cause of plaintiff's injuries.

109.   The plaintiff's injuries resulted from an occurrence, the nature of which the statute or regulation was designed to prevent (designed to prevent a privacy injury).

110.   The plaintiff is the type of person who suffered the injury that the statute was designed to protect.

111.  Defendants JOHN WHITNEY, SHANE BOWER, and the CITY OF VALLEJO, and each of them, violated a statute, regulation and/or failed to comply with industry data-security standards and these violations were a proximate cause of plaintiff's harm.

112.  As a direct and proximate cause of Defendants' violation(s) of law, the plaintiff suffered emotional distress, including but not limited to, fear, anxiety, paranoia, shame, loss of sleep, depression, and spending time and expense trying to figure out what they could do to protect his family and himself, his reputation and/or his health and wellbeing.

113.  As a result of the breach, Plaintiff suffered a privacy injury by having his personnel records, or parts thereof, posted on the internet.

114.  Plaintiff will continue to suffer harm in the future on the grounds he will forever be the target of harassment and be burdened with spending time and financial resources to ensure that the information does not reappear again on the internet.

115.  Plaintiff is entitled to actual damages and general damages against defendants SHANE BOWER, JOHN WHITNEY, and the CITY OF VALLEJO, jointly and severally.

## EIGHTH CAUSE OF ACTION

### Public Disclosure of Private Facts

### (Plaintiff against All Defendants)

116.  Plaintiff incorporates herein by reference paragraphs 1 through 115 above in this pleading as though fully set forth herein.

117.  There was a public disclosure of information contained in the plaintiff's confidential personnel record which was a private fact.

118.  The record(s) was posted on the internet where it was freely accessible to anyone who had access to the internet.

119.  Defendants SHANE BOWER, JOHN WHITNEY, CITY OF VALLEJO and DOES 1-10, and each of them, were a substantial factor in causing the information to be publicized on the internet, including but not limited to being posted by the Sun.

**16**
Complaint
*McMahon v Whitney, et al*

120.   A reasonable person in plaintiff's position would consider the publicity highly offensive and objectionable.

121.   Defendants SHANE BOWER, JOHN WHITNEY, CITY OF VALLEJO and DOES 1-10, and each of them either knew, or acted with reckless disregard of the fact, that a reasonable person in plaintiff's position would consider allowing this information to be given to a third party where the Sun could use it in a story and post it on the internet would be highly offensive.

122.   The private information was "confidential" and was not of legitimate public concern.

123.   As a proximate and direct result, Plaintiff suffered a privacy injury and will continue to suffer harm in the future on the grounds that he will forever be the target of harassment and be burdened with spending time and financial resources to ensure that the information does not reappear again on the internet.

124.   Plaintiff must now take time and effort to mitigate the actual and potential impact of the data breach out of his everyday life by closely reviewing and monitoring stories and other content on the internet to ensure the safety of his family and himself.

125.   Defendants SHANE BOWER, JOHN WHITNEY, CITY OF VALLEJO and DOES 1-10's conduct, jointly and severally, was a substantial factor in causing plaintiff's harm.

126.   Defendant SHANE BOWER, JOHN WHITNEY and DOES 1-10's conduct was malicious. Fraudulent, or so vile and contemptible in disregard of plaintiff's rights to entitle him to punitive damages.

## NINTH CAUSE OF ACTION

### Violation of Bus & Prof Code §17200
### (Against Defendants JOHN WHITNEY, SHANE BOWER and DOES 1-10)

127.   Plaintiff incorporates paragraphs 1 through 126 above in this pleading as though fully set forth herein.

128.   California's Unfair Competition Law (UCL) defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. California *Business & Professions Code §17200, et seq.*

129.   By its terms, the statute is broad in scope. "It governs 'anti-competitive business practices' as well as injuries to consumers and has as a major purpose "the preservation of fair business competition." [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) "By defining unfair competition to include any '*unlawful* . . . business act or practice' [citation], the UCL permits violations of other laws to be treated as unfair competition that is independently actionable. [Citation.]" (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)  In addition, under the UCL, "a practice may be deemed unfair even if not specifically proscribed by some other law.' [Citation.]" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143.)  The remedies available under the UCL are "cumulative . . . to the remedies or penalties available under all other laws of this state." (*Business & Professions Code*, § 17205.)  *Arce v Kaiser Foundations Health Plan, Inc.* (2010).

130.   Defendant The City and Does 1 through 10 have violated Cal *Business & Professions Code* §17200, et seq., with the conduct as alleged above.

131.   Defendant JOHN WITNEY, SHANE BOWER, and DOES 1-10 and each of them, violated plaintiff's federal constitutional rights under the First Amendment (freedom of religion) and Fourteenth Amendment (right to privacy) as more fully described above, and as such, violated the California's Business & Professions Code § 17200 as an unlawful business practice.

132.   Defendant JOHN WITNEY, SHANE BOWER, and DOES 1-10 and each of them, violated Cal. Civ. Code § 1798.1, Penal Code § 832.7, City of Vallejo police department policies No. 322, 324, 804, 805, and 1014, and as such defendants' acts constituted an unlawful practice under California Business & Professions Code § 17200.

133.   As more fully described above, Defendant JOHN WITNEY, SHANE BOWER, and DOES 1-10 and each of them, acts and practices are immoral and/or contrary to the

**18**
Complaint
*McMahon v Whitney, et al*

policy reasons supporting due process rights for attorneys who have been admitted to federal court, constituting an unfair business act or practice.

134.   As more fully described above, Defendant JOHN WITNEY, SHANE BOWER, and DOES 1-10 and each of them, acts and practices are likely to deceive and/or mislead the public, constituting a fraudulent business act or practice.

135.   As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent acts and practices, plaintiff lost his property (his confidential records) or money such as employment loss and costs incurred to monitor the internet and repair his reputation.

136.   Plaintiff has suffered and will continue to suffer reputational harm and time loss such as those described by this plaintiff unless enjoined from future conduct.

137.   There is no adequate remedy at law warranting injunctive relief and/or restitution with regard to recovering his confidential files or stopping the dissemination of them without legal process.

138.   Plaintiff also demands attorney fees under the private attorney general statute.

## EXEMPLARY DAMAGES

139.   Defendants JOHN WHITNEY, SHANE BOWER, and DOES 1-10 conduct is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

140.   Defendants JOHN WHITNEY and DOES 1-10 intentionally misrepresented or concealed a material fact as specifically alleged above entitling plaintiff to punitive damages.

141.   The conduct constituting malice, oppression, or fraud by JOHN WHITNEY, SHANE BOWER, and DOES 1-10 was authorized by one or more officers, directors, or managing agents of the CITY OF VALLEJO.

142.   Alternatively, one or more officers, directors, or managing agents of the CITY OF VALLEJO knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct from JOHN WHITNEY, SHANE BOWER, and DOES 1-10 after it occurred.

143.   The aforementioned conduct of Defendants JOHN WHITNEY, SHANE BOWER, and DOES 1-10 was malicious and/or an intentional misrepresentation, deceit, or concealment of a material fact or with the intention on the part of the Defendants to thereby deprive Plaintiff of property or legal rights or otherwise cause injury.

144.   The aforementioned conduct of Defendants JOHN WHITNEY, SHANE BOWER, and DOES 1-10 was despicable and subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's privacy rights so as to justify an award of exemplary and punitive damages.

## **PRAYER FOR RELIEF**

**First and Second Cause of Action**

   1. Actual Damages;

   2. General Damages;

   3. Punitive Damages;

   4. Costs including Expert Witness fees;

   5. Attorney fees; and

   6. Any further relief the court would deem appropriate and just.

**Third Cause of Action**

   1. Actual Damages;

   2. General Damages;

   3. Costs including Expert Witness fees;

   4. Attorney fees; and

   5. Any further relief the court would deem appropriate and just.

**Fourth Cause of Action**

   1. Damages;

   2. Injunctive relief;

   3. Costs;

4. Attorney fees; and

5. Any further relief the court would deem appropriate and just.

**Fifth, Sixth and Seventh Causes of Action**

6. Actual Damages;

7. General Damages;

8. Costs; and

9. Any further relief the court would deem appropriate and just.

**Eighth Cause of Action**

1. Actual Damages;

2. General Damages;

3. Punitive Damages;

4. Costs including Expert Witness fees;

5. Attorney fees; and

6. Any further relief the court would deem appropriate and just.

**Ninth Cause of Action**

1. Restitution;

2. Injunctive Relief;

3. Costs;

4. Attorney fees under another statute; and

5. Any further relief the court would deem appropriate and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial for all legal claims.

Dated: September 13, 2023

Respectfully Submitted,

LAW OFFICES OF LENORE ALBERT

/s/ LENORE ALBERT

LENORE L. ALBERT, ESQ.

Attorney for Plaintiff, RYAN MCMAHON

Complaint
*McMahon v Whitney, et al*

# Information Technology Use

## 322.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for the proper use of department information technology resources, including computers, electronic devices, hardware, software and systems.

### 322.1.1  DEFINITIONS
Definitions related to this policy include:

**Computer system** - All computers (on-site and portable), electronic devices, hardware, software, and resources owned, leased, rented or licensed by the Vallejo Police Department that are provided for official use by its members. This includes all access to, and use of, Internet Service Providers (ISP) or other service providers provided by or through the Department or department funding.

**Hardware** - Includes, but is not limited to, computers, computer terminals, network equipment, electronic devices, telephones, including cellular and satellite, pagers, modems or any other tangible computer device generally understood to comprise hardware.

**Software** - Includes, but is not limited to, all computer programs, systems and applications, including shareware. This does not include files created by the individual user.

**Temporary file, permanent file or file** - Any electronic document, information or data residing or located, in whole or in part, on the system including, but not limited to, spreadsheets, calendar entries, appointments, tasks, notes, letters, reports, messages, photographs or videos.

## 322.2  POLICY
It is the policy of the Vallejo Police Department that members shall use information technology resources, including computers, software and systems, that are issued or maintained by the Department in a professional manner and in accordance with this policy.

## 322.3  PRIVACY EXPECTATION
Members forfeit any expectation of privacy with regard to emails, texts or anything published, shared, transmitted or maintained through file-sharing software or any Internet site that is accessed, transmitted, received or reviewed on any department computer system.

The Department reserves the right to access, audit and disclose, for whatever reason, any message, including attachments, and any information accessed, transmitted, received or reviewed over any technology that is issued or maintained by the Department, including the department email system, computer network and/or any information placed into storage on any department system or device. This includes records of all keystrokes or Web-browsing history made at any department computer or over any department network. The fact that access to a database, service or website requires a username or password will not create an expectation of privacy if it is accessed through department computers, electronic devices or networks.

Vallejo Police Department
Vallejo PD Policy Manual

*Information Technology Use*

---

However, the Department may not require a member to disclose a personal username or password or open a personal social website, except when access is reasonably believed to be relevant to the investigation of allegations of work-related misconduct (Labor Code § 980).

### 322.4 RESTRICTED USE

Members shall not access computers, devices, software or systems for which they have not received prior authorization or the required training. Members shall immediately report unauthorized access or use of computers, devices, software or systems by another member to their supervisors or Watch Commanders.

Members shall not use another person's access passwords, logon information and other individual security data, protocols and procedures unless directed to do so by a supervisor.

#### 322.4.1 HARDWARE

Access to technology resources provided by or through the Department shall be strictly limited to department-related activities. Data stored on or available through department computer systems shall only be accessed by authorized members who are engaged in an active investigation or assisting in an active investigation, or who otherwise have a legitimate law enforcement or department-related purpose to access such data. Any exceptions to this policy must be approved by a supervisor.

#### 322.4.2 INTERNET USE

Internet access provided by or through the Department shall be strictly limited to department-related activities. Internet sites containing information that is not appropriate or applicable to department use and which shall not be intentionally accessed include, but are not limited to, adult forums, pornography, gambling, chat rooms and similar or related Internet sites. Certain exceptions may be permitted with the express approval of a supervisor as a function of a member's assignment.

Downloaded information shall be limited to messages, mail and data files.

#### 322.4.3 SOFTWARE

Members shall not copy or duplicate any copyrighted or licensed software except for a single copy for backup purposes in accordance with the software company's copyright and license agreement.

To reduce the risk of a computer virus or malicious software, members shall not install any unlicensed or unauthorized software on any department computer. Members shall not install personal copies of any software onto any department computer.

When related to criminal investigations, software program files may be downloaded only with the approval of the information systems technology (IT) staff and with the authorization of the Chief of Police or the authorized designee.

No member shall knowingly make, acquire or use unauthorized copies of computer software that is not licensed to the Department while on department premises, computer systems or electronic

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.3

Vallejo Police Department
Vallejo PD Policy Manual

*Information Technology Use*

devices. Such unauthorized use of software exposes the Department and involved members to severe civil and criminal penalties.

Introduction of software by members should only occur as part of the automated maintenance or update process of department- or City-approved or installed programs by the original manufacturer, producer or developer of the software.

Any other introduction of software requires prior authorization from IT staff and a full scan for malicious attachments.

### 322.5  PROTECTION OF AGENCY SYSTEMS AND FILES
All members have a duty to protect the computer system and related systems and devices from physical and environmental damage and are responsible for the correct use, operation, care and maintenance of the computer system.

Members shall ensure department computers and access terminals are not viewable by persons who are not authorized users. Computers and terminals should be secured, users logged off and password protections enabled whenever the user is not present. Access passwords, logon information and other individual security data, protocols and procedures are confidential information and are not to be shared. Password length, format, structure and content shall meet the prescribed standards required by the computer system or as directed by a supervisor and shall be changed at intervals as directed by IT staff or a supervisor.

It is prohibited for a member to allow an unauthorized user to access the computer system at any time or for any reason. Members shall promptly report any unauthorized access to the computer system or suspected intrusion from outside sources (including the Internet) to a supervisor.

### 322.6  INSPECTION OR REVIEW
A supervisor or the authorized designee has the express authority to inspect or review the computer system, all temporary or permanent files, related electronic systems or devices, and any contents thereof, whether such inspection or review is in the ordinary course of his/her supervisory duties or based on cause.

Reasons for inspection or review may include, but are not limited to, computer system malfunctions, problems or general computer system failure, a lawsuit against the Department involving one of its members or a member's duties, an alleged or suspected violation of any department policy, a request for disclosure of data, or a need to perform or provide a service.

The IT staff may extract, download or otherwise obtain any and all temporary or permanent files residing or located in or on the department computer system when requested by a supervisor or during the course of regular duties that require such information.

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.4

**Policy**
**324**

# Media Relations

## 324.1  PURPOSE AND SCOPE
This policy provides guidelines for media releases and media access to scenes of disasters, criminal investigations, emergencies and other law enforcement activities.

## 324.2  RESPONSIBILITIES
The ultimate authority and responsibility for the release of information to the media shall remain with the Chief of Police, however, in situations not warranting immediate notice to the Chief of Police and in situations where the Chief of Police has given prior approval, Division Commanders, Watch Commanders and designated Press Information Officer(s) may prepare and release information to the media in accordance with this policy and the applicable law.

### 324.2.1  MEDIA REQUEST
Any media request for information or access to a law enforcement situation shall be referred to the designated department media representative, or if unavailable, to the first available supervisor. Prior to releasing any information to the media, employees shall consider the following:

(a)   At no time shall any employee of this department make any comment or release any official information to the media without prior approval from a supervisor or the designated department media representative.

(b)   In situations involving multiple law enforcement agencies, every reasonable effort should be made to coordinate media releases with the authorized representative of each involved agency prior to the release of any information by this department.

(c)   Under no circumstance should any member of this department make any comments to the media regarding any law enforcement incident not involving this department without prior approval of the Chief of Police.

## 324.3  MEDIA ACCESS
Authorized members of the media shall be provided access to scenes of disasters, criminal investigations, emergencies and other law enforcement activities subject to the following conditions (Penal Code § 409.5(d)):

(a)   The media representative shall produce valid press credentials that shall be prominently displayed at all times while in areas otherwise closed to the public.

(b)   Media representatives may be prevented from interfering with emergency operations and criminal investigations.

1.   Reasonable effort should be made to provide a safe staging area for the media that is near the incident and that will not interfere with emergency or criminal investigation operations. All information released to the media should

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.5

Vallejo Police Department
Vallejo PD Policy Manual

*Media Relations*

    be coordinated through the department Press Information Officer or other designated spokesperson.

2.    Whenever the presence of media or other aircraft pose a threat to public or officer safety or significantly hampers incident operations, the field supervisor should consider requesting a Temporary Flight Restriction (TFR). All requests for a TFR should be routed through the Watch Commander. The TFR request should include specific information regarding the perimeter and altitude necessary for the incident and should be requested through the appropriate control tower. If the control tower is not known, the Federal Aviation Administration should be contacted (14 CFR 91.137).

(c)    No member of this department who is under investigation shall be subjected to media visits or interviews without the consent of the involved employee (Government Code § 3303(e)).

(d)    Media interviews with individuals who are in custody should not be permitted without the approval of the Chief of Police and the express consent of the person in custody.

A tactical operation should be handled in the same manner as a crime scene, except the news media shall be permitted within the outer perimeter of the scene, subject to any restrictions as determined by the supervisor in charge. Department members shall not jeopardize a tactical operation in order to accommodate the news media. All comments to the media shall be coordinated through a supervisor or the Press Information Officer.

### 324.3.1  PROVIDING ADVANCE INFORMATION

To protect the safety and rights of officers and other persons, advance information about planned actions by law enforcement personnel, such as movement of persons in custody or the execution of an arrest or search warrant, should not be disclosed to the news media, nor should media representatives be invited to be present at such actions except with the prior approval of the Chief of Police.

Any exceptions to the above should only be considered for the furtherance of legitimate law enforcement purposes. Prior to approving any exception the Chief of Police will consider, at minimum, whether the release of information or presence of the media would unreasonably endanger any individual, prejudice the rights of any person or is otherwise prohibited by law.

### 324.4  SCOPE OF INFORMATION SUBJECT TO RELEASE

The Department will maintain a daily information log of significant law enforcement activities that shall be made available, upon request, to media representatives through the Watch Commander. This log will generally contain the following information:

(a)    The date, time, location, case number, type of crime, extent of injury or loss, and names of individuals (except confidential informants) involved in crimes occurring within this jurisdiction unless the release of such information would endanger the

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.6    Media Relations - 177

Vallejo Police Department

Vallejo PD Policy Manual

*Media Relations*

safety of any individual or jeopardize the successful completion of any ongoing investigation

(b)   The date, time, location, case number, name, birth date and charges for each person arrested by this department unless the release of such information would endanger the safety of any individual or jeopardize the successful completion of any ongoing investigation

(c)   The time and location of other significant law enforcement activities or requests for service with a brief summary of the incident subject to the restrictions of this policy and applicable law

At no time shall identifying information pertaining to a juvenile arrestee (13 years of age and under), victim or witness be publicly released without prior approval of a competent court. The identity of a minor 14 years of age or older shall not be publicly disclosed unless the minor has been arrested for a serious felony and the release of such information has been approved by the Watch Commander (Welfare and Institutions Code § 827.5).

Identifying information concerning deceased individuals shall not be released to the media until notification of next of kin or otherwise cleared through the Coroner's Office.

Any requests for copies of related reports or additional information not contained in this log shall be referred to the designated department media representative, the custodian of records, or if unavailable, to the Watch Commander. Such requests will generally be processed in accordance with the provisions of the Public Records Act (Government Code § 6250, et seq.).

324.4.1   RESTRICTED INFORMATION
It shall be the responsibility of the authorized employee dealing with media requests to ensure that restricted information is not inappropriately released to the media by this department. When in doubt, authorized and available legal counsel should be obtained.

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.7                                    Media Relations - 178

**Policy**

**804**

Vallejo Police Department

Vallejo PD Policy Manual

# Records Maintenance and Release

### 804.1  PURPOSE AND SCOPE
This policy provides guidance on the maintenance and release of department records. Protected information is separately covered in the Protected Information Policy.

### 804.2  POLICY
The Vallejo Police Department is committed to providing public access to records in a manner that is consistent with the California Public Records Act (Government Code § 6250 et seq.).

### 804.3  CUSTODIAN OF RECORDS RESPONSIBILITIES
The  Chief of Police shall designate a Custodian of Records. The responsibilities of the Custodian of Records include, but are not limited to:

(a)  Managing the records management system for the Department, including the retention, archiving, release and destruction of department public records.

(b)  Maintaining and updating the department records retention schedule including:

1.  Identifying the minimum length of time the Department must keep records.

2.  Identifying the department bureau responsible for the original record.

(c)  Establishing rules regarding the inspection and copying of department public records as reasonably necessary for the protection of such records.

(d)  Identifying records or portions of records that are confidential under state or federal law and not open for inspection or copying.

(e)  Establishing rules regarding the processing of subpoenas for the production of records.

(f)  Ensuring a current schedule of fees for public records as allowed by law is available (Government Code § 6253).

(g)  Determining how the department's website may be used to post public records in accordance with Government Code § 6253.

(h)  Ensuring that public records posted on the Department website meet the requirements of Government Code § 6253.10 including, but not limited to, posting in an open format where a record may be retrieved, downloaded, indexed and searched by a commonly used Internet search application.

(i)  Ensuring that a list and description, when applicable, of enterprise systems (as defined by Government Code § 6270.5) is publicly available upon request and posted in a prominent location on the Department's website.

### 804.4  PROCESSING REQUESTS FOR PUBLIC RECORDS
Any department member who receives a request for any record shall route the request to the Custodian of Records or the authorized designee.

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.8

Vallejo Police Department

Vallejo PD Policy Manual

*Records Maintenance and Release*

#### 804.4.1 REQUESTS FOR RECORDS

Any member of the public, including the media and elected officials, may access unrestricted records of this department, during regular business hours by submitting a written and signed request that reasonably describes each record sought and paying any associated fees (Government Code § 6253).

The processing of requests for any record is subject to the following (Government Code § 6253):

(a)    The Department is not required to create records that do not exist.

(b)    Victims of an incident or their authorized representative shall not be required to show proof of legal presence in the United States to obtain department records or information. If identification is required, a current driver's license or identification card issued by any state in the United States, a current passport issued by the United States or a foreign government with which the United States has a diplomatic relationship or current Matricula Consular card is acceptable (Government Code § 6254.30).

(c)    Either the requested record or the reason for non-disclosure will be provided promptly, but no later than 10 days from the date of request, unless unusual circumstances preclude doing so. If more time is needed, an extension of up to 14 additional days may be authorized by the Custodian of Records or the authorized designee. If an extension is authorized, the Department shall provide the requester written notice that includes the reason for the extension and the anticipated date of the response.

        1.    When the request does not reasonably describe the records sought, the Custodian of Records shall assist the requester in making the request focused and effective in a way to identify the records or information that would be responsive to the request including providing assistance for overcoming any practical basis for denying access to the records or information. The Custodian of Records shall also assist in describing the information technology and physical location in which the record exists (Government Code § 6253.1).

        2.    If the record requested is available on the department website, the requester may be directed to the location on the website where the record is posted. If the requester is unable to access or reproduce the record, a copy of the record shall be promptly provided.

(d)    Upon request, a record shall be provided in an electronic format utilized by the Department. Records shall not be provided only in electronic format unless specifically requested (Government Code § 6253.9).

(e)    When a record contains material with release restrictions and material that is not subject to release restrictions, the restricted material shall be redacted and the unrestricted material released.

        1.    A copy of the redacted release should be maintained in the case file for proof of what was actually released and as a place to document the reasons for the redactions. If the record is audio or video, a copy of the redacted audio/video release should be maintained in the department-approved media storage system and a notation should be made in the case file to document the release and the reasons for the redacted portions.

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.9

Case 2:23-cv-01972-KJM-JDP  Document 12-1  Filed 11/13/23  Page 63 of 75
Case 2:23-cv-01972-KJM-JDP  Document 12  Filed 09/13/23  Page 10 of 22

Vallejo Police Department
Vallejo PD Policy Manual

*Records Maintenance and Release*

    (f)    If a record request is denied in whole or part, the requester shall be provided a written response that includes the statutory exemption for withholding the record or facts that the public interest served by nondisclosure outweighs the interest served by disclosure (Government Code § 6255). The written response shall also include the names, titles or positions of each person responsible for the denial.

804.4.2   DISCLOSURE OF OTHER INFORMATION

    (a)    Death

        1.    Personnel shall not release to the public the name of a deceased victim of a crime or other incident until after the next of kin had been notified and clearance obtained from the Coroner's Office.

    (b)    Injury

        1.    Personnel shall not release the name of a seriously injured person to the pubic prior to notification of the next of kin.

    (c)    Suicide Notes

        1.    Personnel shall not release the contents of suicide notes, but may acknowledge their existence as appropriate.

    (d)    Multi-Jurisdictional Investigations or Incidents

        1.    Personnel shall refer inquiries to the agency having primary jurisdiction.

**804.5  RELEASE RESTRICTIONS**
Examples of release restrictions include:

    (a)    Personal identifying information, including an individual's photograph; Social Security and driver identification numbers; name, address and telephone number; and medical or disability information that is contained in any driver license record, motor vehicle record or any department record, including traffic collision reports, are restricted except as authorized by the Department, and only when such use or disclosure is permitted or required by law to carry out a legitimate law enforcement purpose (18 USC § 2721; 18 USC § 2722).

    (b)    Social Security numbers (Government Code § 6254.29).

    (c)    Personnel records, medical records and similar records which would involve an unwarranted invasion of personal privacy (Government Code § 6254; Penal Code § 832.7; Penal Code § 832.8; Evidence Code § 1043 et seq.).

        1.    Peace officer personnel records are deemed confidential and shall not be made public or otherwise released to unauthorized individuals or entities absent a valid court order.

        2.    The identity of any officer subject to any criminal or administrative investigation shall not be released without the consent of the involved officer, prior approval of the Chief of Police or as required by law.

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.10

Vallejo PD Policy Manual

## Records Maintenance and Release

(d) Victim information that may be protected by statutes, including victims of certain crimes who have requested that their identifying information be kept confidential, victims who are minors and victims of certain offenses (e.g., sex crimes or human trafficking, Penal Code § 293). Addresses and telephone numbers of a victim or a witness to any arrested person or to any person who may be a defendant in a criminal action shall not be disclosed, unless it is required by law (Government Code § 6254; Penal Code § 841.5).

    1. Victims of certain offenses (e.g., domestic violence, sexual assault, stalking, human trafficking, adult abuse) or their representative shall be provided, upon request and without charge, one copy of all incident report face sheets, one copy of all incident reports, or both, pursuant to the requirements and time frames of Family Code § 6228.

    2. Victims of sexual assault, upon written request, shall be provided a free copy of the initial crime report regardless of whether the report has been closed. Personal identifying information may be redacted (Penal Code § 680.2(b).

(e) Video or audio recordings created during the commission or investigation of the crime of rape, incest, sexual assault, domestic violence or child abuse that depicts the face, intimate body part or voice of a victim of the incident except as provided by Government Code § 6254.4.5.

(f) Information involving confidential informants, intelligence information, information that would endanger the safety of any person involved or information that would endanger the successful completion of the investigation or a related investigation. This includes analysis and conclusions of investigating officers (Evidence Code § 1041; Government Code § 6254).

    1. Absent a statutory exemption to the contrary or other lawful reason to deem information from reports confidential, information from unrestricted agency reports shall be made public as outlined in Government Code § 6254(f).

(g) Local criminal history information including, but not limited to, arrest history and disposition, and fingerprints shall only be subject to release to those agencies and individuals set forth in Penal Code § 13300.

    1. All requests from criminal defendants and their authorized representatives (including attorneys) shall be referred to the District Attorney, City Attorney or the courts pursuant to Penal Code § 1054.5.

(h) Certain types of reports involving, but not limited to, child abuse and molestation (Penal Code § 11167.5), elder and dependent abuse (Welfare and Institutions Code § 15633) and juveniles (Welfare and Institutions Code § 827).

(i) Sealed autopsy and private medical information concerning a murdered child with the exceptions that allow dissemination of those reports to law enforcement agents, prosecutors, defendants or civil litigants under state and federal discovery laws (Code of Civil Procedure §130).

(j) Information contained in applications for licenses to carry firearms or other files that indicates when or where the applicant is vulnerable or which contains medical or psychological information (Government Code § 6254).

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.11

Vallejo Police Department
Vallejo PD Policy Manual

*Records Maintenance and Release*

    (k)    Traffic collision reports (and related supplemental reports) shall be considered confidential and subject to release only to the California Highway Patrol, Department of Motor Vehicles (DMV), other law enforcement agencies and those individuals and their authorized representatives set forth in Vehicle Code § 20012.

    (l)    Any record created exclusively in anticipation of potential litigation involving this department (Government Code § 6254).

    (m)    Any memorandum from legal counsel until the pending litigation has been adjudicated or otherwise settled (Government Code § 6254.25).

    (n)    Records relating to the security of the department's electronic technology systems (Government Code § 6254.19).

    (o)    Any other record not addressed in this policy shall not be subject to release where such record is exempt or prohibited from disclosure pursuant to state or federal law, including, but not limited to, provisions of the Evidence Code relating to privilege (Government Code § 6254).

    (p)    Information connected with juvenile court proceedings or the detention or custody of a juvenile. Federal officials may be required to obtain a court order to obtain certain juvenile information (Welfare and Institutions Code § 827.9; Welfare and Institutions Code § 831).

## 804.6 SUBPOENAS AND DISCOVERY REQUESTS

Any member who receives a subpoena duces tecum or discovery request for records should promptly contact a supervisor and the Custodian of Records for review and processing. While a subpoena duces tecum may ultimately be subject to compliance, it is not an order from the court that will automatically require the release of the requested information.

Generally, discovery requests and subpoenas from criminal defendants and their authorized representatives (including attorneys) should be referred to the District Attorney, City Attorney or the courts.

All questions regarding compliance with any subpoena duces tecum or discovery request should be promptly referred to legal counsel for the Department so that a timely response can be prepared.

## 804.7 RELEASED RECORDS TO BE MARKED

Each page of any record released pursuant to this policy should be stamped in a colored ink or otherwise marked to indicate the department name and to whom the record was released.

## 804.8 SEALED RECORD ORDERS

Sealed record orders received by the Department shall be reviewed for appropriate action by the Custodian of Records. The Custodian of Records shall seal such records as ordered by the court. Records may include, but are not limited to, a record of arrest, investigation, detention or conviction. Once the record is sealed, members shall respond to any inquiry as though the record did not exist (Penal Code § 851.8; Welfare and Institutions Code § 781).

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Case 2:23-cv-01972-KJM-JDP Document 12-1 Filed 11/13/23 Page 66 of 75
Case 2:23-cv-01972-KJM-JDP Document 12 Filed 09/13/23 Page 13 of 22
Vallejo Police Department
Vallejo PD Policy Manual

*Records Maintenance and Release*

When an arrest record is sealed pursuant to Penal Code § 851.87, Penal Code § 851.90, Penal Code § 951.91, Penal Code § 1000.4 or Penal Code § 1001.9, the [recordsHead] shall ensure that the required notations on local summary criminal history information and police investigative reports are made. Sealed records may be disclosed or used as authorized by Penal Code § 851.92.

**804.9   SECURITY BREACHES**
The Records Supervisor shall ensure notice is given anytime there is a reasonable belief an unauthorized person has acquired either unencrypted personal identifying information or encrypted personal information along with the encryption key or security credential stored in any Department information system (Civil Code § 1798.29).

Notice shall be given as soon as reasonably practicable to all individuals whose information may have been acquired. The notification may be delayed if the Department determines that notification will impede a criminal investigation or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

For the purposes of this requirement, personal identifying information includes an individual's first name or first initial and last name in combination with any one or more of the following:

- Social Security number

- Driver license number or California identification card number

- Account number or credit or debit card number, in combination with any required security code, access code or password that would permit access to an individual's financial account

- Medical information

- Health insurance information

- A username or email address, in combination with a password or security question and answer that permits access to an online account

- Information or data collected by Automated License Plate Reader (ALPR) technology

804.9.1   FORM OF NOTICE
   (a)   The notice shall be written in plain language, be consistent with the format provided in Civil Code § 1798.29 and include, to the extent possible, the following:

      1.   The date of the notice.

      2.   Name and contact information for the Vallejo Police Department.

      3.   A list of the types of personal information that were or are reasonably believed to have been acquired.

      4.   The estimated date or date range within which the security breach occurred.

      5.   Whether the notification was delayed as a result of a law enforcement investigation.

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Case 2:23-cv-01972-KJM-JDP Document 12-1 Filed 11/13/23 Page 67 of 75
Case 2:23-cv-01972-KJM-JDP Document 12 Filed 09/13/23 Page 14 of 22
Vallejo Police Department
Vallejo PD Policy Manual

*Records Maintenance and Release*

6. A general description of the security breach.

7. The toll-free telephone numbers and addresses of the major credit reporting agencies, if the breach exposed a Social Security number or a driver license or California identification card number.

(b) The notice may also include information about what the Vallejo Police Department has done to protect individuals whose information has been breached and may include information on steps that the person whose information has been breached may take to protect him/herself (Civil Code § 1798.29).

(c) When a breach involves an online account, and only a username or email address in combination with either a password or security question and answer that would permit access to an online account, and no other personal information has been breached (Civil Code § 1798.29):

1. Notification may be provided electronically or in another form directing the person to promptly change either his/her password or security question and answer, as applicable, or to take other appropriate steps to protect the online account with the Department in addition to any other online accounts for which the person uses the same username or email address and password or security question and answer.

2. When the breach involves an email address that was furnished by the Vallejo Police Department, notification of the breach should not be sent to that email address but should instead be made by another appropriate medium as prescribed by Civil Code § 1798.29.

804.9.2 MANNER OF NOTICE

(a) Notice may be provided by one of the following methods (Civil Code § 1798.29):

1. Written notice.

2. Electronic notice if the notice provided is consistent with the provisions regarding electronic records and signatures set forth in 15 USC § 7001.

3. Substitute notice if the cost of providing notice would exceed $250,000, the number of individuals exceeds 500,000 or the Department does not have sufficient contact information. Substitute notice shall consist of all of the following:

   (a) Email notice when the Department has an email address for the subject person.

   (b) Conspicuous posting of the notice on the department's webpage for a minimum of 30 days.

4. Notification to major statewide media and the California Information Security Office within the California Department of Technology.

(b) If a single breach requires the Department to notify more than 500 California residents, the Department shall electronically submit a sample copy of the notification, excluding any personally identifiable information, to the Attorney General.



# Protected Information

## 805.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for the access, transmission, release and security of protected information by members of the Vallejo Police Department. This policy addresses the protected information that is used in the day-to-day operation of the Department and not the public records information covered in the Records Maintenance and Release Policy.

### 805.1.1  DEFINITIONS
Definitions related to this policy include:

**Protected information** - Any information or data that is collected, stored or accessed by members of the Vallejo Police Department and is subject to any access or release restrictions imposed by law, regulation, order or use agreement. This includes all information contained in federal, state or local law enforcement databases that is not accessible to the public.

## 805.2  POLICY
Members of the Vallejo Police Department will adhere to all applicable laws, orders, regulations, use agreements and training related to the access, use, dissemination and release of protected information.

## 805.3  RESPONSIBILITIES
The Chief of Police shall select a member of the Department to coordinate the use of protected information.

The responsibilities of this position include, but are not limited to:

(a) Ensuring member compliance with this policy and with requirements applicable to protected information, including requirements for the National Crime Information Center (NCIC) system, National Law Enforcement Telecommunications System (NLETS), Department of Motor Vehicle (DMV) records and California Law Enforcement Telecommunications System (CLETS).

(b) Developing, disseminating and maintaining procedures that adopt or comply with the U.S. Department of Justice's current Criminal Justice Information Services (CJIS) Security Policy.

(c) Developing, disseminating and maintaining any other procedures necessary to comply with any other requirements for the access, use, dissemination, release and security of protected information.

(d) Developing procedures to ensure training and certification requirements are met.

(e) Resolving specific questions that arise regarding authorized recipients of protected information.

(f) Ensuring security practices and procedures are in place to comply with requirements applicable to protected information.

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.15

Vallejo PD Policy Manual

*Protected Information*

**805.4  ACCESS TO PROTECTED INFORMATION**
Protected information shall not be accessed in violation of any law, order, regulation, user agreement, Vallejo Police Department policy or training. Only those members who have completed applicable training and met any applicable requirements, such as a background check, may access protected information, and only when the member has a legitimate work-related reason for such access.

Unauthorized access, including access for other than a legitimate work-related purpose, is prohibited and may subject a member to administrative action pursuant to the Personnel Complaints Policy and/or criminal prosecution.

805.4.1  PENALTIES FOR MISUSE OF RECORDS
It is a misdemeanor to furnish, buy, receive or possess Department of Justice criminal history information without authorization by law (Penal Code § 11143).

Authorized persons or agencies violating state regulations regarding the security of Criminal Offender Record Information (CORI) maintained by the California Department of Justice may lose direct access to CORI (11 CCR 702).

**805.5  RELEASE OR DISSEMINATION OF PROTECTED INFORMATION**
Protected information may be released only to authorized recipients who have both a right to know and a need to know.

A member who is asked to release protected information that should not be released should refer the requesting person to a supervisor or to the Records Supervisor for information regarding a formal request.

Unless otherwise ordered or when an investigation would be jeopardized, protected information maintained by the Department may generally be shared with authorized persons from other law enforcement agencies who are assisting in the investigation or conducting a related investigation. Any such information should be released through the Records Section to ensure proper documentation of the release (see the Records Maintenance and Release Policy).

Protected information, such as Criminal Justice Information (CJI), which includes Criminal History Record Information (CHRI), should generally not be transmitted by radio, cellular telephone or any other type of wireless transmission to members in the field or in vehicles through any computer or electronic device, except in cases where there is an immediate need for the information to further an investigation or where circumstances reasonably indicate that the immediate safety of officers, other department members or the public is at risk.

Nothing in this policy is intended to prohibit broadcasting warrant information.

805.5.1  REVIEW OF CRIMINAL OFFENDER RECORD
Individuals requesting to review their own California criminal history information shall be referred to the Department of Justice (Penal Code § 11121).

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.16                    Protected Information - 527

Case 2:23-cv-01972-KJM-JDP  Document 12-1  Filed 11/13/23  Page 70 of 75
Case 2:23-cv-01972-KJM-JDP  Document 12  Filed 09/13/23  Page 17 of 22
Vallejo PD Policy Manual

*Protected Information*

Individuals shall be allowed to review their arrest or conviction record on file with the Department after complying with all legal requirements regarding authority and procedures in Penal Code § 11120 through Penal Code § 11127 (Penal Code § 13321).

**805.6  SECURITY OF PROTECTED INFORMATION**
The Chief of Police will select a member of the Department to oversee the security of protected information.

The responsibilities of this position include, but are not limited to:

    (a)    Developing and maintaining security practices, procedures and training.

    (b)    Ensuring federal and state compliance with the CJIS Security Policy and the requirements of any state or local criminal history records systems.

    (c)    Establishing procedures to provide for the preparation, prevention, detection, analysis and containment of security incidents including computer attacks.

    (d)    Tracking, documenting and reporting all breach of security incidents to the Chief of Police and appropriate authorities.

805.6.1  MEMBER RESPONSIBILITIES
Members accessing or receiving protected information shall ensure the information is not accessed or received by persons who are not authorized to access or receive it. This includes leaving protected information, such as documents or computer databases, accessible to others when it is reasonably foreseeable that unauthorized access may occur (e.g., on an unattended table or desk; in or on an unattended vehicle; in an unlocked desk drawer or file cabinet; on an unattended computer terminal).

**805.7  TRAINING**
All members authorized to access or release protected information shall complete a training program that complies with any protected information system requirements and identifies authorized access and use of protected information, as well as its proper handling and dissemination.

**805.8  CALIFORNIA RELIGIOUS FREEDOM ACT**
Members shall not release personal information from any agency database for the purpose of investigation or enforcement of any program compiling data on individuals based on religious belief, practice, affiliation, national origin or ethnicity (Government Code § 8310.3).

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.17                    Protected Information - 528

# Personnel Records

## 1014.1  PURPOSE AND SCOPE
This policy governs maintenance and access to personnel records. Personnel records include any file maintained under an individual member's name.

## 1014.2  POLICY
It is the policy of this department to maintain personnel records and preserve the confidentiality of personnel records pursuant to the Constitution and the laws of California (Penal Code § 832.7).

## 1014.3  DEPARTMENT FILE
The department file shall be maintained as a record of a person's employment/appointment with this department. The department file should contain, at a minimum:

(a)  Personal data, including photographs, marital status, names of family members, educational and employment history or similar information. A photograph of the member should be permanently retained.

(b)  Election of employee benefits.

(c)  Personnel action reports reflecting assignments, promotions and other changes in employment/appointment status. These should be permanently retained.

(d)  Original performance evaluations. These should be permanently maintained.

(e)  Discipline records, including copies of sustained personnel complaints.

    1.  Disciplinary action resulting from sustained internally initiated complaints or observation of misconduct shall be maintained pursuant to the established records retention schedule and at least two years (Government Code § 26202; Government Code § 34090).

    2.  Disciplinary action resulting from a sustained civilian's complaint shall be maintained pursuant to the established records retention schedule and at least five years (Penal Code § 832.5). Adverse comments such as supervisor notes or memos may be retained in the department file after the member has had the opportunity to read and initial the comment (Government Code § 3305).

(f)  Adverse comments such as supervisor notes or memos may be retained in the department file after the member has had the opportunity to read and initial the comment (Government Code § 3305).

    1.  Once a member has had an opportunity to read and initial any adverse comment, the member shall be given the opportunity to respond in writing to the adverse comment within 30 days (Government Code § 3306).

    2.  Any member response shall be attached to and retained with the original adverse comment (Government Code § 3306).

    3.  If a member refuses to initial or sign an adverse comment, at least one supervisor should note the date and time of such refusal on the original comment and the

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.18

Vallejo PD Policy Manual

*Personnel Records*

member should sign or initial the noted refusal. Such a refusal, however, shall not be deemed insubordination, nor shall it prohibit the entry of the adverse comment into the member's file (Government Code § 3305).

(g)    Commendations and awards.

(h)    Any other information, the disclosure of which would constitute an unwarranted invasion of personal privacy.

## 1014.4  BUREAU FILE
Bureau files may be separately maintained internally by a member's supervisor for the purpose of completing timely performance evaluations. The Bureau file may contain supervisor comments, notes, notices to correct and other materials that are intended to serve as a foundation for the completion of timely performance evaluations.

All materials intended for this interim file shall be provided to the employee prior to being placed in the file in accordance with Government Code § 3305 and Government Code § 3306.

## 1014.5  TRAINING FILE
An individual training file shall be maintained by the Training Sergeant. Training files will contain records of all training; original or photocopies of available certificates, transcripts, diplomas and other documentation; and education and firearms qualifications. Training records may also be created and stored remotely, either manually or automatically (e.g., Daily Training Bulletin (DTB) records).

(a)    The involved member is responsible for providing the Training Sergeant or immediate supervisor with evidence of completed training/education in a timely manner.

(b)    The Training Sergeant or supervisor shall ensure that copies of such training records are placed in the member's training file.

## 1014.6  INTERNAL AFFAIRS FILE
Internal affairs files shall be maintained under the exclusive control of the Internal Affairs Unit in conjunction with the office of the Chief of Police. Access to these files may only be approved by the Chief of Police or the Internal Affairs Unit supervisor.

These files shall contain the complete investigation of all formal complaints of member misconduct, regardless of disposition. Investigations of complaints that result in the following findings shall not be placed in the member's file but will be maintained in the internal affairs file:

(a)    Not sustained

(b)    Unfounded

(c)    Exonerated

Investigation files arising out of civilian's complaints shall be maintained pursuant to the established records retention schedule and for a period of at least five years. Investigations that

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.19

Case 2:23-cv-01972-KJM-JDB io Document 132-1 Filed 11/13/23 Page 73 of 75
Case 2:23-cv-01972-KJM-JDP Document 122 Filed 09/13/23 Page 20 of 22
Vallejo PD Policy Manual

*Personnel Records*

resulted in other than a sustained finding may not be used by the Department to adversely affect an employee's career (Penal Code § 832.5).

Investigation files arising out of internally generated complaints shall be maintained pursuant to the established records retention schedule and for at least two years (Government Code § 26202; Government Code § 34090).

## 1014.7  MEDICAL FILE
A medical file shall be maintained separately from all other personnel records and shall contain all documents relating to the member's medical condition and history, including but not limited to:

- (a)  Materials relating to a medical leave of absence, including leave under the Family and Medical Leave Act (FMLA).
- (b)  Documents relating to workers' compensation claims or the receipt of short- or long-term disability benefits.
- (c)  Fitness-for-duty examinations, psychological and physical examinations, follow-up inquiries and related documents.
- (d)  Medical release forms, doctor's slips and attendance records that reveal a member's medical condition.
- (e)  Any other documents or materials that reveal the member's medical history or medical condition, including past, present or future anticipated mental, psychological or physical limitations.

## 1014.8  SECURITY
Personnel records should be maintained in a secured location and locked either in a cabinet or access-controlled room. Personnel records maintained in an electronic format should have adequate password protection.

Personnel records are subject to disclosure only as provided in this policy, the Records Maintenance and Release Policy or according to applicable discovery procedures.

Nothing in this policy is intended to preclude review of personnel records by the City Manager, City Attorney or other attorneys or representatives of the City in connection with official business.

### 1014.8.1  REQUESTS FOR DISCLOSURE
Any member receiving a request for a personnel record shall promptly notify the Custodian of Records or other person charged with the maintenance of such records.

Upon receipt of any such request, the responsible person shall notify the affected member as soon as practicable that such a request has been made (Evidence Code § 1043).

The responsible person shall further ensure that an appropriate response to the request is made in a timely manner, consistent with applicable law. In many cases, this may require assistance of available legal counsel.

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.20                                                                    Personnel Records - 632

Case 2:23-cv-01972-KJM-JDB Document 12-1 Filed 11/13/23 Page 74 of 75
Case 2:23-cv-01972-KJM-JDP Document 1-2 Filed 09/13/23 Page 21 of 22
Vallejo PD Policy Manual

*Personnel Records*

All requests for disclosure that result in access to a member's personnel records shall be logged in the corresponding file.

1014.8.2 RELEASE OF PERSONNEL INFORMATION
Personnel records are confidential and shall not be disclosed except as allowed by law. Nothing in this section is intended to preclude review of personnel files by the City Manager, City Attorney or other attorneys or representatives of the City in connection with official business (Government Code § 832.7; Evidence Code § 1043) (See also Records Maintenance and Release Policy).

Any person who maliciously, and with the intent to obstruct justice or the due administration of the laws, publishes, disseminates, or otherwise discloses the residence address or telephone number of any member of this department may be guilty of a misdemeanor (Penal Code § 146e).

The Department may release any factual information concerning a disciplinary investigation if the member who is the subject of the investigation (or the member's representative) publicly makes a statement that is published in the media and that the member (or representative) knows to be false. The disclosure of such information, if any, shall be limited to facts that refute any such false statement (Penal Code § 832.7).

**1014.9 MEMBER ACCESS TO HIS/HER OWN PERSONNEL RECORDS**
Any member may request access to his/her own personnel records during the normal business hours of those responsible for maintaining such files. Any member seeking the removal of any item from his/her personnel records shall file a written request to the Chief of Police through the chain of command. The Department shall remove any such item if appropriate, or within 30 days provide the member with a written explanation of why the contested item will not be removed. If the contested item is not removed from the file, the member's request and the written response from the Department shall be retained with the contested item in the member's corresponding personnel record (Government Code § 3306.5).

Members may be restricted from accessing files containing any of the following information:

(a) An ongoing internal affairs investigation to the extent that it could jeopardize or compromise the investigation pending final disposition or notice to the member of the intent to discipline.

(b) Confidential portions of internal affairs files that have not been sustained against the member.

(c) Criminal investigations involving the member.

(d) Letters of reference concerning employment/appointment, licensing or issuance of permits regarding the member.

(e) Any portion of a test document, except the cumulative total test score for either a section of the test document or for the entire test document.

(f) Materials used by the Department for staff management planning, including judgments or recommendations concerning future salary increases and other wage treatments,

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.21

Case 2:23-cv-01972-KJM-JDP Document 12-1 Filed 11/13/23 Page 75 of 75
Case 2:23-cv-01972-KJM-JDP Document 12 Filed 09/13/23 Page 22 of 22
Vallejo PD Policy Manual

*Personnel Records*

management bonus plans, promotions and job assignments or other comments or ratings used for department planning purposes.

(g) Information of a personal nature about a person other than the member if disclosure of the information would constitute a clearly unwarranted invasion of the other person's privacy.

(h) Records relevant to any other pending claim between the Department and the member that may be discovered in a judicial proceeding.

## 1014.10 RETENTION AND PURGING

Unless provided otherwise in this policy, personnel records shall be maintained in accordance with the established records retention schedule.

(a) During the preparation of each member's performance evaluation, all personnel complaints and disciplinary actions should be reviewed to determine the relevancy, if any, to progressive discipline, training and career development. Each supervisor responsible for completing the member's performance evaluation should determine whether any prior sustained disciplinary file should be retained beyond the required period for reasons other than pending litigation or other ongoing legal proceedings.

(b) If a supervisor determines that records of prior discipline should be retained beyond the required period, approval for such retention should be obtained through the chain of command from the Chief of Police.

(c) If, in the opinion of the Chief of Police, a personnel complaint or disciplinary action maintained beyond the required retention period is no longer relevant, all records of such matter may be destroyed in accordance with the established records retention schedule.

Copyright Lexipol, LLC 2018/01/24, All Rights Reserved.
Published with permission by Vallejo Police Department

Exhibit 1 pg.22