Alison Berry Wilkinson (SBN 135890)
Berry | Wilkinson | Law Group
165 North Redwood Drive, Suite 206
San Rafael, California
Telephone:    (415) 259.6638
Facsimile:    (877) 259.3762
Email: alison@berrywilkinson.com

Attorneys for Defendant
JOHN WHITNEY

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| RYAN MCMAHON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN WHITNEY, SHANE BOWER, CITY OF VALLEJO, and DOES 1-10, inclusive<br><br>Defendants. | Case No. 2:23-cv-01972-KJM-JDP<br><br>**DEFENDANT JOHN WHITNEY'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**<br><br>Date:         February 16, 2024<br>Time:        10:00 a.m.<br>Courtroom:   3, 15th Floor<br>Judge:        Hon. Kimberly J. Mueller |

1

**TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................................4

II.   STATEMENT OF FACTS ....................................................................................5

      A.    The Prior Representation of Plaintiff ........................................................7

      B.    Communications with Plaintiff After 2016 ...............................................9

      C.    Communications with McMahon's Counsel............................................11

      D.    Communications with the Broadmoor Police Officers' Association ...............13

III.  ARGUMENT .....................................................................................................13

      A.    Standards for a Disqualification Motion .................................................13

      B.    Plaintiff Waived the Right to Seek Disqualification...............................14

      C.    Plaintiff Has Failed to Show that the Prior Representation is "Substantially Related" to the Current Matter ...................................................................19

            1.    There is No Substantial Relationship Between this Action and the Cases Pre-dating Plaintiff's Employment at the Vallejo Police Department.....................19

            2.    The Attorney-Client Relationship Ended in June 2016 and Was Never Thereafter Re-Established...............................................22

            3.    Defense Counsel's Representation of Plaintiff's Union Did Not Establish an Attorney-Client Relationship with Plaintiff .......................................25

      D.    This Court Should Plaintiff's Suggestion to Exercise its Inherent Authority to protect Public Confidence and the Integrity of the Judicial System .................26

IV.   CONCLUSION ..................................................................................................27

DEFENDANT WHITNEY'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY
*McMahon v. Whitney, Case No. 2:23-cv-01972-KJM-JDP*

1

**TABLE OF AUTHORITIES**

2

3    **Cases**

4    *Adams v. Aerojet–Gen. Corp.,* 86 Cal.App.4th 1324 (2001) ....................................................20

*American Cast Iron Pipe Co.* 847 F. 2d 725 (11th Cir. 1988)...................................................16

5    *Apple v. Jewish Hosp. & Medical Center,* 829 F.2d 326 (1987) ...............................................19

*Aragon v. Pappy, Kaplon, Vogel & Phillips,* 214 Cal.App.3d 451 (2d Dist.1989) .................27

6    *California Earthquake Authority v. Metropolitan West Securities LLC,* 712 F. Supp. 2d 1124 (E.D.

7        Cal 2010)..........................................................................................................................23, 26

*Comden v. Superior Court,* 20 Cal.3d 906 (1978) ....................................................................15

8    *Datagate, Inc. v. Hewlett-Packard Co.,* 941 F. 2d 864 (9th Cir. 1991) ....................................19

*Evans v. Artek Systems Corp.* 715 F. 2d 788 (2nd. Cir. 1983)...................................................15

9    *Farris v. Fireman's Fund Ins. Co.,* 119 Cal.App.4th 671 (2004) .......................................20, 23

10   *Foster Poultry Farms v. Conagra Foods Refrigerated Foods Co., Inc.* 2005 WL 2319186, at *3

     (E.D. Cal., Sept. 22, 2005).....................................................................................................15

11   *H.F. Ahmanson & Company v. Salomon Brothers, Inc.,* 229 Cal.App.3d 1445 (1991) .............20, 21, 22

*Hartford Cas. Ins. Co. v. American Dairy and Food Consulting Laboratories, Inc.* 2010 WL

12      2510999 (E.D. Cal. 2010) ......................................................................................................22

*Human Longevity, Inc. v. J. Craig Venter Institute, Inc.* 2018 WL 5840045 (S.D. Cal. 2018).............22

13   *In re Cnty. of L.A.,* 223 F.3d 990 (9th Cir.2000)......................................................................15

*In re County of Erie* 473 F.3d 413 (2nd Cir. 2007)...................................................................25

14   *Koloff v. Metropolitan Life Insurance Co.,* 2014 WL 2590209 (E.D. Cal 2014.) ....................19

15   *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.,* 760 F.2d 1045 (9th Cir.1985)...............15

*QuickLogic Corporation v. Konda Technologies, Inc,* 618 F. Supp. 3d 873 (N. D. Cal. 2002)...........17

16   *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985)...................15

River West, Inc. v. Nickel, 188 Cal. App. 3d 1297 (1987)....................................................17, 18

17   *Sheinkoph v. Stone,* 927 F. 2d 1259 (1st Cir. 1991)..................................................................25

18   *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2nd Cir.1975) ....................21

Storz Management Company v. Carey, 526 F.Supp.3d 747 (E.D. Cal. 2021) .......................15, 17

19   *STV Asia Ltd. v. PRN Corporation* 2006 WL 8460110 (N.D.Cal. 2006) ..........................26, 27

*Tauriac v. Sam Rosas* 2011 WL 2671517 (E.D. Cal. 2011) .....................................................27

20   *Trone v. Smith,* 621 F. 2d 994 (9th Cir. 1980) .....................................................................20, 22

*Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F. 2d 85 (9th Cir. 1983)................................16, 20

21   *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 119 F.3d

22      210 (2d Cir.1997)...................................................................................................................27

*United States v. Williams* 720 F. 3d 674, 688 (8th Cir. 2013) ..................................................25

23   *Venture Law Group v. Superior Court,* 118 Cal. App. 4th 96 (2004) .......................................26

*Zador Corp. v. Kwan,* 31 Cal. App. 4th 1285 (1995)). ............................................................17

24

**Rules**

25

Eastern District Local Rule 180(e)..............................................................................................15

26

27

28

3

1    **I.     INTRODUCTION**

2        Plaintiff has failed to demonstrate three key predicates to disqualification: (1) the existence

3    of an attorney-client relationship between Plaintiff and defense counsel after June 24, 2016, the

4    date on which Plaintiff was provided written notice that no further representation would be

5    provided and the file was being closed; (2) any substantial relationship between the representation

6    provided by defense counsel before June 24, 2016 and the current action; and (3) that this motion

7    was timely filed for legitimate, not tactical, reasons.  For those reasons, and because disqualifying

8    counsel would cause extreme hardship to Defendant[1], the motion should be denied.

9        The parties do not dispute that this is a matter of *successive,* not simultaneous,

10   representation. The parties also do not dispute that there is no substantial relationship between the

11   representation provided by defense counsel to Plaintiff almost eight (8) years ago and prior Plaintiff

12   to getting hired at the CITY OF VALLEJO where the events giving rise to the current litigation

13   occurred.

14       Neither does either party dispute that after the attorney-client relationship ended on June 16,

15   2016, defense counsel showed empathy toward her former client for the undignified way he was

16   scapegoated by the CITY OF VALLEJO, which she considered parallel to how her current client

17   had been victimized in 2019 while employed at the CITY OF VALLEJO, and thereafter as he

18   sought alternate employment.

19       Further, neither party disputes that Plaintiff was represented by other counsel, not defense

20   counsel, in connection with the nettlesome issues arising out of his employment with the CITY OF

21   VALLEJO.  It is likewise undisputed that defense counsel worked with Plaintiff's other counsel to

22   provide information her current client had about Plaintiff's tenure in Vallejo, as well as to facilitate

23   her current client providing a declaration in support of Plaintiff's state court challenge to the

24   treatment he received from the CITY OF VALLEJO.

25       Plaintiff, however, twists that empathy into a claim that he established a further attorney-

26   client relationship with defense counsel after he joined the CITY OF VALLEJO during which he

27   _____

28       [1] The prejudice is set out, in detail, in the Declarations of John Whitney and Alison Berry
     Wilkinson, filed herewith.

imparted confidential information material to the current litigation. **The facts belie those claims**. The first post-Vallejo contact was a phone call that occurred as a result of Plaintiff having misdirected an email meant for his then-counsel to Wilkinson.  That phone call was documented in an email dated July 16, 2020, which clearly shows no attorney-client relationship was established. The second contact, which occurred on September 14, 2023, concerned a phone call Plaintiff had made to Defendant WHITNEY at his place of employment and whether Plaintiff had called to congratulate Defendant on having secured a $900,000.00 settlement of his whistleblower lawsuit against the CITY OF VALLEJO, or for some other reason.  That contact was also documented in a follow-up email.

As shown by the documentation submitted with this opposition, none of the contacts defense counsel had with or about McMAHON following the end of their attorney-client relationship in 2016 created an attorney-client relationship, let alone involved the provision of confidential information material to this litigation.[2] As a result, this motion should be denied.

## II.   STATEMENT OF FACTS

Plaintiff RYAN McMAHON filed his lawsuit against Defendant JOHN WHITNEY on September 13, 2023.  Docket No. 1.

On September 14, 2023, counsel for Defendant WHITNEY, Alison Berry Wilkinson (hereafter "WILKINSON" or "defense counsel") telephoned Plaintiff in response to a phone call

---

[2] Defendant recognizes that Plaintiff and defense counsel have different perspectives on this issue.  However, given that Plaintiff struggled in his declaration to convey accurately even basic facts such as where he worked in 2012 when defense counsel represented him (Plaintiff claims the representation was provided while he was working for the San Pablo Police Department when, in fact, he was working for the Sausalito Police Department) as well as what agency he called in September 23, 2023 (Plaintiff claims he called the "Pablo" police department when, in fact, he called the El Cerrito Police Department) undermines not only the credibility of his declaration, in its entirety, but also brings into question whether Plaintiff's his memory is inherently unreliable or he has such a reckless disregard for the significance of attesting to facts under penalty of perjury that his testimony must be discounted. See, Declaration of Alison Berry Wilkinson, filed herewith, hereafter "Wilk. Decl." at ¶¶ 20-27, 32, 47-49, and Exhs. A, B and E.

1   Plaintiff had made to the El Cerrito Police Department.[3]  Wilk. Decl. at Section B(1). At the time of

2   that call, WILKINSON was unaware McMAHON had filed a lawsuit against WHITNEY the day

3   prior.  *Id.* at ¶¶ 35, 45.

4          At the time of the call, WILKINSON thought McMAHON intended to congratulate

5   WHITNEY on the settlement of his whistleblower lawsuit, which had just been announced, and

6   perhaps secure contact information for the attorney who secured that result.  Wilk. Decl. at Section

7   B(1) and Exh. E; Docket No. 28-1 at ¶37. Instead, McMAHON said that he wanted to serve

8   WHITNEY with a subpoena for the upcoming arbitration related to the appeal of his termination

9   from the CITY OF VALLEJO.  *Id.*   Plaintiff made no mention of having filed a lawsuit against

10  WHITNEY. *Id.* at ¶45. As WHITNEY had previously submitted a supporting declaration during

11  McMAHON's quest to keep his job at the CITY OF VALLEJO and McMAHON did not advise her

12  that he had filed a lawsuit against WHITNEY the previous day, WILKINSON had no reason to

13  believe her current client (WHITNEY) was in an adverse posture to her former client

14  (McMAHON).  Wilk. Decl. ¶¶ 40, 43-45, 84.

15         Because McMAHON was not calling to congratulate WHITNEY on the settlement of his

16  whistleblower lawsuit but was calling to serve a subpoena, WILKINSON notified McMAHON's

17  last known counsel, Justin Buffington, of the call.  Wilk. Decl. at ¶33-34 and Exh. E.  Mr.

18  Buffington replied that he no longer was McMAHON's counsel and did not know who served as

19  Plaintiff's current attorney.  *Id.*

20         After learning several days later on September 18, 2023that McMAHON that had filed this

21  lawsuit, WILKINSON forwarded the email originally sent to Mr. Buffington to Plaintiff's current

22  counsel, Lenore Albert.  Wilk. Decl. ¶¶35-38 and Exh. E.  That email chain specifically referred to

23  John Whitney as WILKINSON's client. *Id.*

24         On October 13, 2023, Ms. Albert sent defense counsel an email alleging that WILKINSON

25  could not represent WHITNEY due to her having represented McMAHON approximately eight (8)

26  _____

27         [3] In his declaration, made under penalty of perjury, McMAHON claims he called the "Pablo"
    police department.  Docket No. 28-1 at ¶¶35-36.  That statement is false. Plaintiff called the El Cerrito

28  Police Department. Wilk. Decl. at ¶¶27, 32, 47-49, and Exh. E.

years earlier at his prior law enforcement position.  Wilk. Decl. at Section G and Exh. V.  Plaintiff

conceded that "the matters are not the same transaction or occurrence" as the present lawsuit.  (*Id.*

at ¶111 and Exh. V.) On October 16, 2023, WILKINSON responded in a lengthy letter setting out

her perspective on the disqualification issue. Wilk. Decl. ¶113, Exh. D.

On October 18, 2023, in response to correspondence challenging the sufficiency of the

McMAHON complaint, Plaintiff's counsel made a passing reference deriding the choice

WILKINSON made to represent WHITNEY (alleging "a group of attorneys" she "anonymously"

asked said they "wouldn't touch it with a 10 foot pole") but did not indicate WILKINSON was

precluded from representing Defendant or that a motion to disqualify would be filed.  Wilk. Decl.

¶114, Exh. X.

The issue of potential disqualification was not raised again by Plaintiff until nearly three (3)

months later.  During the intervening time period, the parties: (1) met and conferred concerning

defense counsel's perceived deficiencies in the complaint Plaintiff filed; (2) agreed by stipulation

that WILKINSON could appear and file responsive pleadings in an extended time period; and (3)

engaged in extensive briefing related the two motions the defense had filed: a Motion to Dismiss

pursuant to Fed. R. Civ. Proc. 12(b)(6) (Docket No. 15), and anti-SLAPP motion pursuant to Cal.

Code Civ. Proc. 425.16 (Docket No. 20).

Plaintiff's counsel only sought to further meet and confer on disqualification after defense

counsel noted in the anti-SLAPP reply that the "issues related to whether counsel for Defendant

WHITNEY should be disqualified [were] resolved in October 2023, long before the filing of the

anti-SLAPP motion."  Wilk. Decl. at ¶123; Docket No. 27 at page 8:14-27.  The next day, January

5, 2024, Plaintiff notified WILKINSON she would be filing a disqualification motion, met and

conferred, and served the motion.  *Id.*; Docket No. 28; see also, Docket No. 28-4, Exh. A.

**A.     The Prior Representation of Plaintiff**

On four different occasions from 2012 to 2016, defense counsel represented McMAHON in

connection with matters arising out of his employment at the Sausalito and Central Marin Police

Departments.  Wilk. Decl. at Section A.  These representations concluded *before* McMAHON

transferred to the Vallejo Police Department and were provided by assignment through the Legal

Defense Fund for the Peace Officers' Research Association of California (hereafter "PORAC LDF").  Wilk. Decl. at Section A and Exhs. A-B.

The matters for which defense counsel provided representation to McMAHON were:

- PORAC LDF Case File No. 12-1685, which involved allegations of off-duty misconduct while McMAHON was employed at the Sausalito Police Department.  Wilk. Decl. ¶12-13 and Exh. B at pages 3-4. That matter resolved without disciplinary action and was closed by WILKINSON on October 4, 2013. *Id.*

- PORAC LDF Case File No. 14-0485, which involved allegations of disrespectful conduct to a member of the public while McMAHON was employed at the Sausalito Police Department.  Wilk. Decl. ¶12, 14, and Exh. B at pages 5-7.  That matter was closed by WILKINSON on December 23, 2014, because as a witness to the incident and not a subject of the allegations he was not entitled to legal representation under either the PORAC LDF Plan Document or the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq*.  *Id.*

- PORAC LDF Case File No. 15-1505, which involved allegations of discourtesy to the public and conduct unbecoming while McMAHON was employed at the Sausalito Police Department.  Wilk. Decl. ¶12, 15, and Exh. B at pages 8-10. That matter resolved with no discipline or misconduct findings and was closed by WILKINSON on December 30, 2015.  *Id.*

- PORAC LDF Case File No. 15-3187 involved an allegation of disrespectful treatment of the pubic and unreasonable use of force.  Wilk. Decl. ¶16 and Exh. B at pages 11-13. That matter resolved with an "exonerated" finding and was closed by WILKINSON on June 24, 2016. (*Id.*)

Following the closure of PORAC LDF Case File No. 15-3187, defense counsel sent McMAHON a closing representation letter, which stated:

> As the matter has now concluded and no further representation is required, I am closing your case with both the PORAC Legal Defense Fund and this office.

Wilk. Decl. ¶¶17, 19(b) and Exh. A.

Nothing in the original Complaint filed by against WHITNEY or the proposed amended complaint suggests that the subject of the above representations at McMAHON's prior law enforcement agencies is related in any way to the claims made in his pending lawsuit.  Docket Nos. 1 and 24-1; see also, Wilk. Decl. ¶28, Exhs. A, B, and D.

**B.      Communications with Plaintiff After 2016**

In the period from January 2019 through October 2023, WILKINSON and McMAHON communicated directly on only two occasions: July 16, 2020, and September 14, 2023. Wilk. Decl. at Section B.

The July 16, 2020 communication began with an email sent at 6:01 p.m. *to* WILKINSON *from* McMAHON that asked a question about whether the first paragraph of a Verification form should contain more information.  Wilk. Decl. at Section B(2), ¶65, Exh. S.  Uncertain whether McMAHON was seeking an independent consult or had mis-directed an email meant for the attorney who drafted the verification form, WILKINSON telephoned McMAHON at 6:15 p.m. Wilk. Decl. at ¶66-68, Exh. T.  They spoke for about three (3) minutes, after which WILKINSON sent a follow-up email stating:

> Thank you for taking my call and confirming the email below was
> misdirected and meant for Justin Buffington rather than as a request
> for a consult with me.  I had heard rumor that you were going to file a
> writ against the City related to the pending investigation, and I am glad
> to see it moving forward.  As you know, my client John Whitney
> likewise has been poorly treated by the City.  If collaboration would be
> helpful, please have Justin reach out."

Wilk. Decl. ¶67, Exh. S at page 3.

After confirming McMAHON was not seeking any legal advice, guidance, or consultation, WILKINSON expressed empathy for how difficult Plaintiff's situation was and support for his challenge to the maltreatment he suffered from the City of Vallejo, as well as let him know that if there was anything she could do, or that her client JOHN WHITNEY could do, to have his current counsel reach out.  Wilk. Decl. at ¶71 and Exh. S.  No legal advice or guidance was provided, nor was any attorney-client relationship established.  (*Id.*)

9

The September 14, 2023 communication occurred because WILKINSON returned a call on behalf of WHITNEY after McMAHON had contacted the El Cerrito Police Department inquiring about WHITNEY's work schedule.[4]  Wilk. Decl. at Section B(1).  At the time she placed the call, WILKINSON did not know McMAHON had filed a lawsuit against WHITNEY nor did McMAHON share that information with her during the conversation.  Wilk. Decl. ¶35, 45.  Rather, WILKINSON assumed McMAHON had called to congratulate WHITNEY on the $900,000.00 settlement of his whistleblower lawsuit and was likely going to ask for the contact information of the attorney who secured that outcome.  Wilk. Decl. ¶39-40.

WILKINSON told McMAHON she was calling on behalf of WHITNEY and asked if he was calling to congratulate him for the settlement.  *Id.*;  Docket No. 28-1 at ¶37.  McMAHON advised he was calling to serve an arbitration subpoena.  Wilk. Decl. ¶44.  During the conversation, WILKINSON and McMAHON discussed how poorly Plaintiff had been treated by the CITY OF VALLEJO.  Plaintiff did not allege WHITNEY was responsible for his wretched circumstances. WILKINSON again expressed empathy, stating either that McMAHON got a "raw deal" or was "screwed over."  Wilk. Decl. ¶42.  WILKINSON believed during the conversation that WHITNEY and McMAHON remained allied in their shared experience of having been poorly treated by the Vallejo Police Department and had no reason to suspect there may be a conflict of interest between the two.  Wilk. Decl. ¶43-44.  At no time during that call did McMAHON advise WILKINSON that he had filed a lawsuit against her current client, John Whitney.  Wilk. Decl. at ¶¶ 35, 45.

Following the September 14, 2023 call, WILKINSON sent an email to McMAHON's last known attorney, Justin Buffington, which stated:

> I am not sure if you are still representing Ryan McMahon, but he called the El Cerrito Police Department looking for my client, John Whitney.  I returned the call on Whitney's behalf, uncertain whether he was just offering congratulations for the recent settlement, or for some other reason.  He indicated his attorney wanted him to find out when Whitney was working so a subpoena for his upcoming arbitration could be served.

---

[4] As noted *supra,* McMAHON incorrectly states he called the "Pablo" police department, an agency for which WHITNEY has never worked.

> However, the connection on the call was scratchy, and when I asked
> who his attorney was, I could not understand what he said except that
> it was someone out of Southern California.  I thought perhaps it might
> be an RLS attorney from one of the other offices.
>
> Upon learning he was calling about a matter on which he was
> represented, I ended the call.  I thought I should let you know.

Wilk. Decl. ¶31, Exh. E.

> Shortly thereafter, Mr. Buffington replied:
>
> We don't rep him anymore due to a conflict ther [sic] developed
> involving another VPOA member. I don't know who represents him.

Wilk. Decl. ¶34, Exh. E.

On September 18, 2023, WILKINSON learned that McMAHON had filed a lawsuit against WHITNEY, and that Lenore Albert was his new counsel.  Wilk. Decl. ¶¶35-37.  She then forwarded to Ms. Albert the email previously sent to Mr. Buffington. (*Id.*)

**C.     Communications with McMahon's Counsel**

On July 28, 2020, the news publication Open Vallejo posted an article entitled: "Vallejo police bend badges to mark fatal shootings."  Wilk. Decl. ¶73, Exh. H.  The next day, attorney Dale Allen, who was then-representing McMAHON, contacted WILKINSON by text, which resulted in a phone call.  Wilk. Decl. ¶74, Exh. L.  Mr. Allen was seeking information about the badge bending reported by Open Vallejo, which WILKINSON provided.  *Id.* at ¶76.  At no time during that call did WILKINSON provide advice to McMAHON or establish an attorney-client relationship with McMAHON.  Rather, WILKINSON served simply as a resource for McMAHON's then-counsel. Wilk. Decl. ¶77.

On August 4, 2020, WILKINSON was contacted by attorney Justin Buffington, who was then-representing McMAHON in connection with his administrative disciplinary case. Wilk. Decl. ¶78.  In an email, Mr. Buffington accused her client, JOHN WHITNEY, of releasing confidential personnel information about McMAHON.  *Id.*  That prompted WILKINSON to call Mr. Buffington to discuss the accusation directly as she felt he might be operating off an incomplete set of facts.  Wilk. Decl. ¶79. WILKINSON left a voicemail, which Mr. Buffington returned promptly.  Wilk.

*Id.*, Exhs. L, M. They thereafter discussed McMAHON's current employment predicament as well as WHITNEY's, including the badge bending allegations.  Wilk. Decl. ¶80, Exh. L.   During the conversation, Mr. Buffington issued an apology for the accusation that had been made on an incomplete set of facts.[5]  *Id.* ¶80-82, Exh. L.

Following that conversation, WILKINSON sent Mr. Buffington a follow-up email, which stated:

> Thank you for the call right now.  I am glad we were able to straighten that out, and I very much appreciated your apology.
>
> As we discussed, John Whitney never named or "dimed out" McMahon to anyone, let alone the press, and released no confidential information.  Nothing Whitney said in his claim, pending lawsuit, or to the press pointed toward McMahon.
>
> Indeed, what Whitney does know makes him an ally for McMahon. Both of them have similar experiences – the City running roughshod over their POBR, due process, and other statutory rights.  When you get a copy of the lawsuit, you'll see what I mean.  Moreover, it seems to me that Whitney is the chief witness for the defense if they come after Ryan on the badge bending because he can confirm the discovery timeline for a statute of limitations defense.
>
> As we also discussed, I personally have great fondness for [Ryan] having known him both at Sausalito PD and Central Marin.  When I learned Ryan was part of the badge bending, my personal opinion (shared with no one other than you and my client) was that Ryan is a good person who fell in with the wrong crowd and was likely pressured into having his badge bent.  My client holds the same view.
>
> I'd be interested in a copy of the Petition you filed for McMahon.  If you would be so kind as to forward a copy over, I would greatly appreciate it.  Given what you told me, I'm wondering if I can use that to establish a POBR violation pattern for 3309.5 malice purposes.

---

[5] In that Plaintiff, through his counsel, apologized in July 2020 for accusing WHITNEY of releasing confidential information about him, and given that WHITNEY had helped McMAHON in his quest to secure fair treatment from the CITY OF VALLEJO, defense counsel had no reason to believe in September 2023 that her former client was in an adverse posture to her current client, let alone that intended to pursue any claim against WHITNEY based on the same set of facts for which Plaintiff had apologized in July 2020.  Wilk. Decl. ¶83.

DEFENDANT WHITNEY'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY
*McMahon v. Whitney, Case No. 2:23-cv-01972-KJM-JDP*

Wilk. Decl. ¶82, Exh. L.

In October 2020, Mr. Buffington contacted WILKINSON inquiring whether WHITNEY "would be willing to sign a declaration" on behalf of McMAHON.  Wilk. Decl. 85.  The parameters of that declaration were thereafter negotiated via a series of emails, and the final version was signed on December 2, 2022. Wilk. Decl. ¶86.

The McMAHON petition was unsuccessful. Mr. Buffington forwarded a copy of the final decision to WILKINSON in August 2023.  Wilk. Decl. ¶88, Exh. O.

**D.    Communications with the Broadmoor Police Officers' Association**

On dates unknown, McMAHON was hired by the Broadmoor Police Department and became a member of the Broadmoor Police Officers' Association, which is one of defense counsel's organizational clients.  Wilk. Decl. Section D.  Defense counsel first learned McMAHON had been hired in Broadmoor when she saw the news article published by ABC7 News on November 10, 2022 publicizing his hiring. Wilk. Decl. ¶90.

WILKINSON serves as legal counsel for the Broadmoor Police Officers' Association (hereafter "BPOA"), which is a union representing the interests of the members of the Broadmoor police department.  Wilk. Decl. ¶91.  She advises that organization on its rights and responsibilities in labor-related matters. *Id.*

In January 2023, WILKINSON was contacted by BPOA Vice President Michael Davis. Wilk. Decl. ¶95.  She gave advice to the Association about its duties and responsibilities towards members who hold probationary status.   *Id.*  At no time did WILKINSON communicate with McMAHON in connection with that consult, nor was she advised what Vice President Davis did with the information provided.  Wilk. Decl. ¶¶94-98.  WILKINSON did not receive any confidential information from McMAHON about his employment at the Broadmoor Police Department, nor did she ever discuss with him his situation at that jurisdiction.  *Id.*

**III.    ARGUMENT**

**A.    Standards for a Disqualification Motion**

In the Ninth Circuit, state law applies in determining whether to disqualify counsel. *In re*

*Cnty. of L.A.,* 223 F.3d 990, 995 (9th Cir.2000). Indeed, attorneys practicing in the Eastern District of California must be "familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto…." Eastern District Local Rule 180(e).

Because motions to disqualify are often tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored and imposed only when absolutely necessary. See *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd*., 760 F.2d 1045, 1050 (9th Cir.1985) (recognizing that because of the potential for abuse, disqualification motions "should be subjected to particularly strict judicial scrutiny" (citations and quotes omitted)). As this district court previously noted: "Motions to disqualify counsel are viewed with extreme caution since they can be misused as techniques of harassment and tend to deprive a party of representation of their choice." *Foster Poultry Farms v. Conagra Foods Refrigerated Foods Co., Inc.* 2005 WL 2319186, at *3 (E.D. Cal., Sept. 22, 2005) citing *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); *Comden v. Superior Court,* 20 Cal.3d 906, 915, (1978)].

As this district court noted in *Storz Management Company v. Carey*, 526 F.Supp.3d 747, 751–752 (E.D. Cal. 2021), the decision to disqualify counsel for conflict of interest requires the careful balancing of a number of factors including "a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that 'tactical abuse underlies the disqualification motion.'"

The disqualification of counsel is "generally disfavored and should only be imposed when absolutely necessary." *Id.*  The party seeking disqualification thus has a heavy burden and must satisfy a high standard of proof.  *Evans v. Artek Systems Corp*. 715 F. 2d 788, 791 (2nd. Cir. 1983).

### B.    Plaintiff Waived the Right to Seek Disqualification

"It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it

14

1  promptly is deemed to have waived that right." *Trust Corp. of Montana v. Piper Aircraft Corp.*,

2  701 F. 2d 85, 87 (9th Cir. 1983). See, also, *American Cast Iron Pipe Co.* 847 F. 2d 725, 732 (11th

3  Cir. 1988): "litigant may not delay filing a motion to disqualify in order to … deprive his opponent

4  of counsel of his choice after substantial preparation of the case has been completed."

5       Plaintiff first became aware that WILKINSON represented WHITNEY on July 16, 2020,

6  when he misdirected an email to his former counsel that was meant for his current counsel. Wilk.

7  Decl. Section C(2), Exh. S.

8       On August 4, 2020, Plaintiff, through his counsel, accused WHITNEY of releasing

9  confidential information about his employment.  Wilk. Decl. at ¶¶78-83, Exh. L .   After being

10  more fully advised of the facts related to the badge bending scandal, Plaintiff, through his counsel,

11  apologized for that unfounded accusation.  *Id.*  No suggestion of impropriety in WILKINSON

12  representing WHITNEY was raised at that point.  Rather, Plaintiff's then-attorney, Justin

13  Buffington, worked collaboratively with WILKINSON to secure a declaration supporting the state

14  court lawsuit filed by McMAHON against the CITY OF VALLEJO.  Wilk. Decl. ¶¶85-88.

15       On September 18, 2023, after learning that her former client had filed a lawsuit against her

16  current client, defense counsel notified Plaintiff's counsel in this action, Lenore Albert, that she

17  represented Defendant WHITNEY. Wilk. Decl. ¶35-37, Exh. E.

18       It was not until a month later, on October 13, 2023, that Plaintiff first raised the question of

19  whether defense counsel should be disqualified.  Wilk. Decl. ¶111.  Defense counsel responded

20  with a seven (7) page letter setting out her perspective on the disqualification issue.  Wilk. Decl.

21  ¶113, Exh. D.

22       After that letter, Plaintiff did not object to WILKINSON's continued representation of

23  WHITNEY.  Wilk. Decl. ¶¶ 114-115, 120. Rather, Plaintiff's counsel stipulated that WILKINSON

24  could have an extended period of time to file a responsive pleading while Plaintiff considered

25  amending the complaint.  Wilk. Decl. ¶¶115, 120-124.   She also met and conferred in response to

26  correspondence WILKINSON had sent advising of deficiencies in the Complaint.  *Id.*.  Except in a

27  passing comment on October 16, 2023 that a group of "anonymous" attorneys had agreed that they

28

DEFENDANT WHITNEY'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY

*McMahon v. Whitney, Case No. 2:23-cv-01972-KJM-JDP*

would not "touch [the case] with a 10 foot pole" if in defense counsel's shoes, the subject of disqualification did not come up again until January 5, 2024, which was after the Motion to Dismiss and the anti-SLAPP motions filed by WHITNEY had been fully briefed.  Wilk. Decl. at ¶¶ 114-115; 120-124.

Delay in pursuing disqualification is an indication that the motion may have been made for tactical reasons.  In *QuickLogic Corporation v. Konda Technologies, Inc,* 618 F. Supp. 3d 873 (N. D. Cal. 2002), the court stated:

> Because an attempt to disqualify the opposing attorney is often tactically motivated and disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored.*See, Visa U.S.A., Inc. v. First Data Corp.,* 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003).  Given the unlikelihood that an actual breach of confidentiality occurred, the strategic timing of the motion (filed just days after Defendants' motion to dismiss was denied), and the delay in in filing, Defendants' motion appears to be motivated by a desire to derail the ongoing litigation.  It is for this reason that motions for disqualification are "subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion, Int'l Corp. v. Style Cos., Ltd.,* 760 F. 2d 1045, 1050 (9th Cir. 1985).  The party seeking disqualification bears a "heavy burden" which Defendants have failed to meet.  *See, City & Cnty. of S.F. v. Cobra Sols., Inc.* 38 Cal. 4th 839, 852, 43 Cal. Rptr. 3d 771, 135 P.3d 20 (2006).

*QuickLogic, supra*, 618 F. Supp ed at 883.

As noted by this Court in *Storz Management Company v. Carey* 526 F.Supp.3d 747, 752–753 (E.D. Cal. 2021), a party "who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Id.,* citing *River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309 (1987). Therefore, "[w]here the party opposing the motion can demonstrate prima facie evidence of unreasonable delay in bringing the motion causing prejudice to the present client, disqualification should not be ordered." *Storz, supra,* 526 F. Supp. 3d at 753 (citing *Zador Corp. v. Kwan*, 31 Cal. App. 4th 1285, 1302 (1995)).

Once delay has been shown,"[t]he burden then shifts back to the party seeking disqualification to justify the delay." *Stolz, supra,* 526 F. Supp. 3d at 753.  The party seeking

disqualification should address: "(1) how long it has known of the potential conflict; (2) whether it has been represented by counsel since it has known of the potential conflict; (3) whether anyone prevented the moving party from making the motion earlier, and if so, under what circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate or futile and why." *Id.* (citing *River West, Inc.*, 188 Cal. App. 3d at 1309).

These factors weigh in favor of Defendant WHITNEY.  Plaintiff has known of the potential conflict since July 2020.  Within days of filing his Complaint on September 13, 2023 (Docket No. 1), and almost four months *before* the disqualification motion was filed, Plaintiff's current counsel was made aware WILKINSON represented WHITNEY.  The disqualification issue was raised, but then abandoned in October 2013.  After that point, Plaintiff had ample opportunity to file the disqualification motion at any point after WILKINSON first appeared in the case on November 14, 2023 (Docket No. 13), but delayed filing the disqualification motion until January 5, 2024, which was after the parties completed extensive brief on Defendant WHITNEY's Motion to Dismiss pursuant  Fed. R. Civ. Proc. 12(b)(6) motion (Docket Nos. 15, 25) and his anti-SLAPP motion (Docket Nos. 20-23, 27).  It appears, tactically, Plaintiff is concerned about the quality of those motions and whether similar motions may be filed in connection with the amended complaint he has proposed be filed.  (See, Docket Nos. 24, 29.)

In *River West, supra*, 188 Cal. App. 3d 1297 (1987), the court noted that "a party seeking to challenge an attorney's qualification to represent, and adversary party *must* proceed at the first reasonable opportunity and by proper motion to achieve that end." *Id.* (emphasis in original).  The court went on to state:  "Whenever it first appears a disqualification motion should be noticed and filed, it should be done within a reasonable time irrespective of the date it might be heard." *River West, supra,* 188 Cal. App. 3d at 1312.

Plaintiff did not proceed at the first reasonable opportunity, which was immediately after defense counsel first appeared by filing the time extension stipulation.  (Docket No. 13.) His second opportunity was after Defendant filed the motion to dismiss.  (Docket No. 15).  Plaintiff not only failed to file a disqualification motion at that point, but also did not re-initiate the meet-and-confer

process that had been dormant since October 2023.  Plaintiff's third opportunity was after

Defendant filed his anti-SLAPP motion.  (Docket No. 20.)  Plaintiff still waited.

Instead of proceeding at the first opportunity, Plaintiff remained silent for almost three

months, from October 18, 2023 to January 5, 2024.

In *Koloff v. Metropolitan Life Insurance Co.,* 2014 WL 2590209 (E.D. Cal 2014.), this

Court found a four-month delay sufficient to deny a disqualification motion. The court stated:

> MetLife waited more than four months after receiving the summons in
> this action to file a motion to disqualify counsel. Such a delay may be
> sufficient to warrant the denial of a motion to for disqualification. *See,*
> *e.g., Openwave Sys. v. Myriad France S.A.S.,* 2011 U.S. Dist. LEXIS
> 35526 at *15–18, 2011 WL 1225978 at *6–7 (N.D.Cal. Mar.31,
> 2011) (finding the delay of four months warranted a denial of the
> motion to disqualify counsel). Indeed, although MetLife asserted that
> it anticipated filing a motion to seek disqualification by April 15,
> 2014, MetLife waited until the Court-ordered deadline of April 25,
> 2014 to file the motion. MetLife has shown no urgency seeking
> disqualification of counsel in this action …

*Koloff, supra,* 2014 WL 2590209, at *5.

Even shorter delays have also resulted in denial of a judicial disqualification/recusal motion.

See, *Apple v. Jewish Hosp. & Medical Center,* 829 F.2d 326, 334 (1987) (delay of two months after

movant learned of facts allegedly requiring recusal rendered motion untimely); *Datagate, Inc. v.*

*Hewlett-Packard Co.*, 941 F. 2d 864, 871-72 (9th Cir. 1991) (delay of six weeks in filing recusal

motion rendered motion to disqualify untimely).

Plaintiff was unconcerned with disqualification from October 2023 (when the issue was

initially raised) to January 2024 (when the disqualification motion was filed).  This delay is

sufficient to establish waiver.  Given that the motion was filed only after Plaintiff sought to file a

proposed amended complaint that suffered from the same kind of deficiencies as the original

complaint (see, Docket No. 24), it can be reasonably inferred that the motion was for tactical

reasons rather than a legitimate concern.  As a result, the motion should be denied.

//

//

18

**C.      Plaintiff Has Failed to Show that the Prior Representation is "Substantially Related" to the Current Matter**

It is undisputed that disqualification is sought based on WILKINSON's *former* representation of McMAHON, i.e., on a claim of successive representation, rather than a claim of simultaneous representation.

A court "may disqualify an attorney from representing a client with interests adverse to those of a former client." *H.F. Ahmanson & Company v. Salomon Brothers, Inc.,* 229 Cal.App.3d 1445, 1451 (1991). To disqualify a former counsel requires a showing that there was information acquired during the first representation that is material to the second; that is, the information "must be found to be directly at issue in, or have some critical importance to, the second representation. *Farris v. Fireman's Fund Ins. Co.,* 119 Cal.App.4th 671, 680(2004).  In other words, disqualification occurs only when the attorney is acting adversely to the former client and a "substantial relationship" exists between the subjects of the current and former engagements. *H.F. Ahmanson & Co.,* 229 Cal.App.3d at 1452 & n. 2, 280 Cal.Rptr. 614; *see also Adams v. Aerojet–Gen. Corp.,* 86 Cal.App.4th 1324, 1332 (2001); *Trone v. Smith,* 621 F. 2d 994, 998 (9th Cir. 1980) ("The relevant test for disqualification is whether the former representation is 'substantially related' to the current representation.").

In *Trone v. Smith*, 621 F. 2d 994 (9th Cir. 1980), the Ninth Circuit adopted an attorney disqualification rule designed to implement the Code of Professional Responsibility with respect to representing a party opposing a former client.  *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir. 1983). The court held that the "relevant test for disqualification is whether the former representation is 'substantially related' to the current representation." *Id.* "Substantiality is present if the factual contexts of the two representations are similar or related." *Trust Corp., supra,* 701 F. 2d at 87 (citing *Trone, supra,* 621 F. 2d at 998).

**1.      There is No Substantial Relationship Between this Action and the Cases Pre-dating Plaintiff's Employment at the Vallejo Police Department**

Three factors are to be considered in determining whether there is a substantial relationship: 1) factual similarities in the two representations, 2) legal similarities in the two representations, and

3) the nature and extent of the individual attorney's involvement in the previous case. *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d 1445, 1456-57, (1991), adopting the analysis of *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2nd Cir.1975).

Defense counsel provided direct representation to Plaintiff on four (4) occasions long before any of the events giving rise to this lawsuit occurred.  The matters for which defense counsel provided representation to Plaintiff were:

- PORAC LDF Case No. 12-1685, which involved allegations of off-duty misconduct while McMAHON was employed at the Sausalito Police Department.  That matter resolved without disciplinary action and was closed on October 4, 2013. Wilk. Decl. ¶12 and Exh. B at pages 3-4.

- PORAC LDF Case No. 14-0485, which  involved allegations of disrespectful conduct to a member of the public while McMAHON was employed at the Sausalito Police Department.  That matter was closed on December 23, 2014 because Plaintiff was just a witness to the incident and not a subject of the allegations, which meant he was not entitled to legal representation under either the PORAC LDF Plan Document or the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.* Wilk. Decl. ¶13 and Exh. B at pages 5-6.

- PORAC LDF Case No. 15-1505, which involved allegations of discourtesy to the public and conduct unbecoming while McMAHON was employed at the Sausalito Police Department.  That matter resolved with no discipline or misconduct findings and was closed on December 30, 2015.  Wilk. Decl. ¶14 and Exh. B at pages 8-10.

- PORAC LDF Case File No. 15-3187 involved an allegation of disrespectful treatment of the pubic and unreasonable use of force.  That matter resolved with an "exonerated" finding and was closed on June 24, 2016. Wilk. Decl. ¶15 and Exh. B at pages 11-13.

The disqualification motion does not identify any factual or legal similarities between those cases and the current case.  The reason: there are none.  As a result, the disqualification motion

1  should be denied.

2          In what is an acknowledgement that the prior representation, standing alone, is insufficient,

3  Plaintiff asserts that defense counsel's knowledge of how he thinks, which she allegedly learned

4  during the prior representations, creates an "advantage."  Docket No. 28-1 at ¶23.  Those

5  arguments should be rejected for two reasons.  First, how Plaintiff thought eight (8) years ago may

6  have absolutely no bearing on how he thinks now.  Additionally, as this Court has recognized, in

7  successive representation cases, "exposure to 'general playbook' information" such as a former

8  client's general litigation or settlement strategy is not sufficient to disqualify an attorney from

9  adverse successive representation." *Hartford Cas. Ins. Co. v. American Dairy and Food Consulting*

10 *Laboratories, Inc.* 2010 WL 2510999 (E.D. Cal. 2010) *3.  The court stated:

11              [T]he attorney's acquisition during the former representation of
12              general information about the former client's "overall structure and
                practices" would not of itself require disqualification unless it were
13              found to be "material" – i.e., directly at issue in, or of crucial
                importance to, the second representation. *Id.* "The same is true about
14              information such as the first client's 'litigation philosophy' or 'key
                decision makers.'
15

16 *Id.*

17         Here, Plaintiff alleges, at best, that defense counsel gathered general play book information

18 about how he thought and his life experiences more than eight (8) years ago during "general

19 conversations." Docket No. 28-1 at ¶¶23; see also, ¶15. Plaintiff's bare bones, general assertions

20 are insufficient to support disqualification: "Conclusory statements are insufficient to demonstrate

21 the relevance and materiality of confidential information for purposes of showing a substantial

22 relationship." *Human Longevity, Inc. v. J. Craig Venter Institute, Inc.* 2018 WL 5840045 (S.D. Cal.

23 2018).

24         Courts look at the practical consequences of the attorney's representation of the former client

25 and ask whether confidential information *material* to the current dispute would normally have been

26 imparted to the attorney by virtue of the nature of the former representation. *Ahmanson, supra* 229

27 Cal.App.3d at 1454; *see also Trone, supra,* 621 F.2d at 1000–01.  For the first representation be

28

*material* to the second, it has to be directly at issue in, or have some critical importance to, the second representation. *Farris, supra,* 119 Cal.App.4th at 680.  Plaintiff has not made that showing.

Plaintiff has thus utterly failed to meet his burden of proving that the representation provided by WILKINSON prior to McMAHON joining the Vallejo Police Department disqualifies her from this matter. As a result, this motion should be denied.

### 2.    The Attorney-Client Relationship Ended in June 2016 and Was Never Thereafter Re-Established

There was no attorney-client relationship with Plaintiff after he transferred to the Vallejo Police Department.  Indeed, the relationship ended on June 24, 2016 when counsel sent the closing file letter. The relationship was never thereafter re-established.

As noted in *California Earthquake Authority v. Metropolitan West Securities LLC,* 712 F. Supp. 2d 1124 (E.D. Cal 2010):

> An attorney's duty to his or her client depends on the existence of an attorney-client relationship. If that relationship does not exist, the fiduciary duty to a client does not arise. Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal." *Nichols v. Keller,* 15 Cal.App.4th 1672, 1684, 19 Cal.Rptr.2d 601 (1993); *see also Responsible Citizens v. Superior Court,* 16 Cal.App.4th 1717, 1732–33, 20 Cal.Rptr.2d 756 (1993).

*Id.* at 1129.

In *California Earthquake,* the attorney-client relationship arose out of a legal services contract of indefinite duration, which the attorney had assumed was terminated by the passage of time and inactivity.  Here, by contrast, the representation provided was for a definite duration (while employed at the Sausalito and Central Marin Police Departments), and clearly ended in June 2016 with the case closure letter.  Wilk. Decl. ¶¶16-17, Exh. B. In that letter, WILKINSON gave express, written notice that no further representation would be provided.  *Id.*

Plaintiff contends that his "continued conversations" with WILKINSON after he joined the Vallejo Police Department involved "giving [him] advice" about the challenges of his employment situation.  (Motion at 9:11-15)  The evidence submitted belies that claim.

1    Plaintiff and defense counsel had only *two* conversations after the attorney-client

2  relationship ended in June 2016.  The first occurred on July 16, 2020, and the second on September

3  14, 2023.  Wilk. Decl. at Section B(2).

4    The first conversation centered around an email that Plaintiff had sent to Ms. Wilkinson.

5  Wilk. Decl. at Section B(2).  Upon receipt, she called him, confirmed it was not a request for a

6  consult but a misdirected communication, and sent a follow-up email to confirm the conversation.

7  *Id.*  In that three (3) minute conversation, Plaintiff did not request, nor did he receive, legal advice.

8  Rather, Plaintiff and Ms. Wilkinson discussed the misdirected email, and caught up on how things

9  were going with them both, including that Plaintiff was challenging how poorly the City of Vallejo

10  had treated him, a situation with which Ms. Wilkinson empathized.  The follow-up email sent

11  immediately after the conversation stated:

12    Thank you for taking my call and confirming the email below was
      misdirected and meant for Justin Buffington rather than as a request
13    for a consult with me.  I had heard rumor that you were going to file a
      writ against the City related to the pending investigation, and I am glad
14    to see it moving forward.  As you know, my client John Whitney
      likewise has been poorly treated by the City.  If collaboration would be
15    helpful, please have Justin reach out."

16

17  Wilk. Decl. ¶¶66-68.

18    The September 14, 2023 communication occurred because WILKINSON returned a call on

19  behalf of her current client after McMAHON had attempted to contact WHITNEY at the El Cerrito

20  Police Department.  Wilk. Decl. at Section B(1).  At the time she placed the call, WILKINSON did

21  not know McMAHON had filed a lawsuit against WHITNEY nor did McMAHON share that

22  information with her during the conversation.  *Id.*  Rather, WILKINSON assumed McMAHON had

23  called to congratulate WHITNEY on the $900,000.00 settlement of his whistleblower lawsuit and

24  was likely going to ask for the contact information of the attorney who secured that outcome.  Wilk.

25  Decl. ¶¶33, 40.

26    WILKINSON told McMAHON she was calling on behalf of WHITNEY and asked if he

27  was calling to congratulate him for the settlement.  Wilk. Decl. ¶33, 39, 46, Exh. E; Docket No.

28

DEFENDANT WHITNEY'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY
*McMahon v. Whitney, Case No. 2:23-cv-01972-KJM-JDP*

28-1 at ¶37.  McMAHON advised he was calling to serve an arbitration subpoena.  Wilk. Decl. ¶33, 44.  During the conversation, WILKINSON and McMAHON discussed how poorly Plaintiff had been treated by the CITY OF VALLEJO.  WILKINSON empathized, stating either that McMAHON got a "raw deal" or was "screwed over."  Wilk. Decl. ¶42.  WILKINSON believed during the conversation that WHITNEY and McMAHON remained allied in their shared experience of having been poorly treated by the Vallejo Police Department and had no reason to suspect there may be a conflict of interest between the two.  Wilk. Decl. ¶43.  At no time during that call did McMAHON advise WILKINSON that he had filed a lawsuit against WHITNEY. Wilk. Decl. ¶45.

Following the September 14, 2023 call, WILKINSON sent an email to McMAHON's last known attorney, Justin Buffington, which stated:

> I am not sure if you are still representing Ryan McMahon, but he called the El Cerrito Police Department looking for my client, John Whitney.  I returned the call on Whitney's behalf, uncertain whether he was just offering congratulations for the recent settlement, or for some other reason.  He indicated his attorney wanted him to find out when Whitney was working so a subpoena for his upcoming arbitration could be served.

> However, the connection on the call was scratchy, and when I asked who his attorney was, I could not understand what he said except that it was someone out of Southern California.  I thought perhaps it might be an RLS attorney from one of the other offices.

> Upon learning he was calling about a matter on which he was represented, I ended the call.  I thought I should let you know.

Wilk. Decl. ¶33, Exh. E.

The attorney-client privilege is ordinarily triggered only by a client's request for legal advice.  *In re County of Erie* 473 F.3d 413, 419-421, 423 (2nd Cir. 2007)  (discussing legal v. nonlegal advice).  In *United States v. Williams* 720 F. 3d 674, 688 (8th Cir. 2013), the court found that a mixture of social exchanges and discussions about general legal issues was insufficient to trigger attorney-client relationship. *Id.* at 688. As further noted in *Sheinkoph v. Stone*, 927 F. 2d 1259, 1265 (1st Cir. 1991): "To imply an attorney-client relationship, … the law requires more than

an individual's subjective, unspoken belief that the person with whom he is dealing, who happens to be a lawyer, has become his lawyer."  The court went on to note:

> Human beings routinely wear a multitude of hats.  The fact that a person is a lawyer, or a physician, or a plumber, or a lion-tamer, does not mean that every relationship he undertakes is, or can reasonably be perceived as being, in his professional capacities.

*Id.*

Here, a reasonable person in Plaintiff's shoes might have assumed defense counsel continued to be interested in his family and professional success, but not that she was acting as his attorney.  Indeed, no request to provide legal advice nor agreement to do the same occurred, nor was any such request alleged in the disqualification motion.

Further, nothing about defense counsel's conversations with the attorneys actually representing McMAHON suggested she was providing representation to him on those matters.  .  The communications defense counsel had with Plaintiff's attorneys in 2020 did not suggest that WILKINSON was serving as Plaintiff's attorney.  Rather, it was clear she was acting as WHITNEY's attorney, who Plaintiff's then-attorneys saw as a resource.

As noted in *California Earthquake Authority, supra*, 712 F. Supp. 2d 1124, 1129: "An attorney's duty to his or her client depends on the existence of an attorney-client relationship.  If that relationship does not exist, the fiduciary duty to a client does not arise."

As no attorney-client relationship existed after the closing representation letter was sent to Plaintiff on June 24, 2016, this disqualification motion must be denied.

### 3.     Defense Counsel's Representation of Plaintiff's Union Did Not Establish an Attorney-Client Relationship with Plaintiff

Where an attorney represents an organization, the duties of counsel run to the organization and not to the individual members, officers or shareholders of the corporation. *See Venture Law Group v. Superior Court*, 118 Cal. App. 4th 96, 105 (2004) (holding that individual directors, officers and shareholders were not clients of the corporation and could not control assertion of corporation's attorney client privilege); see also, *STV Asia Ltd. v. PRN Corporation* 2006 WL 8460110 (N.D.Cal. 2006).  Indeed, an attorney for a corporation or other entity represents the entity

25

as an organization, not the entity's employees, members, or agents as individuals. *See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 119 F.3d 210, 215 (2d Cir.1997); *Aragon v. Pappy, Kaplon, Vogel & Phillips,* 214 Cal.App.3d 451, 463–64 (2d Dist.1989). Thus, the mere fact that Plaintiff was a member of the Broadmoor Police Officers' Association for which defense counsel acted as organization counsel, does not establish and an attorney client relationship with Plaintiff.

The decision in *Tauriac v. Sam Rosas* 2011 WL 2671517 (E.D. Cal. 2011) is instructive.  In that case, a former business agent for the Teamsters moved to disqualify union counsel based on advice and direction provided to the business agent while he was associated with the union. That advice included assisting the business agent with a criminal proceeding and representing him during a deposition in a wage-and-hour case.  The court held that the attorney provided services during the criminal case on behalf of the union, not the individual, and that the representation during the deposition was expressly limited in scope and had no substantial relationship to the current litigation.  Based on these facts, the disqualification motion was denied.

Likewise, at all times defense counsel acted on behalf of the Broadmoor Police Officers' Association as its counsel in labor-related matters. Wilk. Decl. at Section D.  She never spoke directly to Plaintiff and does not know what the union did with the information she provided.  *Id.* Because defense counsel at all times acted as entity counsel, not Plaintiff's counsel, the disqualification motion should be denied.

**D.     This Court Should Plaintiff's Suggestion to Exercise its Inherent Authority to protect Public Confidence and the Integrity of the Judicial System**

In *STV Asia Ltd, supra,* the court rejected Plaintiff's suggestion that in exercising inherent authority the court should disregard the California rules on successive representation.  The same should occur here.

//

//

//

DEFENDANT WHITNEY'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY
*McMahon v. Whitney, Case No. 2:23-cv-01972-KJM-JDP*

1

## IV.     CONCLUSION

2          Based on the foregoing, Plaintiff's motion to disqualify defense counsel should be denied.

3

4          Dated: January 14, 2024                    Berry | Wilkinson | Law Group
                                                       By    /s/ Alison Berry Wilkinson
5                                                      ALISON BERRY WILKINSON
                                                       Attorneys for Defendant JOHN WHITNEY
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WHITNEY'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY
*McMahon v. Whitney, Case No. 2:23-cv-01972-KJM-JDP*