# EXHIBIT Y

Alison Berry Wilkinson, SBN 135890
Berry | Wilkinson | Law Group
165 North Redwood Drive, Suite 206
San Rafael, CA 94903
Telephone/Facsimile: 415.259.6638
Email: alison@berrywilkinson.com

Attorneys for Plaintiff-Petitioner
JOHN P. WHITNEY

FILED/ENDORSED
Clerk of the Superior Court
DEC 22 2020
By K. Shront
DEPUTY CLERK

$435- CMFF395432

By Fax

ASSIGNED TO
JUDGE Wendy G. Getty
FOR ALL PURPOSES

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SOLANO

JOHN P. WHITNEY,

Plaintiff-Petitioner,

v.

THE CITY OF VALLEJO and its POLICE DEPARTMENT, CHIEF JOSEPH ALLIO, CHIEF ANDREW BIDOU, AND CITY MANAGER NYHOFF

Defendants-Respondents.

CASE NO. FCS055842

**VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR DAMAGES**

**[Code of Civil Proc. §1085; Government Code §§ 3304, 3309.5; Labor Code section 1102.5; Cal. Const. Art. 1, Section 1; Penal Code sections 502 and 1546]**

Plaintiff-Petitioner JOHN P. WHITNEY hereby alleges, as follows:

**INTRODUCTION AND NATURE OF THE CASE**

The City of VALLEJO and the VALLEJO POLICE DEPARTMENT retaliated against Captain JOHN P. WHITNEY for speaking truth to power. When Captain WHITNEY protested and reported unlawful, unethical, and corrupt behavior, his efforts to professionalize the VALLEJO POLICE DEPARTMENT were spurned, and he was punished for his whistleblowing activities. Rather than reward Captain WHITNEY's efforts to ensure professional policing for the betterment of the community, an excuse to

terminate Captain WHITNEY was crafted and the CITY unilaterally refused to permit him to use the mandated review processes that would have revealed it was a sham.

Through this action, Petitioner seeks to compel the City of Vallejo to set aside his termination as procedurally flawed, comply with constitutional due process as well as the Public Safety Officers' Procedural Bill of Rights Act (Government Code section 3300 *et seq.*) and the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association, provide him fair process, compensate for his lost wages and benefits, as well as hold the City accountable for having retaliated against a whistleblower.

**THE PARTIES**

1. **Plaintiff-Petitioner JOHN P. WHITNEY** (hereafter "Whitney," "Captain Whitney," or "Plaintiff") is an experienced, veteran law enforcement professional. Plaintiff began his employment with the City of Vallejo in 2000 where he continuously served as a full-time sworn peace officer as that term is defined by Penal Code section 830.1 until his summary termination on August 26, 2019. At the time of his employment termination, Mr. Whitney had ascended through the ranks from the classification of police officer to police captain.

2. By bringing this action to enforce his legal rights, Mr. Whitney does not waive the confidentiality privilege provided under Penal Code section 832.7 for any of the confidential personnel records at issue herein. As the City has already improperly released confidential personnel file materials in response to Public Records Act requests made by private citizens, Captain Whitney hereby provides notice that he intends to seek an Order maintaining under seal and preventing public disclosure of the remainder of his privileged documents. References to the underlying facts contained herein are presented in a summary fashion to balance the need to preserve this statutory confidentiality while complying with the Court rules, and does not constitute a waiver of the confidentiality

provided by Penal Code section 832.7 for any of the information gathered or relied upon in connection with the issues identified herein.

3. **Defendant-Respondent CITY OF VALLEJO** (hereafter "City" or "Defendant") is, and at all times herein relevant was, a Charter City located in Solano County, California. The City is organized and operates under the California Constitution and the laws of the State of California.

4. Pursuant to Charter Section 106, the City uses a "Council-Manager" form of Government. The City Council and the Mayor are the elected officers responsible for appointing a City Manager to manage the City's day to day affairs as the "chief executive and administrative officer of the City." (City Charter Article III; City Charter Article IV, Section 400.) The City Council and the Mayor are required to deal with City officers and employees solely through the City Manager. (*Id.* at Section 503.) A true and correct copy of the City of Vallejo Charter (hereafter "Charter") is attached hereto as Exhibit G.

5. **Defendant-Respondent VALLEJO POLICE DEPARTMENT** (hereafter "Police Department," "Department" or "Defendant") is, and all times herein relevant was, a public safety department organized and existing under the laws of the State of California, the California Constitution, and the City Charter. The Department's statement of Core Values includes a commitment to, among other things, (1) maintaining "professional and ethical standards of leadership, communication, and responsibility," (2) high standards of integrity; and (3) "foster[ing] a quality culture throughout the organization." A true and correct copy of the Department's Mission Statement and Core Values is attached hereto as Exhibit H. All members of the Department are obligated to adhere to these core values. At all times herein pertinent, Captain Whitney adhered to these values.

6. **Defendant-Respondent City MANAGER GREG NYHOFF** (hereafter "Nyhoff" or "City Manager") is, and at all times herein relevant was, the chief executive

and administrative officer for the City. Mr. Nyhoff was appointed as the City Manager on

January 22, 2018.  Pursuant to City Charter Section 500, Mr. Nyhoff's duties include:

    a.  Appointing, suspending and removing all City employees and appointive

        administrative officers.  The City MANAGER may "authorize any

        administrative officer who is subject to his/her direction and supervision to

        exercise these powers with respect to subordinates in that officer's

        department, office or agency."  (Exhibit G at Article V, Section 500(a).)

    b.  Directing and supervising the administration of all departments, offices and

        agencies of the City.  (*Id.* at Section 500(b).)

    c.  Investigating "the operations of the departments and other agencies of the

        City" to "assure proper performance."  (*Id.* at Section 500(i).)

    d.  Appointing Department Heads and Acting Department Heads when

        necessary.  (Exhibit G at Article V, Section 501.)

    e.  Employing "experts or consultants to perform work or give advice

        connected with the departments of the City" when necessary.  (*Id.*)

    7.    **Defendant-Respondent CHIEF ANDREW BIDOU** (hereafter "Bidou" or

"Chief Bidou") was the Chief Executive Officer of the Police Department from October

2014 to June 30, 2019, when he retired.   During that time period, and pursuant to Charter

Article V, Section 501, Bidou reported to the City Manager for the efficient

administration of the Police Department.  Bidou replaced Joe Kreins, who had served as

the Police Chief from July 2012 to October 2014.

    8.    **Defendant-Respondent CHIEF JOSEPH ALLIO** (hereafter "Allio" or

"Chief Allio") replaced Bidou as the Chief Executive Officer of the Police Department in

June 2019, a position he held until November 2019 when a permanent police chief was

appointed.   During that time period, and pursuant to Charter Article V, Section 501, Allio

reported to the City Manager for the efficient administration of the Police Department.

9.      At all times herein pertinent, the City, the City Manager, its Police Chiefs, and the Police Department had an obligation to abide by the California Constitution, all laws of the State of California, and all local policies and procedures.

**JURISDICTION AND VENUE**

10.      At all times herein relevant, JOHN WHITNEY held peace officer status pursuant to Penal Code section 830.1, and, as such, was entitled to all the rights and protections afforded by the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.* (hereafter "POBR").

11.      This action seeks, in part, to enforce the mandates contained in the POBR, which is "concerned primarily with affording individual police officer's certain procedural rights during the course of proceedings which might lead to the imposition of penalties against them." (*Los Angeles Police Protective League v. City of Los Angeles* (1995) 35 Cal. App. 4th 1535, 1540 [citing *White v. County of Sacramento* (1982) 32 Cal. 3d 676].) As noted by the California Supreme Court, the "[p]rotection of peace officers from abusive or arbitrary treatment in their employment is the essence of the Act." (*Pasadena Police Officers' Assn. v. City of Pasadena* (1990) 51 Cal. 3d 564, 572.)

12.      Among the POBR rights Petitioner seeks to enforce is the right to secure the fair disciplinary appeal hearing process required by Government Code section 3304(b). Although the procedures for a disciplinary appeal hearing are left to the agency to formulate (see, Gov't C. §3304.5), those procedures "are subject to scrutiny" by the courts to determine whether they satisfy the principles of fairness and constitutional due process. (*Giuffre v.* Sparks (1999) 76 Cal. App. 4th 1422, 1331 [citing *Runyan v. Ellis,* 40 Cal. App. 4th 961, 964-965).)  Indeed, in *Los Angeles Police Protection League v. City of Los Angeles* (2002) 102 Cal. App. 4th 85, 92, the court held that in serious discipline cases, "it is imperative" public employers "use the procedures which have traditionally been associated with the judicial process."

13. Government Code section 3309.5(a) makes it "unlawful for any public safety department to refuse to any public safety officer the rights and protections guaranteed" by POBR.

14. Jurisdiction of the superior court over these POBR claims is granted by Government Code section 3309.5(b), which provides:

> The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this chapter.

(Gov't C. 3309.5(b).) "[T]he import of 'initial' in section 3309.5 is to remove the defense of failure to exhaust administrative remedies in the event the employee elects to go to court with his claim of [a POBR] violation." (*Daugherty, supra,* 24 Cal. App. 5th at 945 [citing *Alameida v. State Personnel Bd.* (2004) 120 Cal. App. 4th 46, 54.)

15. A violation of POBR occurs when "any public safety department [denies or refuses] to any public safety officer the rights and protections guaranteed to him or her." (Gov't C. 3309.5(a); see also, *Daugherty v. City and County of San Francisco* (2018) 24 Cal. App. 5th 928, 945.) If a violation is found, the statute mandates the superior court "render appropriate injunctive or other extraordinary relief" to correct the violation, and authorizes as well monetary and punitive damages.

16. Venue in the County of Solano is proper pursuant to Code of Civil Procedures sections 393 and 394. This is an action against a "local agency" under the definition in section 394, and therefore venue is properly in the County in which the respondent is situated. Further, under section 393, the cause of action arose based on decisions, actions, and omissions within the County of Solano.

**CLAIM PRESENTATION**

17. Pursuant to California Government Code sections 905, 910, and 915, WHITNEY initially presented his claim for damages to the City on February 21, 2020. An Amended Claim was filed on or around March 24, 2020. The City did not give notice of claim rejection pursuant to Government Code section 913, nor did it provide written

notice pursuant to Section 915.4. As a result, this action is timely filed within the limitations period set forth in Government Code section 945.6.

## FACTS AND ALLEGATIONS

### A. *Employment History, Background, and Qualifications*

18. John Whitney is a twenty-three (23) year career law enforcement veteran who served at the VALLEJO POLICE DEPARTMENT with distinction, and promoted through the ranks to the classification of Captain.

19. Captain Whitney began his law enforcement career in 1996 at the Alameda County Sheriff's Office. In 1997, Whitney transferred to the Solano County Sheriff's Office, where he worked patrol, SWAT, the Mobile Field Force, and in the Courts. In 2000, Whitney transferred to the Vallejo Police Department as a police officer. In 2007 he promoted to the rank of Sergeant, was promoted to the rank of Lieutenant in 2012, and then to the rank of Captain in 2015. During the course of his law enforcement career, Captain Whitney:

a. Held a variety of assignments, including those detailed at length in his law enforcement resume, a true and correct copy of which is attached hereto as Exhibit A.

b. Was appointed as an Adjunct Professor at the Napa Valley College Criminal Justice Training Center in the Basic Police Academy, Dispatch Academy, and the Corrections Academy, where he is a master instructor in several topics. (Exhibit A at page 1.)

c. Received numerous commendations, true and correct samples of which are attached hereto as Exhibit B.

d. Received numerous letters of support, true and correct samples of which are attached hereto as Exhibit C.

e. Fulfilled the requirements for character, education, training and experience necessary to be awarded the following certificates from the California

Commission on Peace Officer Standards and Training: Basic Certificate (1998), Intermediate Certificate (2000), Advanced Certificate (2005), Supervisory Certificate (2010), and the Management Certificate (2014). True and correct copies of these certificates are attached hereto as Exhibit D.

f. Pursued college degrees and certificates, including, but not limited to, a Master's Degree in Law Enforcement and Public Safety Leadership from the University of San Diego (2019), a Master's Degree in Criminal Justice Administration from the Columbia Southern University (2007), a Bachelor's Degree from the Union Institute & University (2005), and certificates from the Harvard Kennedy School of Executive Education (2015, 2017, 2018), and Cornell University (2015, 2016). True and correct copies of these certificates are attached hereto as Exhibit E.

g. Received numerous awards, including, but not limited to, a Congressional Certificate of Recognition (April 2015), the Good Conduct Medal (April 2008, November 2010, May 2014, April 2017), the Medal of Merit (April June 2012, May 2014, April 2015), and the Medal of Courage (April 2008). True and correct copies of these awards are attached hereto as Exhibit F.

h. On March 14, 2019, just five months before his termination, Whitney was awarded a Lifetime Achievement Award from the American Society for Industrial Security (ASIS) for his dedication to law enforcement, education, and community service. (Exhibit F at page 8; Exhibit A at page 6.)

i. On May 30, 2019, just three months before his summary termination, Whitney was presented with the prestigious Lifetime Achievement Award for Excellence in Training by the California Commission on Peace Officer Standards and Training ("POST"). (Exhibit F at pages 2-7.)

20. Throughout his law enforcement career, Captain Whitney maintained a commitment to both modeling and enforcing high standards in the profession. As a result,

he never hesitated to insist that those who failed to follow law and policy be held accountable, and to report to higher authorities when policies, procedures, and laws were not being followed.

21. His personal commitment to professionalism and accountability should have been an asset to the Vallejo Police Department, but was instead derided, ignored, and repudiated. Consequently, Whitney suffered retaliation in the form of unjust and unfounded accusations, and unwarranted criticism. Nonetheless, Captain Whitney persisted. His continued commitment to professionalism and accountability ultimately lead to his summary termination.

**B. *The Events Leading to Captain Whitney's Wrongful Termination***

22. In December 2018, Chief Bidou learned that Captain Whitney was keeping notes about things happening in the workplace, as well as maintaining all his emails, and text messages as evidence of the toxic environment the Chief was fostering. He then ordered Captain Whitney to regularly delete his emails and text messages at least weekly, if not more often. At that time, Chief Bidou also inspected Captain Whitney's department-issued cell phone to make sure it was set to delete all texts. Captain Whitney followed that order only because he had been informed that all the texts and emails he sent and received in his position were preserved on the City server and in backups, and therefore could not be permanently erased. Six months later, on June 4, 2019, Chief Bidou then reversed positions, accusing Captain Whitney of violating the City's litigation hold policy and engaging in conduct unbecoming a police officer for destroying texts and emails in accordance with the order provided. That accusation came on the heels of Captain Whitney reporting the Chief's mismanagement of the Police Department to the City Manager and the Mayor.

23. In January 2019, Captain Whitney reported to the City Manager that there was a toxic environment at the police department, which did not support Captain Whitney's desire to perform at his highest level and was fostering an environment where

he could not express his honest opinion without fear of retaliation. Captain Whitney told Mr. Nyhoff that he needed to work for a city that was transparent, worked collaboratively with the community, and was committed to doing the right thing.

24. In January 2019, Captain Whitney also reported the hostile work environment to the Human Resources Director, who refused to accept the complaint.

25. In following months, Captain Whitney made several other reports of malfeasance, mismanagement, and violations of law and policy to Police Department and City officials.

26. For example, in February 2019, Captain Whitney reported that the sergeant of the detective bureau, a police union official, was mistreating a detective corporal. Captain Whitney investigated the situation, and believed that the treatment may have been discriminatory on the basis of race. However, the Chief refused to initiate an investigation.

27. Also, in or around February 2019, Captain Whitney discovered that the phrase *Veritas Aequitas* had been embedded on an officer's firearm end-plate. Captain Whitney reported that discovery up the chain of command and advocated that an internal investigation be conducted of the incident.

28. The officer who had the end-plate inscription was later placed on administrative leave, and was required to surrender his badge. The badge that was turned in had two corners bent, which the officer explained signified the two people he had killed in the line of duty while serving as a Vallejo police officer. Captain Whitney insisted the Chief conduct an internal investigation into whether members of the Vallejo Police Department were engaged in the unauthorized practice of badge bending. Chief Bidou refused.

29. Captain Whitney ordered all supervisors to inspect their subordinates' uniforms and collect any bent badges. Approximately ten bent badges were produced. Concerned that the damage to so many badges could cost him his position as Interim

Chief, Bidou ordered the badges returned to the officers, who were instructed to fix them. Captain Whitney disagreed with that instruction, as it would destroy evidence and cover-up serious misconduct. Consequently, Captain Whitney brought his concerns about the badges to Vallejo City Manager Greg Nyhoff and Mayor Bob Sampayan, as well as then-City Attorney Claudia Quintana. No investigation was initiated despite those reports.

30. From April 15-30, 2019, Captain Whitney served in the position of Acting Police Chief while Bidou was on vacation. In the role of Acting Chief, Whitney was a direct report to City Manager Nyhoff, and required to follow his lawful directives.

31. On or around April 24, 2019, Whitney met with the City Manager as part of his duties and responsibilities as Acting Chief. During the meeting, Defendant Nyhoff was angry that Police Department issues continued to negatively affect the reputation of the City, questioned Chief Bidou's statement that he had everything under control, and asked then-Acting Chief Whitney what he thought about Chief Bidou's ability to lead the Vallejo Police Department. Whitney demurred, stating he preferred not to discuss it because if Chief Bidou founding out he had answered questions about him, he would suffer retaliation. Mr. Nyhoff insisted.

32. Having been ordered to answer his direct superior's inquiries, then-Acting Chief Whitney truthfully answered the questions posed by the City Manager. One of those questions concerned where the supervisors were during the Taco Bell shooting on February 10, 2019. Acting Chief Whitney told the City Manager that he only knew what was rumored. The City Manager nonetheless required Acting Chief Whitney to report the rumor, which was that the supervisors were in the station watching Netflix at the time of the incident. Captain Whitney had previously notified Chief Bidou of the rumor and insisted it be investigated. Chief Bidou informed Captain Whitney that he did not want to do the investigation because it might create a liability for failure to supervise.

33. Then-Acting Chief Whitney also advised the City Manager that morale was the worst he had seen in 19 years, the police union had too much influence with Chief

Bidou, and the entire agency needed to be rebuilt from the ground up.  The City Manager advised Captain Whitney that because of Chief Bidou's mismanagement he intended to have independent auditors and the Department of Justice conduct a complete agency review of the Police Department.

34.     On or around April 25, 2019, a meeting was held with the City Manager, the Mayor, and two police captains, with Chief Bidou participating by phone.  The purpose of the meeting was to show the City Manager an incident video regarding a use of force that potentially could further negatively impact the reputation of the Police Department.  The City Manager and the Mayor questioned the merits of the video and the officers' actions. Chief Bidou and the other police captain advocated that the incident was justified. When asked his opinion, Captain Whitney articulated that he felt the officers unnecessarily escalated the incident, that he did not agree with the use of the Taser, and felt Departmental training needed to be revised to focus more on de-escalation and tactical communications to prevent further such incidents. Chief Bidou became angry with Captain Whitney for his assessment that the training the Chief had provided the Department was inadequate, and that the incident was not justified.

35.     Later that same day the Mayor invited then-Acting Chief Whitney to a closed door meeting at which he specifically asked him about Chief Bidou's performance. Captain Whitney again demurred, expressing concern that he could be retaliated against for his honest opinions.  During the conversation, the Mayor told Captain Whitney that City Manager Nyhoff did not believe Chief Bidou was capable of running the Vallejo Police Department and expressed the opinion Captain Whitney should serve as Acting Chief until a replacement was found.  The Mayor further advised that Chief Bidou would be informed of this plan upon his return from vacation.

36.     On or around April 26, 2019, prior to Chief Bidou returning from vacation, the City issued a press release announcing that it had formally invited the Department of

Justice "to improve our police department" and help "ensure alignment with operational best practices."

37. On April 30, 2019, when Chief Bidou returned from vacation, he shared his anger over the Department of Justice being brought in to assist, and was upset he had not been informed in advance of the press release.

38. Within weeks of Whitney reporting mismanagement of the department to the City Manager and the Mayor, Chief Bidou ordered an investigation into Captain Whitney. On May 22, 2019, Captain Whitney was served with a Notice of Interview alleging he passed confidential information to unauthorized persons. On May 28, 2019, Captain Iacono advised Captain Whitney that he was being placed on administrative leave for having engaged in a "tactically inappropriate" conversation with the Mayor.

39. During the internal investigation, Captain Whitney learned that the Chief claimed he had leaked the confidential information which ultimately resulted in Otis Taylor making two public records requests on or around April 15, 2019. Despite numerous members of the Department being aware of the information related to the events that were allegedly leaked, only Captain Whitney was singled out as the only accused officer.

40. The first request, PRA #19-212 sought "communications, internal affairs reports or other records that contain *Aftermarket parts* and/or *Veritas Aequitas*." This request clearly related to the phrase *Veritas Aequitas* being embedded on an officer's firearm endplate, which was discovered in February 2019 during a weapons functionality test following an officer-involved shooting incident. Captain Whitney reported that discovery up the chain of command and advocated that an internal investigation be conducted of the incident. Multiple other members of the Police Department were also aware of the incident but were not investigated as the source of the leak.

41. The second request, PRA #19-213 sought information regarding Vallejo Police Department Case No. 18-1399, which resulted in an internal investigation into

whether the incident was properly handled by the involved officers. Multiple other members of the Police Department were also aware of the events and allegations but were not investigated as the source of the leak.

42. At the conclusion of the investigation, the Department did not sustain the charge that Captain WHITNEY was the source of the leak that resulted in the public records requests.

43. Nonetheless, on August 26, 2019, the Police Department summarily terminated Captain Whitney's employment.

44. Captain Whitney was informed that the reason for the termination was his allegedly having deleted personal content from his department-owned cell phone before turning it in for inspection. The information deleted included the applications he used for personal banking, retirement planning, medical services, to control the garage door at his residence, and to access to his wife's iCloud account, as well as family photos that depicted his wife and daughter on the beach in swim attire.

45. The Vallejo Police Department permits command staff members to use their work phones for personal purposes.

46. City of Vallejo Administrative Rule 2.33 also permits personal use of work phones so long as it does not interrupt the workday or hinder system operations.

47. The Vallejo Police Department does not have a policy that prohibits deleting personal (or even work) content maintained on an assigned department phone. The policy only requires that supervisors "retain" records that pertain "to threatened or actual litigation." (City of Vallejo Administrative Rule No. 4.7; *see also*, Vallejo Policy Manual section 702.2.) Those records are retained not only on individual devices, but also through the backups and servers in place for long-term information storage. None of the material deleted pertained to threatened or actual litigation.

48. Before turning his phone in for inspection as requested by the Police Department on May 28, 2020, Captain Whitney followed the procedure that had been

taught to him by the Vallejo Police Department's Information Technology Manager on the other occasions he had been required to turn in his phone. During that training, Captain Whitney had been advised that if he followed the protocol, no work-related materials would be destroyed, as the materials are maintained on a server, and a backup of the phone would reconstruct all the data that was on his phone if a subpoena issued for its contents.

49. Captain Whitney's Department-issued cell phone was an Apple iPhone XS Max that he had named "PC XS." The IMEI Number was 35 727009854242 4. Captain Whitney was the sole authorized possessor of that device.

50. On May 28, 2019, the phone was turned into the Vallejo Police Department. It was never returned.

51. Although the Police Department contended Captain Whitney committed a "factory reset" that deleted all the content of his phone, the evidence he was provided at the time of his summary termination proved otherwise. A photograph of his phone taken after it was turned in showed unread emails, calendar and text message notifications, and four application pages. Captain Whitney contends this evidence shows his phone was either never erased, or was restored from a backup.

52. Further, despite the alleged "factory reset," the Department was able to access the personal information Captain Whitney had tried to remove in order to protect his personal and family privacy.

53. Specifically, Whitney's personal Gmail account was accessed on June 3, 2019 at 1501 by a device identified as "554 iPhone." The number "554" was Captain Whitney's badge number while at the Vallejo Police Department. Captain Whitney then blocked that iOS device from his personal Gmail account. That unauthorized access by the City of Vallejo was a crime. (See, e.g., Penal Code section 502.)

54. On June 4, 2019, Captain Whitney was unable to log into his University of San Diego college account and email. Captain Whitney investigated, and was informed

an unknown iOS device had tried to access the account so it had been locked.  Captain Whitney had not attempted such access.

55.     On June 8, 2019 at 0818 hours, Captain Whitney was looking at his family iCloud account and discovered a device labeled "PC XS" had tried to gain access.  "PC XS" was the name Captain Whitney had given to his Vallejo Police Department phone.  Captain Whitney tried to locate his department phone using the "Find My iPhone" application, but discovered that function had been shut off and so he could not track the device.  Captain Whitney then deleted the device from his account.

56.     On June 28, 2019 at 1735 hours, Captain Whitney discovered his old Vallejo Police Department iPhone XS Max, using the name "PC XS" that he had given it while employed, had again attempted accessed his wife's iCloud account.  That unauthorized access by the City of Vallejo was a crime.  (See, e.g., Penal Code section 502.)  Captain Whitney again deleted the phone from his account.

57.     At the time of his termination, Captain Whitney was an at-will employee.

58.     Captain Whitney is informed and believes that the City was motivated to terminate him because of his having reported widespread mismanagement and opposed unlawful practices during Chief Bidou's tenure, including:

a.   Reporting to the Human Resources Department that Chief Bidou changed the 2017 sergeant's promotional examination to benefit applicant VPOA President Mat Mustard, who received an overall higher score than he would have if the original weighting of the test segments had been maintained.

b.   Reporting disparate treatment of employees who engaged in misconduct.  For example, in 2017, after a police union official was observed kissing a female inside a city vehicle while on duty, Captain Whitney conducted an informal inquiry, gathered evidence, and recommended a formal investigation be conducted.  Chief Bidou denied that request.  Captain Whitney protested, reminding Chief Bidou he had previously fired another

officer for having a sexual relationship on duty, and that all employees should be treated the same. Chief Bidou still refused to allow an investigation of the police union official.

c. In July 2017, Captain Whitney became aware of a video related to the force used to arrest an individual who was working on his fence. Captain Whitney notified Chief Bidou and recommended an internal investigation be conducted. None was initiated. Captain Whitney protested that the Department was not properly reviewing use of force incidents and that allowing the matter to go uninvestigated would violate their responsibilities to ensure officers were using force properly.

d. In February 2018, officers were dispatched to a domestic violence incident, activated their body worn cameras, and thereafter cleared the call with no report taken. A call from the San Francisco Police Department about the incident resulted in a review of the body worn camera footage. Captain Whitney raised concerns with regard to how the incident was handled by the officers, and advocated for an internal affairs investigation as it appeared the officers violated department policy. Chief Bidou refused to initiate an investigation, claiming he had a deal with the union not to use body camera footage incident reviews to hold officers accountable.

e. In September 2018, Captain Whitney objected to false statements being made by Captain Horton, as well as his neglects of duty. Chief Bidou took the position there was nothing he could do about it and refused to take any action despite the fact that it was creating a toxic and hostile work environment for Captain Whitney.

f. Captain Whitney refused to follow Chief Bidou's effort to get him to suborn perjury, and instead encouraged his employees to tell the truth rather than delete and conceal evidence related to the kidnapping of Denise Huskins,

specifically Chief Bidou had ordered a lieutenant to hold a press conference to "burn that bitch." Captain Whitney thereafter ordered the assigned detectives to continue the investigation that was previously declared a hoax, which resulted in the discovery of evidence that the kidnapping had occurred, and that Ms. Huskins had been raped. When this was discovered, Chief Bidou ordered Captain Whitney not to apologize during his press conferences. During the later lawsuit, Chief Bidou physically took Captain Whitney's phone and set it to delete messages because he was worried that there were texts related to the "burn that bitch" comment and his order not to apologize. Chief Bidou then told Whitney he was going to claim he did not remember making those comments and asked Captain Whitney to direct the lieutenant not to remember the comment also. Captain Whitney refused to suborn perjury, disobeyed the Chief's unlawful directive, and instead encouraged the lieutenant to tell the truth.

**C. *Facts Related to the City's Failure to Provide Whitney the Process he was Due***

59. After the City summarily terminated Captain Whitney on August 26, 2019, it contended he was not entitled to any pre-termination safeguards or appeal because he was an "at will" employee.

60. The rights of an at-will, non-tenured civil servant when discharged were established forty years ago in *Lubey v. City and County of San Francisco* (1979) 98 Cal. App. 3d 340. There, the court held that when the reason for the dismissal involves "charges of misconduct which 'stigmatize [the employee's] reputation, or 'seriously impair' his opportunity to earn a living … or which 'might seriously damage his standing and associations in the community," a "liberty interest" hearing must be held before the dismissal so that the employee has "an opportunity to refute the charge" and "to clear his name." (*Lubey, supra*, 98 Cal. App. 3d at 346.).

61. The allegations against Captain Whitney and for which he was terminated qualify as sufficiently stigmatizing as to impact his reputation since they involve ethics violations and accusations of misconduct. Thus, he was entitled to a pre-termination due process hearing prior to his termination. No such proceeding occurred.

62. Once he was terminated, the City also refused him an appeal hearing as required by the Public Safety Officers' Procedural Bill of Rights Act, as well as the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association. Those rights extend to at-will employees.

63. Although Captain Whitney was permitted a post-termination meeting with Chief Allio, that process did not satisfy his statutory appeal rights, because the person who recommended and imposed his termination - Chief Allio - also presided over the appeal hearing.

64. The meeting with Chief Allio post-termination did not satisfy either the requirements of the Public Safety Officers' Procedural Bill of Rights Act, the due process required by the California Constitution, or the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association, of which Captain Whitney was a member.

65. The termination of Captain Whitney, as well as its refusal to provide him with adequate pre- and post-disciplinary process, was not based on any sustainable findings of misconduct, but because he insisted the CITY OF VALLEJO and its POLICE DEPARTMENT follow the law and standards of professionalism the community deserve.

66. Indeed, the CITY's Mayor stated in a letter of recommendation issued after Captain Whitney's termination for future employers, as follows:

> I was absolutely shocked to learn that John's integrity, ethics, and professionalism was doubted and questioned. For as long as I've known John, his integrity has always been above reproach. Those that know John either professionally or socially will say the same.

> Frankly, I believe that because John spoke out about a negative culture on the Vallejo Police Department, his reputation was soiled by those that did not want any "dirty laundry" aired.

A true and correct copy of that letter is attached hereto as Exhibit I.

67. The CITY OF VALLEJO and members of the VALLEJO POLICE DEPARTMENT continued their campaign of harassment and retaliation even after Captain Whitney was terminated, including sending a threatening letter about his wife, spreading lies to potential employers, and interfering with his ability to secure gainful employment elsewhere in law enforcement to support his family. These actions were malicious, spiteful, oppressive, and in bad faith.

**FIRST CAUSE OF ACTION**
**PETITION FOR WRIT OF MANDATE**
**[Code of Civil Procedure Section 1085]**

68. Plaintiff-Petitioner WHITNEY re-alleges and hereby incorporates by reference all preceding paragraphs, inclusive, as though fully set forth at length in this cause of action.

69. At all times herein pertinent, the City, its Police Department, and Defendant-Respondents Allio, and Nyhoff had a clear, present, and ministerial duty to comply with the procedural rights afforded to Captain Whitney by the California Constitution, the decision in *Lubey v. City and County of San Francisco* (1979) 98 Cal. App. 3d 340, and the Public Safety Officers Procedural Bill of Rights Act, Government Code section 3300 *et seq.*

70. At all times herein pertinent, the City, its Police Department, and Defendant-Respondents Allio, and Nyhoff have been and are able to perform the duties contained in the California Constitution, the decision in *Lubey v. City and County of San Francisco* (1979) 98 Cal. App. 3d 340, and the Public Safety Officers Procedural Bill of Rights Act, Government Code section 3300 *et seq.*

71. Plaintiff-Petitioner Whitney notified the City of Vallejo, its Police Department, and Defendant-Respondents Allio and Nyhoff of their obligations under the

California Constitution and the Public Safety Officers Procedural Bill of Rights Act, Government Code section 3300 *et seq*. But they refused to comply.

72. Other than this lawsuit, Plaintiff-Petitioner Whitney has no plain, speedy, and adequate remedy in the ordinary course of law to stop the City, its Police Department, and Defendant-Respondents Allio, and Nyhoff from violating the California Constitution, the decision in *Lubey v. City and County of San Francisco* (1979) 98 Cal. App. 3d 340, and the Public Safety Officers Procedural Bill of Rights Act, Government Code section 3300 *et seq.*

WHEREFORE, Petitioner-Plaintiff WHITNEY prays for the relief set forth below.

**SECOND CAUSE OF ACTION**
**COMPLAINT FOR EXTRAORDINARY RELIEF**
**[Government Code section 3309.5(d)(1)]**

73. Plaintiff-Petitioner WHITNEY re-alleges and hereby incorporates by reference all preceding paragraphs, inclusive, as though fully set forth at length in this cause of action.

74. Government Code section 3309.5(a) makes it unlawful for any public safety department to deny or refuse as to any public safety officer the rights and protections guaranteed by the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.*

75. Government Code section 3309.5(c) gives this Court initial jurisdiction over any proceeding brought by a public safety officer against any public safety department for alleged violations of the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.*

76. Government Code section 3309.5(d)(1) requires this Court "render appropriate injunctive or other extraordinary relief to remedy" any violation of the Public Safety Officers' Procedural Bill of Rights Act, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction.

77. Government Code section 3304(b), a provision of the Public Safety Officers' Procedural Bill of Rights Act, required the City of Vallejo and its Police Department, as well as Defendant-Respondents Allio and Nyhoff to provide Petitioner-Plaintiff Whitney with an appeal of his termination. Under Government Code section 3304.5, the appeal had to be held in conformity with the rules and procedures adopted by the City and its Police Department. It did not.

78. The adopted procedure is contained in the Memorandum of Understanding between the City and the Vallejo Police Officers' Association ("VPOA"). That appeal process applies to all VPOA bargaining unit members, including the Captain rank. That procedure states: "Appeals of disciplinary action shall be subject to Section J of this Grievance Procedure." Section J provides for binding arbitration.

79. The City, the Police Department, and Defendants Allio and Nyhoff refused to submit Captain Whitney's appeal to arbitration as required.

WHEREFORE, Petitioner-Plaintiff WHITNEY prays for the relief set forth below.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT**
**[Penal Code section 1546 *et seq.*]**

80. Petitioner-Plaintiff Whitney re-alleges and hereby incorporates by reference all preceding paragraphs, inclusive, as though fully set forth at length in this cause of action.

81. The California Electronic Communications Privacy Act (CalECPA) prohibits a government entity from compelling the production of, or access to, electronic device information from any person or entity other than the authorized possessor of the device absent a search warrant or consent. (Penal Code section 1546.1(a)(1).)

82. The term "authorized possessor" includes a person authorized by the owner of the device to possess and use the phone. (Penal Code section 1546(b).)

83. At all times herein pertinent, Petitioner-Plaintiff Whitney was the authorized possessor of his departmentally issued cell phone, an Apple iPhone XS Max, which he was authorized to physically possess and use, pursuant to City policy, for both work and personal business.

84. Petitioner-Plaintiff WHITNEY did not consent to a search of his work phone by the Vallejo Police Department. Rather it was done involuntarily, and he was ordered to comply or be subject to disciplinary action. He complied with that order, even though it was unlawful.

85. The Vallejo Police Department did not secure a search warrant for his departmentally-issued cell phone.

WHEREFORE, Petitioner-Plaintiff Whitney prays for the relief set forth below.

**FOURTH CAUSE OF ACTION**
**INVASION OF PRIVACY**
**(Penal Code section 502; Cal. Const. Art. I, Section 1)**

86. Petitioner-Plaintiff WHITNEY re-alleges and hereby incorporates by reference all preceding paragraphs, inclusive, as though fully set forth at length in this cause of action.

87. Captain Whitney had a personally protected privacy interest in the content of his cell phone under Article I, Section 1 of the California Constitution and Penal Code sections 502 and 1546.

88. Although Captain Whitney returned his phone to the Vallejo Police Department on May 28, 2019, he at no time authorized them to search his phone, access his private information, or access any personal, non-work related accounts. Nonetheless, the City, along with Defendants Allio and Nyhoff, approved and conducted a search.

89. Nonetheless, on June 4, 2019, Whitney discovered a device labeled "554 iPhone" had accessed his personal Gmail account on June 3, 2019 at 1501 hours.

90. On June 8, 2019 as well as June 28, 2019, Whitney discovered his old Vallejo Police Department iPhone XS Max had accessed his family iCloud account.

91. Whitney also discovered that using information from his CITY-issued phone, the CITY attempted to access his accounts at the University of San Diego and on LinkedIn.

92. Penal Code section 502 prohibits unauthorized access of an individual's electronic data and accounts.

93. The California Electronic Communications Privacy Act (CalECPA) prohibits a government entity from compelling the production of, or access to, electronic device information from any person or entity other than the authorized possessor of the device absent a search warrant or consent. (Penal Code section 1546.1(a)(1).)

94. The California Constitution guarantees each individual citizen a right of privacy in his personal information.

WHEREFORE, Petitioner-Plaintiff WHITNEY prays for the relief set forth below.

**FIFTH CAUSE OF ACTION**
**RETALIATORY DISCHARGE**
**(Labor Code Section 1102.5)**

95. Plaintiff-Petitioner Whitney re-alleges and hereby incorporates by reference all preceding paragraphs, inclusive, as though fully set forth at length in this cause of action.

96. At all relevant times, through his termination on August 26, 2019, the City of Vallejo employed Whitney in the position of Police Captain.

97. Whitney provided information related to misconduct by public officials, which was not publicly known. These reports were made to his employer, the CITY OF VALLEJO, a public body, and its officials, including the City Manager and Police Chief.

98. Whitney had reasonable cause to believe that the information he provided disclosed violations of state law and local regulations.

99. August 26, 2020.

100. WHITNEY's disclosures were, at a minimum, a contributing factor in the City's decision to summarily terminate his employment effective August 26, 2020.

Whitney's reports were made in close temporal proximity to his termination, and disclosed blatant corruption as well as misconduct by the very officials that terminated his employment.

101. Whitney was damaged by his unlawful discharge, in at least the following ways:

a. Lost compensation from August 26, 2019 through present, and ongoing;

b. Lost health, retirement, and fringe benefits;

c. Mental suffering caused by the City's extreme and outrageous conduct in terminating his employment for reporting misconduct.

**PRAYER**

WHEREFORE, Petitioner JOHN P. WHITNEY, prays:

1. That this Court issue a peremptory writ of mandate commanding Respondents to vacate Petitioner's termination due to their collective failure to comply with the California Constitution, the decision in *Lubey v. City and County of San Francisco,* (179) 98 Cal. App. 3d 340, the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.*, and the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association;

2. That this Court issue a peremptory writ of mandate commanding Respondents to reinstate Petitioner to his position of police captain with the City of Vallejo and the Vallejo Police Department with full back pay and benefits given their non-compliance with the obligations imposed by the California Constitution, the decision in *Lubey v. City and County of San Francisco,* (179) 98 Cal. App. 3d 340, the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.*, and the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association;

3. That this Court issue a peremptory writ of mandate commanding Respondents, and all its agents, servants, employees and all persons acting under, in concert with, or for them, from doing any action in violation of the California Constitution, the decision in *Lubey v. City and County of San Francisco,* (179) 98 Cal. App. 3d 340, the Public Safety Officers' Procedural Bill of Rights Act, Government Code section 3300 *et seq.*, and the Memorandum of Understanding between the City of Vallejo and the Vallejo Police Officers' Association;

4. That this Court issue an order pursuant to Government Code section 3309.5 enjoining, staying, and prohibiting any further administrative or disciplinary proceedings related to Petitioner's August 26, 2019 summary termination;

5. That this Court issue an order pursuant to Government Code section 3309.5 providing extraordinary relief prohibiting Respondents from taking any punitive action against Petitioner for any of the acts, omissions, or other conducted related to his summary termination on August 26, 2019;

6. That this Court issue a finding under Government Code section 3309.5(e) that Respondents maliciously violated the rights of Petitioner, with intent to injure, and award a civil penalty in the amount of $25,000 for each and every POBR violation committed, as well as actual damages and reasonable attorneys' fees;

7. For a judgment that Respondents terminated Petitioner in retaliation for protected disclosures to a public body, in violation of Cal. Labor Code section 1102.5;

8. For a judgment that Respondents violated the California Electronic Communications Privacy Act (Penal Code section 1546, *et seq.*)

9. For a judgment that Respondents violated his right to privacy under the California Constitution, Article I, Section 1;

10. For a judgment that Respondents violated Penal Code section 502;

11. For general damages according to proof, including, without limitation, the pain and anguish caused by Respondents' extreme and outrageous conduct;

12. For special damages according to proof, including without limitation, lost earnings, the value of lost benefits, lost future health, retirement, and fringe benefits, and damage to future earning potential through injury to professional reputation;

13. For prejudgment interest in an amount according to proof;

14. For reasonable attorneys' fees and costs;

15. For other damages as permitted by law;

16. For costs of suit herein; and

17. For such other and further relief as the Court may deem just and proper.

Dated: December 17, 2020

Respectfully submitted,

Berry | Wilkinson | Law Group

By______________________________

Alison Berry Wilkinson
Attorneys for Plaintiff-Petitioner JOHN P. WHITNEY

## VERIFICATION

I, JOHN P. WHITNEY, am the Petitioner-Plaintiff in the instant action. I have read the **VERIFIED PETITION FOR WRIT OF MANDATE; COMPLAINT FOR DAMAGES** filed here and know its contents. The facts stated therein are true and within my personal knowledge, except as to those matters stated on information and belief and as to those, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this ___ day of December 2020 in _______________, California.

JOHN P. WHITNEY

# EXHIBIT A

# JOHN P. WHITNEY

## EXPERIENCE

**El Cerrito Police Department** [2020-Present]

**Police Officer** (2020)
To perform law enforcement and crime prevention work; to control traffic flow and enforce State and local traffic regulations; to perform investigative work; to participate in and provide support and assistance to special department crime prevention and enforcement programs. Currently assigned to patrol division and the training staff.

- Field Training Officer
- Chemical Agents Instructor
- Patrol Rifle/instructor
- Bicycle Patrol/Instructor
- Report Writing Instructor
- Firearms Instructor
- Taser Instructor
- Less Lethal Devices/WRAP Instructor
- EVOC Instructor
- Honor Guard

**Napa Valley College Criminal Justice Training Center** [2005-Present]

Adjunct Professor (2005)
I am an Adjunct Professor in the Basic Police Academy, Dispatch Academy, and the Corrections Academy. I teach a variety of advanced officer training courses, and I am a master instructor on several topics.

- Police Academy Instructor
- Chemical Agents for Instructors
- Field Training Officer
- Range Instructor
- 832 PC/Corrections
- Criminal Investigations
- Report Writing for Instructors
- Re-Certification
- Dispatch Academy
- Scenario Evaluator

**Vallejo Police Department** [2000-2019]

**Captain** (2019)
As Captain, I successfully connected with the community and strengthened relationships. In collaboration with my staff, we worked on inventive engagement activities and manage community grants. I have worked in all bureaus as a Captain and believe in holding my staff accountable while focusing on the future development of the entire department. I was responsible for managing critical incidents and working as a liaison to local and federal agencies and was the designated Acting Chief of Police. I managed the Peer Support and Wellness programs.

- **Investigations Bureau**
- Public Relations
- Detectives
- FBI Liaison/FBI Safe Streets
- Crime Analysis
- Public Information Officer
- Wellness/Peer Support
- Community Services Section
- City Skelly Officer
- Code Enforcement
- Community Engagement/Social Media
- City Communications
- Crime Reduction Team
- Evidence and Property
- Planning and Research
- Grant Management
- Rangemaster/ EVOC Instructor
- Kaiser
- Honor Guard
- Force Options Administrator
- Emergency Service Unit Commander (SWAT, MFF, HNT, TEMS, TECH, Intel, Tac Dispatch)

**Captain** (6/2018-2019)

- **Operations Bureau/Support Services**
- Patrol Division
- Wellness/Peer Support/Honor Guard
- Community Services Section
- City Skelly Officer
- Honor Guard
- Records
- Training
- Traffic Division
- Fleet
- Youth Services
- Force Options Manager
- Risk Management
- Community Engagement
- Grant Management
- Rangemaster
- Planning and Research
- Communications
- Peer Support
- Information Technology
- K-9 Unit
- Code Enforcement
- Permits
- Public Information Officer
- Field Training Program
- EVOC Instructor
- Emergency Services Unit Commander (SWAT, MFF, HNT, TEMS, TECH, Intel, Tac Dispatch)

**Captain** (2015- 6/2018)

- **Investigations Bureau**
- Professional Standards/Wellness/Peer Support
- Community Services Section/Code Enforcement
- City Skelly Officer
- Internal Affairs/Training
- Rangemaster/Force Options
- Planning and Research
- Information Technology
- Emergency Services Unit (SWAT, MFF, HNT, TEMS,TECH, Tac Dispatch)
- Liaison to Unions, City Attorney's Office, Human Resources, and Mayor's Office

**Lieutenant** (2012-2015)

As a Lieutenant, I authored a strategic and succession planning manual. I facilitated a collaborative effort to create a Field Training Orientation Manual, a new Field Training Program, a Supervisor Field Training Program, a Mentoring Program Guide, a Supervisor Field Resource Guide, and a Training and Career Development Manual. I managed special projects, served as the training manager, supervised a data-driven task force and was the Emergency Service Unit Commander.

- Patrol Administration/Watch Commander
- FTO Administrator
- Traffic Division
- Operation Safe Net
- Training Manager
- K-9 Unit
- Special Projects
- Designated Acting Captain
- Emergency Services Unit Commander (SWAT, MFF, HNT, TEMS, Tac Dispatch)

**Sergeant** (2007-2010) & (2011-2012)

As a Sergeant, I managed the Field Training Program, supervised a patrol squad, served as the SWAT Team Leader, as well as performed a variety of collateral duties, including Bike Patrol, Honor Guard and Training.

- Patrol Supervisor/ FTO Supervisor
- SWAT Team Leader
- FTO Supervisor
- Assistant Rangemaster
- Bicycle Patrol
- Honor Guard

**Detective/Officer** (2010-2011 – Demotion due to bankruptcy at City of Vallejo)

As a Detective, I investigated homicides, special victim cases, and officer involved shootings. I served as a liaison to the Solano County Death Review Team and was an assistant range master.

- Homicide/Officer Involved Shootings
- SWAT Assistant Team Leader
- Assistant Rangemaster/Force Options Instructor
- Special Victims
- Honor Guard
- Bike Patrol

**Sergeant** (2007-2010)
- Patrol Supervisor
- FTO Supervisor
- SWAT
- Honor Guard

**Corporal** (2006-2007)
As a Corporal, I worked on a patrol squad as a Field Training Officer, Acting Sergeant, and an Evidence Technician.

- Patrol/ Evidence Technician
- SWAT
- Acting Sergeant /Field Training Officer
- Bike Patrol Honor Guard

**Officer** (2000-2006)
As an Officer, I worked as a Patrol Officer, a Field Training Officer, and a Detective.

- Patrol
- Honor Guard
- Field Training Officer
- SWAT
- Bicycle Patrol
- Peer Support

**Solano County Sheriff's Office**                                         [1997-2000]
As a Deputy Sheriff, I worked Patrol, Courts, SWAT, and Mobile Field Force.
- Patrol
- SWAT
- Courts
- Mobile Field Force

**Alameda County Sheriff's Office**                                       [1996-1997]
As a Deputy Sheriff, I worked in the Custody Division.
- Corrections

**EDUCATION**

**University of Maryland**                                                          2020
Certificate – Leadership and Influence

**University of Berkeley**                                                          2020
Certificate – Academic and Business Writing

**University of Berkeley**                                                          2020
Certificate – Empathy and Emotional Intelligence at Work

**University of San Diego**                                                     2018-2019
M.S. Law Enforcement Public Safety Leadership

**Federal Bureau of Investigation**                                               2019
LEEDS – Executive Leadership

**University of Berkeley**                                                          2019
Certificate – Solving Public Policy Problems

**University of Michigan**                                                          2019
Certificate – Community Engagement: Collaborating for Change

**Harvard School of Public Health**                                               2018
Certificate - Humanitarian Response to Conflict and Disaster

**Harvard Medical School**                                                                          2018
Certificate - Opioid Crisis in America

**University of San Diego**                                                                         2018
Masters Certificate - Principles of Law Enforcement Command

**University of Berkeley**                                                                          2018
Professional Certificate - Business Writing
Certificate – Writing for Social Media
Certificate – Effective Business Writing
Certificate – The Writing Process

**Harvard Kennedy School of Government**                                                            2018
Executive Certificate – Public Leadership
Certificate – Leadership Decision Making

**Harvard Kennedy School of Government**                                                            2017
Certificate – Senior Executives in State and Local Government

**Police Executive Research Forum**                                                                 2016
Senior Management Institute for Police

**Cornell University**                                                                              2016
Certificate – Management for Change

**Cornell University**                                                                              2015
Certificate – Executive Leadership

**Harvard Kennedy School of Government**                                                            2015
Certificate – Leadership for the 21st Century

**Peace Officer Standards and Training**                                                      2014-2015
Command College Class #57

**FBI – LEEDA**                                                                                     2013
Certificate - Supervisor Liability
Certificate - Advanced Supervisor Liability

**International Association of Chiefs of Police**                                                   2012
Leadership in Police Organizations – West Point

**Columbia Southern University**                                                              2006-2007
M.S. Public Administration, Criminal Justice

**Union Institute University**                                                                      2005
B.A. Criminal Justice Supervision

**Solano Community College**                                                                  1991-1995
A.S. / Certificate - Criminal Justice, Law Enforcement
A.S. / Certificate - Criminal Justice, Corrections

**Napa Valley College**                                                                             1994
POST Basic Police Academy / Certificate - Criminal Justice

**COMMITTEES**

- California Police Chief Association – Training Committee
- California Police Chief Association – Human Behind the Badge Workgroup
- Napa Valley College Criminal Justice Training Center Advisory Board – Board Chair
- Child Haven Board Member– Solano County
- Solano County Collaborative Courts
- Solano County Health and Human Services LPS Group
- City of Vallejo Communications Committee
- Public Safety Building Steering Committee
- Vallejo Chamber of Commerce – Economic Development Committee
- Every 15 Minutes Committee
- City – School Safety Task Force
- Medical Marijuana Stakeholder and Expert Group
- Results Based Performance Management Steering Committee
- City of Vallejo Coaching Management Forum Steering Team
- Vallejo Safe Routes to School Committee Task Force
- Napa – Solano Law Enforcement Training Managers Association
- Solano County Criminal Justice Partners Group

**COMMUNITY GROUPS**

- City of Vallejo Rotary – Board Member
- New Dawn Corporation Board
- City of Vallejo Homeless Collaboration Group
- Vallejo Unified School District Law Academy

**ASSOCIATIONS**

- International Association of Chiefs of Police (IACP)
- California Police Chiefs Association (CPCA)
- Police Executive Research Forum (PERF)
- California Peace Officers Association (CPOA)
- National Tactical Officers Association (NTOA)
- California Association of Tactical Officers (CATO)
- California Association of Hostage Negotiators (CAHN)
- California Association of Collaborative Courts (CACC)
- Napa Solano Training Manager Group (NSTM)

**PROJECTS**

- Marketing and Public Relations
- CalVIP – BSCC Grant, Manager
- IDEAL Vallejo (Inter-department illegal dumping task force)
- Operation Safe Net – Congressional Award for the program
- Intime Iselink
- TEMS & TECH/Intel Team
- Open Houses/Carnivals
- Lexipol Workgroup, Chair
- City of Vallejo Orientation Program
- Succession/Strategic Plan
- Training and Career Development / Teambuilding Workshops
- Field Training Orientation
- Field Training Program – Trainee & FTO
- Supervisor Field Training Program (STO)
- Supervisor Field Resource Guide
- Mentoring Program
- Board of State and Community Corrections –
  Strengthening Law Enforcement and Community Relations Grant, Manager
- Community Engagement Events
    - *Belly Flops with the Cops*
    - *Carnival with the Cops*
    - *Kicking it with the Cops*

**Awards and Commendations**

- 2019 American Society for Industrial Security (ASIS) – Lifetime Achievement Award (Dedication to Law Enforcement, Education and Community Service)
- 2018 Peace Officer Standards & Training (POST) – Excellence in Training, Lifetime Achievement Award
- 2018 CPRS Award of Excellence – *Belly Flops with the Cops*
- Medal of Courage / Medal of Merit – 9 / Good Conduct Medal – 4
- Numerous Chief Commendations and Congressional Awards

# EXHIBIT B

# Commendations



# CITY OF VALLEJO

OFFICE OF THE CHIEF OF POLICE

111 AMADOR STREET • VALLEJO • CALIFORNIA • 94590-6301 • (707) 648-4540 • FAX (707) 648-4390

February 6, 2019

Captain John Whitney:

Attached is a copy of a letter from Congressman Mike Thompson thanking you being a panelist for the Gun Violence Prevention Town Hall. Please accept my appreciation, too, for having performed in such a manner as to reflect credit upon yourself and the Department.

After you have reviewed the letter, please return it to the Professional Standards Division so that it may be included as a part of your next evaluation.

ANDREW J. BIDOU
Chief of Police

Printed on Recycled Paper



MIKE THOMPSON
MEMBER OF CONGRESS

FIFTH DISTRICT
CALIFORNIA

January 28, 2019

Captain John Whitney
Vallejo Police Department
111 Amador Street
Vallejo, CA 94590

Dear Captain Whitney: Captain

Thank you for being a panelist for my Gun Violence Prevention Town Hall in Vallejo. Your expertise and statements were an asset to the event as evidenced by the number of questions that were asked of you. Thank you for your service to the citizens of Vallejo and keep up the great work!

If I may ever be of assistance, please call me at my Vallejo District Office at (707) 645-1888.

Sincerely,

Mike

**MIKE THOMPSON**
Member of Congress

Thank you!

CONGRESSMAN
MIKE THOMPSON

# CITY OF VALLEJO

OFFICE OF THE CHIEF OF POLICE

111 AMADOR STREET • VALLEJO • CALIFORNIA • 94590-6301 • (707) 648-4540 • FAX (707) 648-439

December 20, 2018

Captain John Whitney:

Attached is a copy of a letter from Congressman Mike Thompson thanking you for gun safety and marksmanship training you provided at the Range. Please accept my appreciation, too, for having performed in such a manner as to reflect credit upon yourself and the Department.

After you have reviewed the letter, please return it to the Professional Standards Division so that it may be included as a part of your next evaluation.

ANDREW J. BIDOU
Chief of Police

Printed on Recycled Paper



MIKE THOMPSON
MEMBER OF CONGRESS

FIFTH DISTRICT
CALIFORNIA

August 21, 2018

Captain John Whitney
Vallejo Police Department
111 Amador St.
Vallejo, CA 94590

Dear ~~Captain Whitney~~ Cap't:

Thank you for inviting me to shoot at the Benicia Police Firing Range. I have a great appreciation for the training it takes to become proficient with the firearms you use to protect the public every day on the job. Keep up the great work!

Please contact me at my Vallejo District Office at (707) 645-1888 if I can ever be of assistance.

Sincerely,

Mike

**MIKE THOMPSON**
Member of Congress

Thank you!



MIKE THOMPSON
MEMBER OF CONGRESS

FIFTH DISTRICT
CALIFORNIA

February 19, 2018

Captain John Whitney
Vallejo Police Department
111 Amador Street
Vallejo, CA 94590

Dear Captain Whitney:

Thank you for participating in the Law Enforcement Roundtable
discussion on marijuana policy last week. I appreciated the information
you shared. Your knowledge and expertise contributed to the success of
the discussion.

Please contact me at my Napa District Office at (707) 226-9898 if I can
ever be of assistance.

Sincerely,

**MIKE THOMPSON**
Member of Congress



MIKE THOMPSON
MEMBER OF CONGRESS

FIFTH DISTRICT
CALIFORNIA

April 22, 2019

John Whitney, Captain
Vallejo Police Department
111 Amador Street
Vallejo, CA 94590

Dear Captain John Whitney:

Thank you for being a part of my Team Thompson cycling team at the Cycle for Sight benefit bike ride. It was great to see so many people helping to raise money for Rotary programs that help veterans and for the Enchanted Hills Camp for the Blind. Let's do it again next year!

If I may ever be of assistance, please call me at my Vallejo District Office at (707) 645-1888.

Sincerely,

Mike

**MIKE THOMPSON**
Member of Congress

NOT PAID FOR OR MAILED AT GOVERNMENT EXPENSE.



NAPA VALLEY COLLEGE
2277 Napa-Vallejo Highway
Napa, CA 94558

Hasler
03/12/2018
US POSTAGE $00.47[0]
ZIP 94558
011D11649162

CAPTAIN J. WHITNEY
VALLEJO POLICE DEPT.
111 AMADOR ST.
VALLEJO CA 94590

Dear John,

Thank you so much for taking time from your very busy schedule, to speak with our board of Trustees. The feedback has been very positive. I am so fortunate to have your continued support. The CJTC is such a fortunate program to have you as an instructor and Advisory Board Chairperson.

Gratefully, Damien

"Good leaders must first become good servants." ~ Robert Greenleaf



# CITY OF VALLEJO

OFFICE OF THE CHIEF OF POLICE

111 AMADOR STREET • VALLEJO • CALIFORNIA • 94590-6301 • (707) 648-4540 • FAX (707) 648-4390

September 2, 2015

Captain John Whitney:

Attached is a copy of a thank you card from Councilmember Pippin Dew-Costa, expressing appreciation for meeting with the parent of a recent shooting victim. Please accept my appreciation, too, for having performed in such a manner as to reflect credit upon yourself and the Department.

The letter is being forwarded to you, through channels, so that your supervisor may be aware of your performance in this case. After you have reviewed the letter, please return it to the Professional Standards Division so that it may be included as a part of your next evaluation.

ANDREW J. BIDOU
Chief of Police

Reviewed by: ______________________
Bureau Commander

Printed on Recycled Paper

Dear Captain Whitney,

Thank you so much for taking the time to meet with Whitney + I the other day! You went a long way in addressing her concerns and alleviating her fears while being honest and candid. I really appreciate you and all that you do!

Warmest Regards,

Pippin



# CITY OF VALLEJO

OFFICE OF THE CHIEF OF POLICE

111 AMADOR STREET • VALLEJO • CALIFORNIA • 94590-6301 • (707) 648-4540 • FAX (707) 648-4390

August 21, 2014

Lieutenant John Whitney:

Attached is a copy of a thank you note from Kevin Purnell, President of the Retired Public Employees' Association, expressing appreciation for your participation in the Retired Public Employees' Association Quarterly Meeting. Please accept my appreciation, too, for having performed in such a manner as to reflect credit upon yourself and the Department.

The letter is being forwarded to you, through channels, so that your supervisor may be aware of your performance in this case. After you have reviewed the letter, please return it to the Professional Standards Division so that it may be included as a part of your next evaluation.

JOSEPH M. KREINS
Chief of Police

Reviewed by: ______________________
Bureau Commander

Printed on Recycled Paper

CHIEF,

I WISH TO THANK YOU FOR PROVIDING CAPTAIN HORTON AND LIEUTENANT WHITNEY ON SUCH SHORT NOTICE TO SPEAK TO OUR GROUP. THEIR PROFESSIONALISM IS A TRIBUTE TO YOUR DEPARTMENT. THEIR PRESENTATION WAS ENTHUSIASTICALLY RECEIVED BY OUR MEMBERS IN ATTENDANCE.

Sincerely

Kevin Purnell

President

RPEA 035

Solano

PERSONNEL

TO: LT. WHITNEY'S FILE

FR: CAPTAIN HORTON

GREAT WORK ON THE OPEN HOUSE JOHN! SUPERVISOR HANNIGAN AGREES!

CPT HORTON

**Erin Hannigan**
*Supervisor, District 1*

Dear Chief Kreins,

I want to commend you, your staff and numerous volunteers on holding a successful VPD Open House this month. It was an impressive sight to see the equipment used by your officers to protect my community. I really enjoyed the engagement of staff & citizens, especially the children. The canine demonstration was exciting and educational. Kudos to the VPD! Fondly, Erin

# LETTER OF COMMENDATION

TO: Sergeant Brett Clark
Sergeant Sidney DeJesus
Officer Stacie Abney
Officer Joshua Caitham
Officer Jeremy Huff
Officer Justin Joseph
Officer Peppino Messina
Officer Jason Potts
Officer Kent Tribble
Officer Kyle Wylie
Dana Peterson, Communications Operator II
Cadet Servando Miramontes
Sergeant Kevin Coelho
Corporal Stanley Eng
Officer Jason Bauer
Officer Barbara Greene
Officer Eric Jensen
Officer Steven Kent
Officer Theresa No
Officer George Simpson
Officer John Whitney
Jamie Halverson, Communications Operator II
Terry Wilson, Communications Operator II

SUBJECT: Commendation

It is my pleasure to commend the above noted Vallejo Police Department personnel, who distinguished themselves in the following manner.

On August 8, 2010, Saint Nick Stanley was shot to death in the parking lot of the Deluxe Inn, located at 2070 Solano Avenue, Vallejo.

The subsequent investigation identified Alfonso Mestas as the shooter and Jessica Gonzalez as his accomplice. Information trickled in with respect to the location of the suspects, ranging from addresses in Vallejo to being on the run in Mexico.

On October 9, 2010, Officers Barbara Greene and Steven Kent were on a landlord-tenant call for service. A citizen confided in these officers and shared with them first hand information about the location of Mestas and Gonzalez in Vallejo and that they were hiding in an apartment on Kentucky Street. They advised Corporal Stanley Eng, who was the acting sergeant that day.

These officers coordinated with Sergeant Kevin Coelho. Members of the Detective Division had received similar information about Mestas' location and that he was possibly in possession of a hand grenade and was planning on using it against Vallejo Police in the event they attempted to arrest him.

Although understaffed, members of the Crime Suppression Unit began a surveillance of the residence and spotted Mestas inside the apartment. During the surveillance, the Detectives observed a vehicle backed up to the open trunk and Mestas near the vehicle. When the vehicle left the apartment, Officers Eric Jensen and Theresa No made a stop on the car. Although Mestas was not concealed in the vehicle, these officers were able to confirm through conversation with the driver that Mestas was indeed at the apartment. Officers Jensen and No brought the driver, who was later arrested for harboring, his three year old daughter, and 17 year old neighbor to the station. Cadet Servando Miramontes was assigned to monitor the children and coordinate their return to their parents while being sensitive to the developing investigation.

588

It was determined that Officers Bauer, Caitham, Huff, Jensen, Messina, No, Simpson and Wylie would form a surrounding perimeter and that once that perimeter was established, efforts would be made to call Mestas and Gonzalez out of the apartment. Sergeant Clark assisted in the in field coordination and Sergeant DeJesus was assigned as the primary negotiator.

Officers Abney, Greene and Kent were sent to the area to act as a ready response team as close cover for the detectives, and to form a stop team in the event the suspect left the apartment.

As the officers were being briefed in the field and on the telephone, the surveillance team announced that a different vehicle was leaving the apartment. Officer Joseph was able to direct the responding Patrol officers to vehicle leaving and they made a modified high risk stop on Sutter and Georgia Streets.

Mestas and Gonzales were passengers in the car and were taken into custody for their involvement in the August murder.

Communications Operators Halverson, Petersen and Wilson did an exceptional job during the ever evolving operation. They had to function with limited information and instructions to keep pertinent information off of the radio, as it was suspected that Mestas would be monitoring with a scanner, which turned out to be accurate. Additionally, they still had to provide 9-1-1 and dispatch services to the Fire Department and the uninvolved units, including coordinating a multi vehicle collision and mutual aid request from CHP.

Each and every employee who participated in this operation is to be commended for a job well done. The dedication to the citizens of Vallejo, and the tenacious teamwork needed to safely and successfully make these arrests exemplifies the profound professionalism of these employees and the Vallejo Police Department.

Recommended by
JAMES O'CONNELL, Lieutenant

Bureau Commander
DAVID JACKSON, Captain

Chief of Police
ROBERT W. NICHELINI



# CITY OF VALLEJO

OFFICE OF THE CHIEF OF POLICE

111 AMADOR STREET • VALLEJO • CALIFORNIA • 94590-6301 • (707) 648-4540 • FAX (707) 648-

December 20, 2018

Captain John Whitney:

Attached is a copy of a letter from Congressman Mike Thompson thanking you allowing him to participate in the Vallejo Police Department's Tour de Fuzz. Please accept my appreciation, too, for having performed in such a manner as to reflect credit upon yourself and the Department.

After you have reviewed the letter, please return it to the Professional Standards Division so that it may be included as a part of your next evaluation.

ANDREW J. BIDOU
Chief of Police

Printed on Recycled Paper



MIKE THOMPSON
MEMBER OF CONGRESS

FIFTH DISTRICT
CALIFORNIA

September 14, 2018

Captain John Whitney
Vallejo Police Department
111 Amador St.
Vallejo, CA 94590

Dear ~~Captain Whitney~~ Capt:

Thank you for inviting me to ride with the Vallejo Police Department cyclists at the Tour de Fuzz. It was a challenging and fun ride and I hope to join you again next year. Keep up the great work!

Please contact me at my Vallejo District Office at (707) 645-1888 if I can ever be of assistance.

Sincerely,

Mike

**MIKE THOMPSON**
Member of Congress

Thank you and congratulations on completing of the Napa 9!

le TOUR de FUZZ
POLICE UNITY TOUR

**VALLEJO POLICE DEPARTMENT**
**INVESTIGATIONS DIVISION**
**EVALUATION COMMENT FORM**

**NAME OF EMPLOYEE(S) SUPERVISORS:** Lieutenant NICHELMAN, Sergeant COELHO, Sergeant SCHROEDER, Sergeant MILLER, Sergeant NICOL, Sergeant PARK, Sergeant WHITNEY, Sergeant BASSETT, Sergeant Hamrick
PATROL OFFICERS: Corporal Garcia, Officer Capoot
**SWAT MEMBERS:** Corporal BOTELLO, Corporal HERNDON, Officer HERNANDEZ, Officer JOSEPH, Officer MACKAY, Officer MOORE, Officer SIMPSON, Officer T. TRIBBLE, Officer K. TRIBBLE, Officer WALKER

**TACTICAL DISPATCERS:** Dispatcher J. SQUIRES, Dispatcher J. TERRY

**HOSTAGE NEGOTIATIONS TEAM:** Lieutenant O'CONNELL, Lieutenant TENORIO, Detective BOTTOMLEY, Officer GARRICK, Officer MEREDITH
Corporal PERETTO

**INVESTIGATORS:** Sergeant Horton, Detective J. McCarthy, Detective M. Mustard, Specialist Weiss

**DATE/TIME: 100208**

**CASE NUMBER: 08-16060**

**( X ) FAVORABLE** **( ) UNFAVORABLE**

On 10/2/2008 at 7:12 AM, Vallejo Police received a call of an armed robbery that occurred in the 300 block of Ohio Street. A husband and wife had just entered their vehicle when a lone gunman appeared and put a handgun to the woman's head and demanded cash. The suspect took a purse, the male's wallet, and their cash before running from the area. The male victim ran after the suspect and followed him to 241A Kentucky Street, where he saw the suspect enter an upstairs apartment in the 4-unit complex.

Vallejo Police Officers arrived almost immediately and began to attempt contact with the suspect. The suspect began firing several shots at the officers through the walls of the apartment. Officers were able to escape injury, but an immediate tactical response was initiated. The Vallejo Police Department S.W.A.T. and Hostage Negotiation Team arrived shortly thereafter, and a protracted standoff began.

Negotiators identified the suspect as a local wanted parolee and registered sex offender – 27 year-old Vallejo transient Darelle Maurice White. White apparently has an aunt who lives at the location, but it was determined that no other occupants were inside the apartment as the event unfolded. Negotiators were able to speak with the suspect by telephone, but he remained uncooperative and refused to exit. At one point additional shots were heard coming from inside, but no one was injured.

VALLEJO POLICE DEPARTMENT
EVALUATION COMMENT FORM

NAME OF EMPLOYEE(S) Corporal John Whitney # 554

DATE/TIME: February 23, 2006, 1450 hrs.

CASE NUMBER: 06-3835

( X ) FAVORABLE ( ) UNFAVORABLE

Describe Incident and Action Taken:

On above date and time, Corporal Whitney responded to a domestic violence incident at 1414 Magazine St. He determined that a 243 (e) had occurred and that the cohabitating boyfriend was the responsible. Cpl. Whitney's recruit interviewed the 24 year old witness to the incident and he essentially corroborated the victim's account of the battery.

Cpl. Whitney arrested the suspect and booked him into the county jail. The victim's statement was taped recorded and Cpl. Whitney also had her write down her statement on a form he created.

Initiator's Comments:

This investigation is good example of utilizing the Domestic Violence general order to investigate a domestic violence incident, make an arrest as indicated, and thoroughly document the victim and witness statements. The creation of the victim statement demonstrates Cpl. Whitney's initiative and a desire to hold suspects accountable even if the victim recants. Members of the Vallejo Police department and the citizens of Vallejo appreciate your professionalism and dedication to duty.

EMPLOYEE SIGNATURE

ORIGINATOR'S SIGNATURE
Lt. Reginald T. Garcia # 337

# VALLEJO POLICE DEPARTMENT

## Evaluation Comment Form

NAME OF EMPLOYEE
Sgt. Whitney

DATE/TIME
10/23/08 2100

( X ) FAVORABLE ( ) UNFAVORABLE RELATED REPORTS
08-17172

DESCRIBE INCIDENT AND ACTION TAKEN:
On 10/23/08 at approximately 2100 hrs, Officers from the Special Operations Division notified VPD dispatch that they had been involved in a shooting at Brinkman's Marina, 1 Curtola Pkwy. Sgt. Whitney was working an overtime shift and was due to go off duty. Sgt. Whitney responded and was one of the first Officers to arrive on scene. Sgt. Whitney immediately began ascertaining what happened and how he could help. Sgt. Whitney sequestered all of the involved Officers, requested medical treatment for the injured suspect and coordinated with other officers to establish a crime scene and otherwise control the scene.

INTIATOR COMMENTS:
Sgt. Whitney responded without hesitation to the middle of an extremely dynamic scene. He had little information going in and was quickly able to gain control of a situation where Officer's lives were at stake. He ensured all Officers involved were ok. Sgt. Whitney quickly notified the appropriate supervisors and delegated other tasks to Officers. The crime scene, photographs, hospital supervision, detective callout and other tasks were done within minutes. Sgt. Whitney's quick thinking and knowledge of department procedures/policies reflect highly upon the Vallejo Police Department and further show the professionalism/dedication of its members.

EMPLOYEE SIGNATURE

ORIGINATOR'S SIGNATURE

604

Distribution: (X) Original to File ( ) Copy to Employee

# Vallejo Police Department

Evaluation Comment Form

Name of Employee
Cpl. J. Garcia, Officer J. Whitney, Officer J. Caitham

Date/Time
04-11-05

☒ Favorable ☐ Unfavorable ☐ Related Reports

**Describe Incident and Action Taken:**

On 04-10-05, VPD units were dispatched to a street robbery that had just occurred at a senior apartment complex located at 445 Redwood St. The victim, an elderly female, was brutally assaulted and her purse taken. The suspect then got into a black Honda Accord and quickly left the area. Witnesses saw this robbery occur and provided a description of the suspect and vehicle to VPD. I spotted this vehicle on E/B I-780 and followed it into the City of Benicia where they were stopped a short distance later. Officer Caitham was my first arriving cover unit and we were able to apprehend the subjects. Officer Whitney who was the primary investigating Officer transported the victims and witnesses to our location for an in field lineup. Upon conducting the lineup, none of the witnesses or victims were able to provide a positive ID.

We located some stolen items i.e. credit cards belonging to the victim inside the suspect's vehicle but we had not other corroborating evidence to link the subjects to the actual robbery. Based on some strong circumstantial evidence, we transported the subjects to VPD pending further investigation.

Once at VPD, Cpl Garcia and Officer Whitney worked together to gather evidence and eventually interview both subjects. Through their interview, they were able to obtain a full confession from the suspect. The suspect was eventually booked into county jail on numerous felony charges.

**Initiator Comments:**

Initially, other than some strong circumstantial evidence, this investigation was handicapped due to the lack of direct evidence which would've tied the suspect to the crime. The confession that Cpl Garcia and Officer Whitney obtained from the suspect, proved to be a key piece of direct evidence which linked the suspect to the crime.

Officer Caitham helped the furtherance of this investigation by unselfishly assisting in all aspects of this investigation. I was very pleased with his professionalism, work ethics and sense of teamwork.

All of the above Officers should be commended for their outstanding efforts and team work as they were more than eager to assist in the investigation and piecing together this case.

7073

**Employee Signature**

**Originator's Signature**
Sergeant Kenny Park #536

536

Distribution: ( )Original To File ( ) Copy To Employee

# Vallejo Police Department

Evaluation Comment Form

Name of Employee
Officer Whitney #554

Date/Time
September 4, 2005

☒ Favorable ☐ Unfavorable ☒ Related Reports 05-17867

**Describe Incident and Action Taken:**

On Sunday, September 04, 2005, at 1315 hrs, Ofc Fowler was on patrol when flagged down by a homeless robbery victim on the Springs road overpass. The victim told Ofc Fowler that he was robbed at gun point and that the suspect had taken his bicycle.

Ofc Fowler broadcasted the description and immediately started checking the direction of flight. Ofc Fowler then located a black male juvenile, 16, about a ½ Mile away riding the victim's bike. Ofc Fowler detained him.

Ofc Whitney transported the victim to the scene for a show up which was positive. After the show up, Ofc Whitney searched the area and found the handgun, which turned out to be a pellet gun, under a car behind a building. The victim also identified the handgun. The suspect was out of Richmond.

**Initiator Comments:**

Great police work and great teamwork! Good job!

[signature], SGT #543

Employee Signature [signature]

Originator's Signature

Distribution: ( ) Original To File

(X) Copy To Employee

# VALLEJO POLICE DEPARTMENT
## EVALUATION COMMENT FORM

**NAME OF EMPLOYEE**
Officer John Whitney #554
Reserve Officer Rob Greenberg #1629

**DATE/TIME**
092505/0137

**(X) FAVORABLE**

**( ) UNFAVORABLE**

**CASE NUMBER**
05-19369

COPY

**Describe Incident and Action Taken:**

Officer John Whitney was working overtime on swing shift and Reserve Officer Greenberg was riding with him. The two were operating as a two man unit. They stopped a vehicle for a traffic violation. Upon contacting the driver Res. Officer Greenberg discovered that the driver had no identification. The driver also refused to answer to any questions.

The driver later identified as Anthony Hunter was removed from the vehicle and searched by Res. Officer Greenberg. During the search Res. Officer Greenberg found that Hunter was in possession of an empty holster, an amount of cocaine base which constituted possession for sales and an amount of cash consistent with a sales case. A subsequent search of Hunter's vehicle revealed a loaded 9mm handgun. The handgun was later submitted for latent fingerprint examination

Officer Whitney recognized the probability that there might be more contraband or evidence at the motel where Hunter and his passenger were staying. He asked for and received written consent from the passenger resident to search the motel room. The room search netted a scale, packaging and additional indicia fortifying the sales case and confirming the identity of the suspect/occupants.

**Initiator's Comments:**

Res. Officer Greenberg made the self-initiated traffic stop and did a thorough search of the driver. Officer Whitney recognized the potential admissibility issues involving a consent search and to mitigate this he did a thorough job of explaining and obtaining consent. The search will most likely prove to be the difference between a possession and a sales case.

After working approximately 18 hours Officer Whitney showed up for lineup five or six hours after he had left from his previous shift, following the investigation of this case.

This is an example of the self-initiated, thorough work that Officer Whitney does on a consistent basis. His hard work and dedication to the job are recognized and appreciated.

**EMPLOYEE SIGNATURE**

**ORIGINATOR'S SIGNATURE**

#485

VALLEJO POLICE DEPARTMENT

Evaluation Comment Form

NAME OF EMPLOYEE
Ofc. John Whitney

DATE/TIME
021105

(X) FAVORABLE ( ) UNFAVORABLE

RELATED REPORTS
04-26954, 05-975

DESCRIBE INCIDENT AND ACTION TAKEN:
On 122504, Ofc. Whitney investigated a 273.5 case where the suspect threatened the victim with bodily harm if she was to call the police. The suspect had a history of methamphetamine use and the threat was taken seriously. Ofc. Whitney used initiative to write a Ramey Warrant and charging the suspect with the appropriate crimes. Ofc. Whitney coordinated the serving of the warrant with CSU, and the suspect was arrested without incident. At the time of the suspect's arrest, he possessed methamphetamine which resulted in an additional charge. On 011705, Ofc. Whitney arrested another person for aggravated 245(a)1 & 273.5 charges, and authored a bail enhancement to insure the suspect would remain in custody to prevent further harm to the victim.

INITIATOR COMMENTS:
Ofc. Whitney is to be commended for his initiative in investigating these cases. Ramey Warrants and Bail Enhancements can be a mystery to some officers until they actually write them, and the experience gained by this will benefit one throughout their career.

EMPLOYEE SIGNATURE

ORIGINATOR'S SIGNATURE
Sgt. David Hoen #394

DISTRIBUTION: ( ) ORIGINAL TO FILE ( ) COPY TO EMPLOYEE

v298

# Vallejo Police Department

Evaluation Comment Form

Name of Employee: **Ofc. J. Whitney #554** Date/Time: **091804 / 2330**

☒ Favorable ☐ Unfavorable ☒ Related Reports **04-19738**

**Describe Incident and Action Taken:**

On the above listed date and time; Ofc. J. Whitney was on routine patrol in the area of Tuolumne Street and Cassady, when he heard several gunshots in his vicinity. Ofc. Whitney immediately began conducting an area check and heard several more shots fired. He saw a red Pontiac Grand Prix blow the stop sign at the corner of Ohio Street and Amador Street that he believed was involved. Ofc. Whitney was able to catch up to the Grand Prix and effect a traffic stop. During the process of conducting his investigation, Ofc. Whitney took two subjects into custody, one of which had an extensive history of violence. He located a loaded revolver under the front passengers' seat of the Grand Prix. Ofc. Whitney was able to secure his crime scene, notified Ofc. J. Coburn #577, who was the primary officer for the original call and between the two coordinated both scenes.

**Initiator Comments:**

Ofc. Whitney is to be commended for his attention to detail, his teamwork and his ability to coordinate with the primary officer. His professionalism contributed to the successful resolution to this case.

Employee Signature

Originator's Signature

Sgt. B. Clark #436

Distribution: (✓) Original To File (✓) Copy To Employee

**VALLEJO POLICE DEPARTMENT**

**Evaluation Comment Form**

**NAME OF EMPLOYEE**
John Whitney #554
Dustin Joseph #585

**DATE/TIME**
11-28-03/1530

**(X) FAVORABLE**

**RELATED REPORTS** 03-23593

**DESCRIBE INCIDENT AND ACTION TAKEN:**
On 11-16-03 the two of you arrested an individual who provided information as to the location of a Parolee at Large (PAL). After the verification of the info provided you initiated a surveillance at 414 Kentucky St. The PAL was observed and subsequent search of the apartment located the PAL, and material which facilitated additional charges. Additionally, the PAL's companion was arrested as well on various charges.

The report was complex and well written, which connected many component parts and supplements by other officers.

**INTIATOR COMMENTS:**
I received a letter from Parole Agent Aaron Horsma commending your performance of the arrest and investigation of this Parolee at Large: Robert Henderson. I agree with Parole Agent Horsma the two of you did an excellent job in the apprehension of a dangerous, wanted individual and his accomplice in crime.

Keep up the good work!

[signature] #554
**EMPLOYEE SIGNATURE**

[signature] #429
**ORIGINATOR'S SIGNATURE**

Distribution: ( ) Original to File ( ) Copy to Employee

VALLEJO POLICE DEPARTMENT

Evaluation Comment Form

NAME OF EMPLOYEE
Ofc. John Whitney

DATE/TIME
081604

(X) FAVORABLE ( ) UNFAVORABLE

RELATED REPORTS
04-17137

DESCRIBE INCIDENT AND ACTION TAKEN:
Ofc. Whitney responded as cover officer to a residential robbery at 1209 Marin Street. When realizing the primary officer was ¾ through his shift and backed up with reports, Ofc. Whitney volunteered for the case. Ofc. Whitney learned the nickname of the suspect from the victim, then followed up with detectives. When he learned what he believed to be the suspect's true name, Ofc. Whitney prepared a photo line-up and showed it to witnesses. Three witnesses identified the suspect from the line-up, and the case was closed with a warrant being requested.

INITIATOR COMMENTS:

For assisting another officer in this manner, Ofc. Whitney is to be commended for his teamwork. For solving this case in the manner described, Ofc. Whitney is to be commended for his initiative and follow-through. It would have been acceptable to merely write the report and forward it to detectives, but Ofc. Whitney chose to complete the investigation and did so in a thorough, professional way.

EMPLOYEE SIGNATURE

ORIGINATOR'S SIGNATURE
Sgt. David Hoen #394

DISTRIBUTION: (✓) ORIGINAL TO FILE (✓) COPY TO EMPLOYEE

v298

VALLEJO POLICE DEPARTMENT

Evaluation Comment Form

NAME OF EMPLOYEE
John Whitney

DATE/TIME
052204 / 2121

(X) FAVORABLE ( ) UNFAVORABLE

RELATED REPORTS
04-10732

DESCRIBE INCIDENT AND ACTION TAKEN:

Ofc. Whitney made a traffic stop for a minor CVC violation and learned the driver was operating with a suspended license. When searching the vehicle, Ofc. Whitney found bags of new clothes with store sensors still attached. He determined that the clothes were stolen from various stores at The Galleria Mall in Roseville. The thefts were unreported. Ofc. Whitney contacted representatives from each store to obtain the necessary information. He arrested the 3 occupants of the suspect vehicle and secured full confessions from each of them. He itemized and booked nearly 100 items of evidence.

INITIATOR COMMENTS:

Based on the large quantity of property recovered, it was clear that these persons earn an income from thefts of this nature. As a result of the fine investigation completed by Ofc. Whitney, the D.A.'s Office filed multiple counts of 459PC and 496PC on all persons arrested. Their criminal histories revealed similar type activity committed in the past. Due to Ofc. Whitney's thoroughness, convictions are inevitable in this case. Ofc. Whitney is to be commended for the time and effort put forth in this investigation.

EMPLOYEE SIGNATURE [signature]

ORIGINATOR'S SIGNATURE Sgt. David Hoen 394

DISTRIBUTION: ( ) ORIGINAL TO FILE (✓) COPY TO EMPLOYEE

VALLEJO POLICE DEPARTMENT

Evaluation Comment Form

NAME OF EMPLOYEE
Ofc. John Whitney

DATE/TIME
021105

---

(X) FAVORABLE ( ) UNFAVORABLE

RELATED REPORTS
04-26954, 05-975

---

DESCRIBE INCIDENT AND ACTION TAKEN:
On 122504, Ofc. Whitney investigated a 273.5 case where the suspect threatened the victim with bodily harm if she was to call the police. The suspect had a history of methamphetamine use and the threat was taken seriously. Ofc. Whitney used initiative to write a Ramey Warrant and charging the suspect with the appropriate crimes. Ofc. Whitney coordinated the serving of the warrant with CSU, and the suspect was arrested without incident. At the time of the suspect's arrest, he possessed methamphetamine which resulted in an additional charge. On 011705, Ofc. Whitney arrested another person for aggravated 245(a)1 & 273.5 charges, and authored a bail enhancement to insure the suspect would remain in custody to prevent further harm to the victim.

INITIATOR COMMENTS:
Ofc. Whitney is to be commended for his initiative in investigating these cases. Ramey Warrants and Bail Enhancements can be a mystery to some officers until they actually write them, and the experience gained by this will benefit one throughout their career.

EMPLOYEE SIGNATURE

ORIGINATOR'S SIGNATURE
Sgt. David Hoen #394

---

DISTRIBUTION: ( ) ORIGINAL TO FILE ( ) COPY TO EMPLOYEE

v298

# EXHIBIT C

# Letters of Support

September 3, 2019

TO: To Whom It May Concern

FROM: Joseph M. Kreins, Chief of Police (Retired)

SUBJECT: Character Reference – Endorsement Letter for John Whitney

It is my distinct pleasure to provide this letter of positive character reference and recommendation for Captain John Whitney.

I currently work as a law enforcement consultant in the San Francisco Bay Area, having served over 40 years in law enforcement - public safety, and serving the past 20 years as a Chief of Police. I served as the Chief of Police in Vallejo, CA from 2012-2014, until my retirement into the private and public sector as both a law enforcement consultant and working several positions as an interim Chief of Police. Prior to working at the Vallejo Police Department, I also served as the Chief of Police in the Novato and Sausalito Police Departments.

I had the honor of working closely with John Whitney for approximately 2 ½ years at the Vallejo Police Department. John was serving as a Police Sergeant when I arrived at Vallejo PD in July 2012. During my first year at Vallejo PD, we conducted internal testing for virtually all ranks and positions throughout the organization. John Whitney tested for the position of Police Lieutenant and he placed first in overall scoring in the testing process. I subsequently promoted John to the rank of Police Lieutenant.

From the first day that I met John, I was impressed by his intelligence, tenacity as a supervisor, and his dedicated work ethic. John quickly became one of my key 'go to' personnel for work on a variety of projects and programs. Some of this work included developing department training and succession plans. John was an outstanding police supervisor with a strong dedicated work ethic and he consistently practiced courageous leadership through his willingness to hold officers accountable for their daily work performance. John was willing to hold personnel accountable in an organization that had suffered from severe cultural deficiencies, including a lack of accountability at all levels.

After John Whitney's promotion to the rank of Lieutenant, I noted that John continued to excel in every assignment he was given. I became aware of John's teaching abilities at the Napa Police Academy, and I was proud when he was selected as the chair of the Academy's regional training committee. I received continuous praise and accolades regarding John's leadership skills, teaching skills, work ethic and commitment to teaching at the Police Academy.

I found that John always balanced his commitment to teaching with his work as part of the new leadership – command staff team at the Vallejo Police Department. As time went on, I relied on John to lead and manage more and more intricate and complex assignments, including; working on the transition to our new department policy platform – Lexipol Policy Management System which was a significant transition for the entire organization. While working for the Vallejo Police Department, John Whitney served with distinction. Without a doubt, John enhanced the efficiency and effectiveness of the organization. John is one of those rare public employees who epitomizes dedication to public and community service. He does an exceptional job of managing staff and difficult personnel issues, and he was very well-liked and respected by his peers, and subordinates.

Prior to meeting John Whitney, I knew of his excellent reputation in the field of public safety, especially through my contacts at the Napa Police Academy. In short, John has impeccable professional credentials and I would ardently recommend him for any leadership position in any law enforcement agency. Although John and I only worked a few short years together at the Vallejo Police Department, we have continued to maintain a friendship and professional relationship for these past five years. John has continued to serve as my "go to" person when I have needed background and reference information on a variety of law enforcement leadership and management topics.

John Whitney possesses and practices the highest ethical standards. John has exceptional verbal and written communication skills, and I always looked forward to reviewing his projects to determine what I could learn from him. As I watched John's interactions with both our sworn and professional staff, it was obvious to me that John was a natural teacher and a natural leader. I know that there are many folks in our profession, myself included, who regularly call upon John for coaching, guidance, and mentoring.

After leaving the Vallejo Police Department in October, 2014, I continued to maintain a positive professional relationship with John Whitney, as well as with Lieutenant Kenny Park and Chief Andrew Bidou. Lieutenant Park always spoke very highly of Captain Whitney and appreciated their professional relationship within the organization. I can recall numerous conversations with Chief Bidou, wherein Chief Bidou continually praised Captain Whitney for his hard work, dedicated work ethic, leadership skills, integrity, and willingness to put in extra hours on a regular basis to ensure that all necessary work was completed with the best possible results. Chief Bidou told me over and over how he depended on Captain Whitney as "the" key member of his command staff and a true leader in the organization. I specifically remember how proud Chief Bidou was to be able to promote John Whitney to the rank of Police Captain. As John Whitney was my "go to" leader and manager in the organization, Chief Bidou also complimented John on numerous occasions for his dependability, positive performance, and strong work ethic.

As I mentioned, I have always known John Whitney to be an individual of the utmost integrity and dedicated work ethic. He is a problem-solver who consistently demonstrates a high level of emotional intelligence and commitment to his profession through teaching, training and mentoring. John is an individual who has consistently implemented creative solutions to problematic and complex situations. John is a reliable, trustworthy, and committed individual who can always be

counted on to get the job done.

I can personally vouch for John Whitney's integrity, ethics and work performance, and I have always found John to be an individual of the highest moral character.

Please feel free to contact me directly for any additional reference or background information on Mr. John Whitney

Yours Truly,

*Joseph M. Kreins*

Joseph M. Kreins
Chief of Police (Retired)
Kreins' Consulting
www.kreinsconsulting.com

3 September
2019

From: Michael
Wood
[redacted]

TO WHOM IT MAY
CONCERN,

I was stunned to learn that John Whitney's character, ethics and behavior have been questioned by members of the Vallejo Police Department, where he has faithfully and professionally served for nearly two decades.

I'm shocked and confused to find myself in the position where it's necessary to defend this man, because he's one of the most ethical and professional men that I know. Nonetheless, I will attempt it, because this man deserves the most aggressive and thorough defense against such accusations.

I've known John since 2006. In the 13 years since we have met, I've never known John to be anything other than honest, loyal and trustworthy in all respects.

Frankly, if John had acted otherwise, our relationship would have been short, indeed. When I was a Cadet at the United States Air Force Academy, we lived by an Honor Code which stated, "We will not lie, steal, or cheat, not tolerate among us anyone who does." The Honor Code formalized what I had been taught by my parents, and I readily embraced it as a Cadet. After I graduated from the Academy and received my commission, it continued to be an essential component of my own value system. There is no room in my life for dishonest, unethical, untrustworthy people, and I would not have maintained a relationship with John if he did not meet the highest standards of character and integrity.

This is a good
man.

I served almost 23 years as an officer in the United States Air Force, honorably retiring as a Lieutenant Colonel and KC-10A Evaluator/Instructor Pilot. For nearly 15 years, I have served as a pilot at Southwest Airlines, where I've held the rank of Captain for the last 5 years. I have

spent my entire adult life leading and working with professionals of the highest caliber, who were expected to perform their duties with integrity and skill in extremely difficult and stressful conditions. As a result, I'm a strong judge of character, and I'm very particular about the company I keep. John would not have a place at my table if I wasn't absolutely convinced that he was a good and trustworthy man, who could be counted on when times were tough.

It's obvious that I'm not alone in this assessment of John. In the darkest days of the city's bankruptcy, civic and law enforcement leaders turned to John, seeking his help. As the police department hemorrhaged experienced and trusted personnel, John was one of the stalwarts who provided continuity and leadership to a beleaguered department and city. When the city's financial distress dictated a restructuring that required him to surrender his new position as a Sergeant, he graciously did so, remaining committed to the department and city. John's hard work, dedication, commitment
to excellence, and continuous growth as a police leader did not go unnoticed, and when the city got back on a better footing, he was quickly promoted to ever-increasing positions of responsibility and leadership.

Those promotions weren't gifts. They were the result of John's hard work and dedication, and the city's strong trust in John's character and ability. At each rank, and in each position, John demonstrated he could be counted on to provide strong, ethical leadership, and could perform his duty in an exemplary manner. If he had shown any tendency to be dishonest, unethical, or untrustworthy, he never would have built the rock-solid reputation that he is known for in the city and beyond. He certainly would never have been trusted to fill the position of Acting Chief of Police.

Neither would John have been trusted as an instructor at the Napa Valley College Criminal Justice Training Center. I spent my military career as an instructor in the classroom and the cockpit, and as a Southwest Captain, I make a living instructing and supervising our newest First Officers in the air. I'm a certified law enforcement firearms instructor, an industry-leading law enforcement writer, and a guest instructor for groups like the National Tactical Officers Association and the California Association of Tactical Officers. I am well aware of the high standards that professional instructors—and law enforcement instructors, in particular--are required to meet. I know that John would not have survived the scrutiny of his peers and his students as a police academy instructor for so long, without living up to the highest standards of integrity and performance.

I have no direct knowledge of the circumstances which forced this examination of John's character, but I am infinitely confident that anyone who has doubts about his honesty, ethics and trustworthiness does not truly know this man. Perhaps they don't have all the facts to

evaluate, or perhaps they have been purposely misled by people who would benefit from John's misfortune, but it's clear to me that they don't understand who John is, and what he is made of. I hope they will make the effort to reevaluate the situation, and their opinions about John, with an open mind. He deserves no less.

John is one of the finest people I know. He's an exemplary father and husband, a consummate professional, and a dedicated servant of the citizens of Vallejo. I would stake my personal reputation on John, and would trust him with anything I valued, and anyone that I loved.

I would be eager to speak with anyone who has questions about my judgment of John's character. Please feel free to contact me as indicated above at your earliest convenience.

Respectfully
submitted,

Michael Wood Captain, Southwest Airlines
Lieutenant Colonel (Ret), USAFR Author, Newhall
Shooting: A Tactical Analysis Columnist, and
Editorial Board Member, *PoliceOne.com*

TO WHOM IT MAY
CONCERN,
DATE 09-05-19

I have known John since 2001 and have had the pleasure to work with and for John, in my time as a Police Officer for the City of Vallejo Police Department.

During my time spent working with and along side John when he was still a patrol officer with me, I had seen nothing but positive work ethic, integrity and honor displayed by John at all times.

I always respected the fact that John did his job with great pride and integrity. John would always take the time to make sure to ask other officers if they needed help with anything and would not hesitate to do whatever he could to assist them.

John not only displayed this kind of eagerness with his fellow officers, but with the general public as well.

When John was promoted to the rank of Sgt of Police at the Vallejo Police Department, the same attributes that got him so rightly promoted to Sgt, were not lost and John continued to always be ready and willing to help others in anyway he could.

I always found John to be the type of Sgt that displayed the qualities of a leader. When I say this about John I mean that he would do his best to make others their best, therefore bringing out the best in himself and those around him. John would put the needs of others before the wants of himself.

I never got the honor of working for John when he was rightly promoted to the rank of Lt. and then Cpt. of Police at the Vallejo Police Department.

Since the time I retired from the Vallejo Police Department, I have stayed in close touch with most of my brothers and family there. In the years since I retired, I have not heard any of my brothers in blue speak ill of John and to the contrary, I have heard many times that John was the best Captain to work for, and under at the Vallejo Police Department. That if they were given the choice of Captains at Vallejo PD, they would rather work for John than for other supervisors.

If I was ever given the chance and opportunity to go back into the profession of Police service again, I would only hope that I would be allowed the Honor to work with, for and under the leadership of John Whitney.

Signed,

Jeremie Patzer VPD #568 (Retired)
[redacted]3

September 3, 2019

To Whom This May Concern:

My name is Charlie Spruill. I have had the pleasure of knowing and working with and for John Whitney for approximately 20 years. I am a retired Police Sergeant from the City of Vacaville Police Department and I am currently the Coordinator at the Napa Valley College, Criminal Justice Training Center.

As a Police Officer, Detective and Police Supervisor I have worked with John in my position as a patrol officer, investigator and supervisor. This included working with, consulting and coordinating day-to-day operations and investigations. As a Supervisor, I have coordinated tactical operations, sex offender sweeps and mutual aid training and responses at the request of the California Office of Emergency Services under his Supervision.

As the Police Academy Coordinator, I have assigned John to teach and facilitate the learning for untold numbers of students. The topics have included: Chemical Agents, Firearms, CLETS, Patrol Procedures, Vehicle Pullovers, etc. The students are required to complete and instructor evaluation. His evaluations have been nothing less than outstanding. John interacts well with the students and the students have nothing but praise for him.

I have worked with, consulted and responded with John Whitney concerning my patrol and investigative duties. I have had the opportunity to train, work with and respond as part of the Solano County Mutual Aid Mobile Field Force. I have found him to be reliable and calm in the face of much adversity.

Respectfully Submitted

Charlie Spruill

September 3, 2019

Dear sir,

I am writing this letter in reference to my co-worker of approximately 12 years, John Whitney.  John and I have worked at the Napa Valley Police Academy as instructors in a part-time capacity.

I am a retired Vacaville Police detective and have also worked at the police academy for approximately 14 years.  I am currently the lead range instructor at that academy in addition to teaching other subjects.

My time working with John has allowed me to know him personally and professionally.  I've personally seen John exhibit the following traits while working with me at the academy:

- Modeling ethical behavior to cadets and staff
- Keeping his promises
- Focused on cadet success
- Leadership by doing and not just giving commands

I have not witnessed nor heard of any ethical/professional/leadership issues with John, in fact my experience with him has been the exact opposite.  John is a conscientious, reliable worker and is one of the instructors I know I can count on in any situation.  John has always been fair and impartial with police cadets, striving to get the best for future law enforcement, while not accepting any behavior not fitting a future police officer.  He cares for the cadets/future officers as individuals and as our LE future.

Please call me if you are interested in discussing anything in the above letter or if you have any other questions.

Regards,

Dave Marsh

September 10, 2019

RE: Character Statement for John Whitney

To whom it may concern,

I have had the pleasure of knowing John Whitney for over three (3) years. I met John when I started my employment with the City of Vallejo as the Director of Human Resources. John was the Police Captain assigned to the Police Administrative Unit with responsibility for coordinating Police recruitments and personnel matters.

During my tenure with the City of Vallejo, I observed John to be professional, dependable, ethical and competent. John not only worked well with management staff, but also with other employees throughout the City. He had exemplary rapport with the Human Resources staff in Vallejo. His excellent communication and interpersonal skills allowed him to connect with people, and inspire them to perform at their potential. In conversations with John's staff, I have received reports praising his management style and leadership.

I have the utmost respect for John. I feel honored to provide this character statement and hope the information I provided helps you understand what an upstanding individual John is. If I can be of further assistance, please call me at [redacted]

Sincerely,

Jasmin Loi

To: Chief Allio                                                    September 15, 2019

From: John Garcia (Retired)

Subject: Letter of Support of Captain John Whitney

This memorandum is a letter of support for Captain John Whitney. I am a retired member of the Vallejo Police Department where I served over 28 years.

I have worked with John Whitney for most of his career at VPD and have seen him promote through the ranks. During that time, I can describe John as a man of integrity, a hard worker, and with a high level of professionalism.

I can honestly say that John would often be characterized as being a square, and never doubted his veracity or his commitment to the agency.

John has always been known to be fair and dedicated to the members of the Vallejo Police Department.

Throughout my years at VPD, I never witnessed John to be out of character and even when we had a disagreements or a misunderstanding, he never held a grudge or abused his power as a commanding officer.

I realize that my former agency has gone through some tough times with internal politics and hope that John is not a casualty of that behavior.

In closing, I have never witnessed any evidence to question John's integrity or work ethics as a Police Captain. He has displayed a high level of leadership and was respected by his peers.

John has put his heart and soul in to the betterment of the Vallejo Police department.

September 4, 2019

To Whom it May Concern,

My name is Laura Donovan.  I have been a volunteer at the Vallejo Police Department since 2011. I am also a full time Real Estate Broker and Notary Public in Vallejo and surrounding communities.

During my time as a volunteer at the Vallejo Police Department, there have been multiple Captains, Lieutenants, and Sergeants in charge of the volunteer program over the years.  Out of all of our supervisors, Captain Whitney has stood out to me as a leader that genuinely cares about the volunteers, the Vallejo Police Department, and the City of Vallejo. Despite his extremely busy schedule and vast community involvement, Captain Whitney always made himself available to assist the volunteers at any time, whether he was being paid for his time or not. He continually supported us by going out of his way to make sure that we, the volunteers, felt appreciated and were provided with the tools and guidance needed to accomplish our goals. In my experience of working with Captain Whitney both directly and indirectly, I have found him to be courteous, dependable, honest, and responsible without fail. Captain Whitney is and always has been a true professional, dedicated to doing his best in all that he does.

One of my duties as a volunteer at the Vallejo Police Department has been to help organize and run the Citizen's Academy. This is a challenging task which involves logistical planning and the coordination of over two dozen officers of various ranks as well as volunteers and administrative personnel. It requires several months of preparation in advance and the academy itself traditionally runs for ten consecutive weeks. In the eight years that I have assisted with engineering this community event, only one supervisor has stepped up to assist me, going above and beyond to help me coordinate the event to guarantee its success. That supervisor is Captain Whitney.

I have also worked directly with Captain Whitney on other community events over the years to include several community engagement Open House events held at the Vallejo Police Department and the Jeff Azuar Memorial K-9 Trials. Even though, at the time, Captain Whitney had heavy responsibilities to the Vallejo Police Department, the Vallejo community, and his family, he worked tirelessly to ensure the success of these events, never faltering any of his other duties.

Captain Whitney is a tremendous asset to the Vallejo Police Department and the community.

Sincerely,

Laura Donovan
Volunteer for the Vallejo Police Department

To whom it may concern,

I worked for the Vallejo Police Department for 11 years and retired December 2012. I worked with Captain John Whitney since I was hired on May 2002 as we were on the same Patrol team as Officers.  I have worked with Captain Whitney when he was an Officer, Corporal, Sergeant and Lieutenant.

In 2007, I was re-instated after a yearlong termination. At that time, Whitney was a patrol Sergeant. He reached out to me and told me to come to his team, as it would be a difficult process for my reintegration as a Police Officer. Whitney maintained a positive roll model and an excellent source for me during that trying time. As it turned out, my process was fine. Just knowing that Whitney took the time for a fellow/subordinate Officer meant a lot.

I continued to work on Whitney's patrol teams or within the same shifts (swings or graves) for several years. He was always professional with Officers, management and the public. He treated fellow Officers fairly and with respect regardless of what the circumstance were. One thing I can say about John Whitney is he is a man of integrity. He always had the reputation of doing what was right, and I am quite certain his honesty and positive attitude attributed to his promotions.

Retired Officer Eric Jensen #574

To Whom it may Concern

I have been employed by the City of Vallejo for the past forty-six years as a police officer with the Vallejo Police Department. I currently am a police lieutenant assigned to the patrol division as a watch commander.

I have known John Whitney since he was hired by the Vallejo Police Department on 01-03-2000. Prior to his employment with the Vallejo P.D., Whitney was employed as a deputy sheriff with the Solano County Sheriff's Office.

Over the years, I have observed Whitney hone his skills as a police officer, working in several different assignments.

I have worked with Whitney in several different capacities, including as his supervisor, as a peer in both the ranks of sergeant and lieutenant, and as his subordinate after he was promoted to the rank of Captain of Police.

I have known Whitney to be competent, fair, level headed, extremely hard working, and a person of high moral integrity.

Whitney has constantly been improving his level of education, earning a bachelor's degree and two master's degrees.

Whitney has attended a plethora of police management related courses and seminars.

Earlier this year, Whitney was awarded a very prestigious award from POST for his endeavors as a training manager. Whitney has also had a long-term relationship as an instructor with the Napa Valley College Law Enforcement Academy.

Whitney has been someone that I have trusted and relied on for advice and support over the years.

John Whitney has been one of the finest individuals that I have had the pleasure of meeting and getting to know over the course of my law enforcement career.

Herman E. Robinson
09-10-2019

TO:        Whom it May Concern

From:      Corporal Stanley Eng # 462 (Retired)

Date:      September 2, 2019

Subject:   Captain John Whitney # 554

I have worked for the Vallejo Police Department for over 28 years and retired May 2, 2019. I have known Captain John Whitney # 554 since he was hired around 2000. I have worked with Captain Whitney when he was an Officer in the Bike Unit, a Swat Operator, Swat Team leader, Swat Commander, and a Patrol Captain. I was able to see Captain Whitney as he rose from the rank of Officer to Captain. Although Captain Whitney was three ranks above me, he never treated me any different as he rose through his rank.

Captain Whitney has always been very fair when it came to the Officers that worked for him. If you were to pool the Officers that know him, I bet that you would get that over 95% would agree with me. Captain Whitney would always listen to my suggestions whenever I had a questions or ideas for any new projects that I was working on and was supportive. His door was always open at anytime to any member of the department who needed to speak to him. Off-duty was not a word Captain Whitney used since he believed he was always on-duty and at the service of the members of the Police Department or the city of Vallejo.

I have known Captain Whitney for 19 years while working at the police department and prior when he worked at the Solano County Sheriff's Office. During my tenure there, I have worked for many Police Captains. I can go on record to say that Captain Whitney is one of the most ethical and professional supervisors that I have worked for at the Vallejo Police Department.

Corporal Stanley Eng # 462 (Retired)



City of
VALLEJO
California

Office of the Mayor · 555 Santa Clara Street · Vallejo · CA · 94590 · 707.648.4377

Dear Sir/Madam,

This letter serves as an endorsement for Mr. John Whitney for a position with your agency.

I have known John for many years. I was one of his training officer's when he first came to the Vallejo Police Department in 2000 and was also his Sergeant when he worked for me in the Patrol Division in 2003.

I was absolutely shocked to learn that John's integrity, ethics and professionalism was doubted and questioned. For as long as I've known John, his integrity has always been above reproach. Those that know John either professionally or socially will say the same.

Frankly, I believe that because John spoke out about a negative culture on the Vallejo Police Department, his reputation was soiled by those that did not want any "dirty laundry" aired. As the Mayor of Vallejo, I look at ethics and integrity as one of the most important characteristics of the command staff of any of our departments. His concerns only go to show that he is mindful of what may become public during any litigation and that early intervention would be prudent.

During bankruptcy, John was demoted from Sergeant to Officer as were several others. Instead of leaving for another department, John stayed with VPD and was ultimately reinstated as a Sergeant in 2012. This speaks volumes of his dedication to the City, its residents and the police department. I could go on and on describing John and his abilities but I believe that his resume and the positive comments from others speak volumes towards his character and his abilities. I am nothing but impressed with John and what he has accomplished in his career. I highly endorse him for a position with your agency.

Should you have any questions, please give me a call at [redacted]

Sincerely,

Bob Sampayan

Bob Sampayan
Mayor

Whitney_07.31

Napa Valley College Criminal Justice Training Center

Student evaluations – Class 108

Instructor Whitney was very involved and kept everyone's attention. He is highly respected from our class. I enjoy him as an instructor and I've very glad he chose to spend more time with our class. He was very upfront, honest and kept things realistic.

Instructor Whitney related the material he taught very well to the cadets. He allowed us to have good discussions and made the learning fun. In chemical agents he was able to calm my nerves and help all the cadets get through it. He was also a very helpful firearms instructor giving great tips and feedback. Overall Instructor Whitney was very knowledgeable in many different areas and gave practical tips and advice to help us through the academy and through our careers in law enforcement.

Great instructor in general, very knowledgeable in a lot of different areas.  I liked that he tried to communicate with the class on a more personal level in between breaks. I disliked that he OC sprayed me, other than that he made most of the classes he teaches enjoyable. He is one of the best instructors at the academy. He kept the class engaged and focused. He focused on each student rather than the whole class. Anyone struggling with anything, instructor Whitney took his time to help those cadets individually.

Enjoyed all the time we got to spend with Cpt. Whitney. I can tell he takes training cadets very seriously and I appreciate that. If I had some things he could improve on I would share them; but I have none.

He is very experienced. He understands the strength and weakness of his students. He knows how to get everyone involved. He ensures everyone understand the concept he is teaching by simplifying and presenting it well.

I really enjoy Captain Whitney as an instructor. He always brings in real stories from his career that put a perspective on the material we are learning. He is very knowledgeable, and a great instructor to learn from. He engages with each squad when we break off and perform learning activities, and also challenges new ideas or thoughts, which is important. I would not change how Captain Whitney teaches

.

Having more videos to show that relate to the topic may be helpful. Great instructor, I had fun at his class and learned a ton of information.

Instructor Whitney appeared well knowledge and experienced with the learning domain he was tasked with presenting. I enjoyed his use of situations he had personally encountered and resolved through his career. Instructor Whitney utilized humor to help certain learning objectives be further understood. I also found the material to be thoroughly covered and Instructor Whitney appeared glad to be teaching the class. Instructor Whitney also had us participate in vehicle stop scenarios with compliant and non-compliant drivers. I liked how practical these situations were to my future career and ability to find resolutions. Overall, I enjoyed Instructor Whitney ability to instruct the class.

Captain Whitney was a great instructor. He kept things light and upbeat and serious when needed. He was very informative and helpful at the Shooting Range as well as for tactical communications. It was nice to see him on a different level rather then just shooting us with pepper spray and gas. Everything he taught was much appreciated. Thank you!

Instructor Whiney was an excellent instructor and made everyone interested in engaged with the topics. He brought a great perspective on things and was able to describe things in a way that made sense. He is a talented instructor and I learned a lot from him.

WHITNEY IS A VERY REALISTIC TEACHER WHO DOES A GREAT JOB AT TEACHING ANY SUBJECT. HE BRINGS TO LIFE TOPICS THAT CAN EVEN SOMEWHAT BE CONSIDERED "DRY." BUT THIS TOPIC WAS NOT THANKS TO HIM. AT THE END OF THE CLASS, HE BROUGHT EVERYONE OUTSIDE AND WE WERE ABLE TO HANDS ON PRACTICE THE TRAFFIC STOPS WE HAD LEARNED TO DO IN CLASS.

CPT. Whitney did a really good job with this class. He always keeps the class engaged and allows us to ask questions that facilitate class learning. He also uses a lot of past cases to drive the point home on whatever we are talking about. He is a really good instructor and does well with keeping everyone engaged.

The introduction to making and communicating during traffic stops was very useful and presented a great opportunity to begin preparing for scenarios and beyond. The material may not have been the most exciting of the academy but it was presented well and is a critical aspect of every day policing. Knowing how to speak with subjects and potential suspects will be important. Having an outline/guidelines to follow helps remove some of the unknowns that come with dealing with people in high-stress situations.

Captain Whitney was great; I like the way he teaches and he makes the topic interesting. I would like him to teach us more if it's possible. Chief Whitney is able to relate to the students and has more of a laid back approach to teaching. He is able to answer personal questions, with understandable answers. I believe that Chief Whitney should teach more because he is a good asset to the academy and his experience shows in the classroom. Overall, great teacher and interactive with the students.

Captain Whitney is a great instructor. He is very knowledgeable and explains all of the material thoroughly. He has a laidback and friendly demeanor.

Instructor Whitney provided very strong, detailed information regarding vehicle pullovers. The pullover scenarios we practiced were very helpful, and I felt that they were far more important than the classroom session. If I could make any changes, I would spend much more time with hands-on practice than in the classroom.

Instructor Whitney was well prepared for our classes and he made it very easy to understand. He took us outside and showed us how to talk to a person once we pull them over. He went over the 8 steps and how to properly follow them.

INSTRUCTOR WHITNEY DID A GREAT JOB TEACHING US ABOUT TACTICAL COMMUNICATION.  HE GAVE A LOT OF GOOD EXAMPLES OF WHAT TO AND NOT TO DO.  HE WAS ABLE TO MAKE THE CLASS FUN AND HOLD THE ATTENTION OF THE CADETS.

April 27, 2005

To:        Napa Valley College
From:      Sergeant Jim O'Connell
            Vallejo Police Department
Re:        John Whitney

The purpose of this letter is to recommend John Whitney for a teaching position with the Napa Valley College Police Academy.

I have known John Whitney for nine years. I have known John when we were students, during his time as a Deputy with the Solano County Sheriff's Department, and during our time together at the Vallejo Police Department.

John is a member of the SWAT Team, the Honor Guard and the Bicycle Team. All of these assignments are coveted volunteer positions. Like John, I am a member of the Bicycle Team and the Honor Guard, and have had the opportunity to work with, and observe John under different circumstances.

John has significant experience in Police cycling, and as such, has taught the subject on numerous occasions. It has been my observation that John is a competent, confident teacher. Not only is he exceptionally well versed in the topic, but he also has the ability to relay the information in an understandable, comprehensive manner. I have always been impressed with the ease with which he teaches persons of varying ranks. He can communicate effectively with any group of persons and in my opinion, would excel in an academy setting.

I have supervised John in the Patrol Division and know him to be an even keeled, intelligent officer. I have worked with him on complex investigation and have recognized him as a well rounded officer, capable of working, and teaching, every aspect of law enforcement.

Last but not least, John is a man of character who I consider a role model for young, aspiring police officers. Placing someone in a position to teach and mentor academy recruits is one that demands our best people. I consider John Whitney an officer who represents the very best of modern day police officers, and would be a superb addition to any teaching staff. He has my full endorsement and I am certain he will do an exceptional job at the academy, just as he does at the Vallejo Police Department.

Please feel free to contact me at any time.

Sergeant Jim O'Connell
VPD Special Investigations



# CITY OF VALLEJO

POLICE DEPARTMENT

111 AMADOR STREET • VALLEJO • CALIFORNIA • 94590-6301 • (707) 648-4321 • FAX (707) 648-4490

Mr. Greg Miraglia
Director of Criminal Justice Training Center
Napa Valley College
Napa, California

Dear Mr. Miraglia:

I have been a Vallejo Police Officer for over 23 years and am presently a Sergeant assigned to the Patrol Division. My experience includes previous assignments in Narcotics, SOLNET, Crime Suppression Unit, and the Criminal Investigations Division of the Vallejo Police Department.

For the past 15 months I have directly supervised Ofc. John Whitney. He's been a Police Officer for the past 9 years and is presently assigned to the Patrol Division. Ofc. Whitney has also been selected for many specialized assignments such as SWAT, Honor Guard, Bike Team (where he also serves as an instructor), and as a Field Training Officer for newly hired reserves. To be considered for either of these assignments is an honor; to be selected for all 4 is truly a remarkable accomplishment.

In addition to the above, Ofc. Whitney enthusiastically discharges his duties as a Patrol Officer. I have personally observed Ofc. Whitney at the scenes of shootings, armed robberies, burglaries, and various other crimes. He remains focused and performs well. He is a highly competent officer. Without hesitation, I recommend him for a position of Academy Instructor at your training facility.

Sincerely,

David Hoen

Sergeant David Hoen
Vallejo Police Department

Printed on Recycled Paper

UNION INSTITUTE & UNIVERSITY

COLLEGE OF UNDERGRADUATE STUDIES

To Whom it may Concern: October 1, 2005

**Recommendation for John Whitney:**

I have known John Whitney for well over a year as an undergraduate student at Union Institute & University (Sacramento Center), where he is finishing-up his Bachelor of Arts Degree in Criminal Justice Management.

During John's tenure at UI&U, I served as his faculty Advisor and also had the pleasure of having him in a number of my criminal justice courses. I additionally had the satisfaction of serving as faculty for John's Capstone Research course titled Investigations Operations Supervision (the Capstone project is a major research undertaking and the culminating experience of a 4 year degree). After extensive background work and literature review, John ventured into original and secondary research, ultimately resulting in unparalleled discussion and conclusions. John's research was tantamount to graduate level work and certainly bespeaks well for him and any graduate program fortunately enough to enroll him.

While many, if not most students, are content to accomplish the academic task before them, John was one who did not fear going above and beyond the call of duty. One example was his desire to delve further into the study of criminal justice related issues. John so wanted to explore these topics, he actually helped me develop a new learning modality, and then set new standards for achievement.

John is a self-motivated, self-directed individual who will challenge himself beyond conventions. He will be an asset to any academic graduate program or opportunity-conscience employer.

I highly recommend Mr. John Whitney to any academic institution of higher learning and/or any employer. Please feel free to call if I can be of any further assistance. My officer number is [redacted]

Steve Mauser, M.S.
Professor and Faculty Advisor

2710 GATEWAY OAKS DR. #310 SOUTH, SACRAMENTO, CA 95833-4309 · 916/564-3100 · 800/486-7049 · FAX 916/564-3131

www.tui.edu

# EXHIBIT D

# College Degrees

# University of San Diego

To all to whom these Letters shall come, Greetings
The Trustees of the University on the recommendation of the Faculty
and by virtue of the Authority in Them vested have conferred on

## John Paul Whitney

the Degree of

## Master of Science

Law Enforcement and Public Safety Leadership

with all the Rights, Privileges and Honors thereunto appertaining.
Given at San Diego, in the State of California, this thirty-first day of August,
in the Year of our Lord, two thousand and nineteen.

President

Gail F. Baker
Provost



UNIVERSITY OF SAN DIEGO
UNIVERSITY OF SAN DIEGO
AD 1949

DIVISION OF PROFESSIONAL AND CONTINUING EDUCATION

*hereby certifies that*

# John Paul Whitney

*has successfully completed the requirements of the*

*Certificate in*

## Law Enforcement Command

*November 11, 2018*

University of San Diego

PROFESSIONAL AND CONTINUING EDUCATION

Andy Drotos
Director

Exhibit D, 2

# Columbia Southern University

By Authority of the Board of Trustees and on recommendation of the Faculty hereby confers upon

## John Paul Whitney

the degree

## Master of Science

Criminal Justice Administration

With all rights, privileges and honors thereunto appertaining. In Testimony Whereof, we have affixed our signatures and the Seal of the University this twenty-fourth day of August, two thousand seven.

Robert Mayes, Jr.
President

Provost

# Union Institute & University

*Under the authority vested in them, the Trustees and Officers on the recommendation of the Faculty and in recognition of the satisfactory completion of the required course of study have conferred upon*

## John Paul Whitney

*the degree of*

## Bachelor of Arts

*with all rights and privileges appertaining thereto.*

*In witness thereof, they have caused this diploma to be issued over the signatures of the President and the Chairperson of the Board of Trustees and affixed thereto the University seal in the City of Cincinnati, Ohio, October 31, 2005.*

Cheryl M. Foley
Chairperson

Roger H. Sublett
President

# Solano Community College

The Governing Board of the Solano County Community College District
on the recommendation of the President of Solano Community College
has conferred upon

## John Paul Whitney

the Certificate of Achievement in

## Criminal Justice, Corrections

with all the rights and privileges thereto pertaining
Given this month of December, nineteen hundred ninety-five.

Douglas J. Ford
President of the Governing Board
Solano County Community College District

SOLANO
COMMUNITY COLLEGE

Superintendent - President of
Solano Community College

# Solano Community College

The Governing Board of the Solano County Community College District
on the recommendation of the President of Solano Community College
has conferred upon

John Paul Whitney

the Degree of

Associate in Science

Criminal Justice, Law Enforcement

with all the rights and privileges thereto pertaining
Given this month of May, nineteen hundred ninety-four.

Willie McKnight
President of the Governing Board
Solano County Community College District

SOLANO
COMMUNITY COLLEGE

Virginia L. Holten
Superintendent - President of
Solano Community College

# Solano Community College

The Governing Board of the Solano County Community College District
on the recommendation of the President of Solano Community College
has conferred upon

## John Paul Whitney

the Degree of

## Associate in Science

Criminal Justice, Corrections

with all the rights and privileges thereto pertaining

Given this month of December, nineteen hundred ninety-five.

President of the Governing Board
Solano County Community College District

SOLANO
COMMUNITY COLLEGE

Superintendent - President of
Solano Community College

# Solano Community College

The Governing Board of the Solano County Community College District
on the recommendation of the President of Solano Community College
has conferred upon

## John Paul Whitney

the Certificate of Achievement in

## Criminal Justice, Law Enforcement

with all the rights and privileges thereto pertaining

Given this month of May, nineteen hundred ninety-four.

Willie McKnight
President of the Governing Board
Solano County Community College District

SOLANO
COMMUNITY COLLEGE

Virginia L. Holten
Superintendent - President of
Solano Community College

Upon recommendation of the Faculty of

# Napa Valley College

Napa, California
and under authorization granted by the
Board of Governors of the California Community Colleges

a

## Certificate of Completion

in

LAW ENFORCEMENT

is hereby conferred upon

JOHN PAUL WHITNEY

with all Rights, Benefits and Privileges appertaining thereto in token of
the satisfactory completion of the program curriculum

December 9, 1994

Bruce M. Beckler

Coordinator

Diane E. Carey

President

# College Certificates



HARVARD Kennedy School
Executive Education

# John Whitney

HAS BEEN AWARDED THIS

**EXECUTIVE CERTIFICATE IN PUBLIC LEADERSHIP**

FOR SUCCESSFUL COMPLETION OF THREE
HARVARD KENNEDY SCHOOL
EXECUTIVE PROGRAMS

February 9, 2018

SENIOR ASSOCIATE DEAN FOR EXECUTIVE EDUCATION



VE RI TAS
HARVARD Kennedy School
Executive Education

This is to certify that

# John Whitney

has completed

**Leadership for the 21st Century: Chaos, Conflict, and Courage**

**September 13 – 18, 2015**

Hugh O'Doherty
Faculty Chair

Pía Igliori
Director



VE RI TAS
HARVARD Kennedy School
Executive Education

This is to certify that

*John Whitney*

has completed

**Leadership Decision Making:**
**Optimizing Organizational Performance**

**February 4 – 9, 2018**

Faculty Chair

Director

# Cornell University

This is to acknowledge that

## John Whitney

has completed the certificate program entitled

## Managing for Execution

This Fifteenth Day of February, 2016
through

Dean
School of Industrial and Labor Relations
Cornell University



VE RI TAS
HARVARD Kennedy School
Executive Education

This is to certify that

*John Whitney*

has completed

**Senior Executives in State & Local Government**

**June 5 – 23, 2017**

Faculty Chair

Director

# Cornell University

This is to certify that

**John Whitney**

has completed the certificate program in

**Executive Leadership**

This Thirteenth Day of December, 2015
through

Dean
School of Industrial and Labor Relations
Cornell University

Executive Director of Online Learning
School of Hotel Administration
Cornell University

# EXHIBIT E

PETE WILSON
GOVERNOR

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE

DANIEL E. LUNGREN
ATTORNEY GENERAL

*The*

# Commission on Peace Officer Standards and Training

*Hereby awards the*

## Basic Certificate

*to*

JOHN PAUL WHITNEY
Sheriff's Department
June 29, 1998

*For having fulfilled the requirements for character, education, training, and experience as prescribed in Title 11, Division 2 of the California Code of Regulations.*

CHAIRMAN

B 93054

EXECUTIVE DIRECTOR

GRAY DAVIS
GOVERNOR

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE

BILL LOCKYER
ATTORNEY GENERAL

*The*

# Commission on Peace Officer Standards and Training

*Hereby awards the*

## Intermediate Certificate

*to*

JOHN PAUL WHITNEY

October 17, 2000

*For having fulfilled the requirements for character, education, training, and experience as prescribed in Title 11, Division 2 of the California Code of Regulations.*

CHAIRMAN

EXECUTIVE DIRECTOR

I 69311

ARNOLD SCHWARZENEGGER
GOVERNOR

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE

BILL LOCKYER
ATTORNEY GENERAL

*The*
# Commission on Peace Officer Standards and Training

***Hereby awards the***

## Advanced Certificate

***to***

JOHN WHITNEY

October 24, 2005

*For having fulfilled the requirements for character, education, training, and experience as prescribed in Title 11, Division 2, of the California Code of Regulations.*

COLLENE CAMPBELL
CHAIR

KENNETH O'BRIEN
EXECUTIVE DIRECTOR

A 72056

ARNOLD SCHWARZENEGGER
GOVERNOR

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE

JERRY BROWN
ATTORNEY GENERAL

*The*

# Commission on Peace Officer Standards and Training

*Has awarded this*

## Supervisory Certificate

*to*

JOHN PAUL WHITNEY

VALLEJO POLICE DEPARTMENT

October 12, 2010

*who has satisfactorily completed the requirements for the award described in Title 11, Division 2, of the California Code of Regulations.*

Robert T. Doyle

ROBERT T. DOYLE
CHAIRMAN

PAUL CAPPITELLI
EXECUTIVE DIRECTOR

S 81005

EDMUND G. BROWN JR.
GOVERNOR

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE

KAMALA HARRIS
ATTORNEY GENERAL

# The Commission on Peace Officer Standards and Training

*Has awarded this*

## Management Certificate

*to*

JOHN PAUL WHITNEY

VALLEJO POLICE DEPARTMENT

November 20, 2014

*who has satisfactorily completed the requirements for the award described in Title 11, Division 2, of the California Code of Regulations.*

SANDRA HUTCHENS
CHAIRMAN

ROBERT A. STRESAK
EXECUTIVE DIRECTOR

M 28558



# EXHIBIT F

# Awards and Recognition

## 2018 Lifetime Achievement
Peace Officer Standards and Training - Excellence In Training
**Winner:** Captain John Whitney, Vallejo Police Department



During the course of his service to the city of Vallejo, Captain John Whitney has taken lead with respect to all aspects of training new officers, as well as those who have advanced in their careers. He's been an active training manager as well as an instructor with the Napa Valley College for years and has worked tirelessly to ensure quality training is available to members not only of his agency, but to the entire region.

From the nomination package it is clear that John's commitment to the profession and his chosen calling will leave a lasting legacy, reflecting his lifetime achievement in this profession and his resolve to serve others. It is this type of remarkable leadership, reinforced by a selfless dedication, not only to the profession, but to the men and women who serve the law enforcement mission, that paves the way for the future generations of law enforcement leaders.

Captain Whitney was presented this prestigious award in a ceremony at POST headquarters on May 30, 2019.





Nomination Form

# POST Excellence in Training Award

## Application for Nominees

Section 1 – Nominee
Section 2 – Nominator
Section 3 – Justification
Section 4 – Documentation

### Section 1. Nominee Information

| | | |
|---|---|---|
| 1. Award Category (select one only) | ☐ Individual ☒ Lifetime ☐ Organizational | |
| 2. Nominee | John Whitney | |
| 3. Title (if applicable) | Captain of Police | |
| 4. Agency/Organization (if applicable) | Vallejo Police Department | |
| 5. Mailing Address | Street | 111 Amador Street |
| | City | Vallejo |
| | State | CA |
| | Zip | 94590 |
| 6. Contact Numbers | Voice | [redacted] Ext |
| | Cell | [redacted] |
| | Fax | [redacted] |
| | Email | [redacted] |

### Section 2. Nominator Information

| | | |
|---|---|---|
| 7. Name | Ritzie Tolentino | |
| 8. Title | Officer | |
| 9. Agency/Organization | Vallejo Police Department | |
| 10. Mailing Address | Street | 111 Amador Street |
| | City | Vallejo |
| | State | CA |
| | Zip | 94590 |
| 11. Contact Numbers | Voice | [redacted] Ext |
| | Cell | [redacted] |
| | Fax | |
| | I | [redacted] |
| 12. Department Head/CEO | Name | Andrew J. Bidou |
| | Title | Chief of Police |
| 13. Signature | ▶ [signature] Executive Signature — Required | Date 10/27/18 |

**Complete all remaining sections. Attach additional pages if needed.**

Section 3 – Justification
Section 4 – Documentation
How to Submit

## POST Excellence in Training Award
## Application for Nominees

**Section 1 – Nominee** **Section 2 – Nominator** **Section 3 – Justification** **Section 4 – Documentation**

### Section 3. Justification for Nomination – REQUIRED

**14. Describe the individual's or organization's purpose and training responsibility.**

Captain Whitney has been the training manager of the Vallejo Police Department since 2011. He is responsible for advanced officer training and every aspect of the force option program. Since Captain Whitney took over the variety of training program throughout the department, the Vallejo Police Department has maintained 100% compliance with POST and regularly exceeds all mandated training.

**15. Describe the nominee's overall achievement.**

Captain Whitney began his career at the Solano County Sheriff's Office in 1996. By the late 90's he was a Field Training Officer and teaching bike patrol classes. He began his career at the Vallejo Police Department in 2000. By 2003, he was a Field Training Officer and was teaching regular classes to the members of the Vallejo Police Department Cadet Program.

In 2007, John was promoted to Sergeant and was given the assignment of FTO Sergeant. Under his supervision, the program expanded into a more proficient training program allowing the trainees to develop at a rate their speed, versus milestones, that if they were not reached, caused the trainee to be dropped from the program. In 2011, Captain Whitney was assigned the internal training (AOT) of the entire department, while still workings as a patrol Sergeant and FTO Sergeant.

In 2012, John was promoted to Lieutenant and functioned as the Field Training Program Administrator, Training Manager and still handling his many other duties. He wrote several manuals on the operation of the field training program, orientation of new officers, how FTOs conduct day-to-day training, updated the trainee manual and wrote a guidebook on the variety of training any officer could attend depending on what they wanted to do in their career. Captain Whitney constantly provides guidance to FTOs and mentored new instructors on the latest ideas on how to conduct adult learning. He has published several article on how and when to give feedback to new officers in training.

In 2015, Captain Whitney took over in the Investigations Bureau. Normally, training duties are handled by a Sergeant, but Captain Whitney continued to work as the Training Manager ensuring compliance with POST and providing the members of this department with the latest concepts and education in law enforcement.

Captain Whitney was hired as an instructor with Napa Valley College Police Academy in 2005. He has taught a variety of courses over the years in the Police and Dispatch Academy. He has also served as a train-the-trainer instructor for Chemical Agents, Field Training Officer and Report Writing Instructor. Captain Whitney has served as the Chair for the Police Academy Advisory Board since 2014 and still continues to teach. A majority of the officers working in the Napa/Solano region have been a student of Captain Whitney sometime during their careers.

Nomination Form: **POST Excellence in Training Award**
**Application for Nominees**

Here is a small sample of manual written by Captain Whitney during his career:;

Mentoring Program

Strategic Leadership Succession Plan

Supervisor Field Training Program

Supervisor Field Resource Guide

Field Training Manual - for the Trainees

A Guide for Being a Field Training Officer - for the FTOs

Field Training Orientation Manual

Training and Career Development

Captain Whitney holds two Associate of Science degrees, a Bachelor's degree, a Master's and certificates from several private university. He has completed command and executive level training courses throughout his career.

**Section 3. Justification for Nomination** *continued*

**16. Give explanations for each of the following three criteria to support your nomination.**

**a) Innovation**

Captain Whitney is innovated in how he leads and trains the Vallejo Police Department. He used data analytics to manage a Crime Reduction Team that was sent to specific areas based on criminal statistics. He has used POST videos, the POST Learning Portal and other forms of media to spice up the training the department goes to. He was instrumental in the purchase of the Virtra system. This is a 360 degree virtual reality training computer that allows the officers to make real time decision on using force.

Captain Whitney send his staff to course that may not particularly suited for law enforcement with the idea of gaining a different view on training. This has allowed the training staff to develop in ways other department may not.

# POST Excellence in Training Award

## Application for Nominees

**b) Impact**

Captain Whitney has not only impacted all of the members of the Vallejo Police Department, but the entire region. He was instrumental in starting a work group that is now the Napa Solano Regional Training Managers Association. He has opened the door of the Vallejo Police Department and allows other agencies to attend our training courses. He has hosted courses in liability, wellness and crisis intervention training, inviting the region to attend free of charge.

**c) Reputation/Recognition**

Captain Whitney reputation at the Vallejo Police Department and in the northern California region is beyond reproach. Known as a man who will help anyone on any project and never says no. He is always willing to listen to new ideas and supports all ranks of the Vallejo Police Department to accomplish their goals. Every agency in Solano and Napa County knows who Captain Whitney is. He is the type of man who will share anything he has and will lend a helping hand to get anyone where they need to go.

Members of the Vallejo Police Department have said if Captain Whitney ever leave to work for another agency, he will have a large following right behind him. He is just know in all aspects of law enforcement, from officers to dispatchers and from record clerks to crime scene investigators, throughout the region.

John is known as a man who will work well into the nights and weekends to accomplish anything for anyone if it will be helpful. He is a mentor to many members of the Vallejo Police Department and the person you go to for peer support, knowing, everything you share with him will never be repeated to a single person. If Captain Whitney ever leaves the profession of law enforcement at least the Vallejo Police Department can say he worked with us.

Captain Whitney is a member of a variety of civic board and community groups. It is often said he spends more waking hours working at the Vallejo Police Department then he does with his own family.

**Section 4. Support Documentation – REQUIRED**

**17. Provide a brief list of any supporting documents included with this application.**

Mentoring Program
Strategic Leadership Succession Plan
Supervisor Field Training Program
Supervisor Field Resource Guide
Field Training Manual - for the Trainees
A Guide for Being a Field Training Officer - for the FTOs
Field Training Orientation Manual
Training and Career Development
POST courses

Nomination Form: **POST Excellence in Training Award**

## Application for Nominees

To complete your application:

1) Make sure you have filled in all applicable sections.
2) Print and sign form.
3) Attach all supporting documents.
4) Send your completed application to:

**Excellence in Training Screening Committee**
**c/o California POST**
**Executive Office**
**860 Stillwater Road, Suite 100**
**West Sacramento, CA 95605**

Application questions: 916.227.2807 — Scott Loggins

©2017 State of California

## Captain John Whitney and Corporal Ritzie Tolentino Receive Recognition

On March 14, the **American Society for Industrial Security** (ASIS) held its 56th Law Enforcement Appreciation Day in Fremont. Members of Bay Area law enforcement agencies were honored during this event, including Vallejo Police Department's Captain John Whitney and Corporal Ritzie Tolentino.

**Captain John Whitney received the Lifetime Achievement Award**

Captain Whitney has spent his entire career dedicated to public service. He is a servant leader who cares about the employees under his command and the citizens he serves. John spends more waking hours serving the city of Vallejo than at home with his family. During the presentation, Captain Whitney was described as educated, professional and an ethical public servant who spends a good amount of his free time working with the future of law enforcement at the Napa Valley College Police Academy.

**Corporal Ritzie Tolentino received the 2019 Heroism Award**

On August 29, 2018, a distraught man was standing on the Redwood Street overpass on the outside of the fence threatening to jump. Corporal Tolentino arrived on scene and began speaking with the individual. The subject was distraught over a personal issue and wanted to commit suicide in front of his family. After two hours, Corporal Tolentino successfully negotiated the gentleman to climb down.

56TH ANNUAL
LAW ENFORCEMENT
APPRECIATION DAY
LEAD
March 14th
11 am - 2 pm
Fremont Marriott
POLICE OFFICER

# *Certificate of Special Congressional Recognition*

Presented to

# LIEUTENANT JOHN WHITNEY

In recognition of your being awarded the Medal of Merit for Outstanding dedication and contribution to Operation safe-net

***Given on this 30th day of April, 2015.***

THE HON. MIKE THOMPSON
CALIFORNIA'S FIFTH DISTRICT
UNITED STATES CONGRESS



# VALLEJO POLICE DEPARTMENT

THIS IS TO CERTIFY THAT
THE VALLEJO POLICE DEPARTMENT
HAS AWARDED

**THE GOOD CONDUCT MEDAL**

TO

*Captain John Whitney*

FOR

AN OUTSTANDING JOB PERFORMANCE FOR THREE CONSECUTIVE YEARS OF SERVICE

ANDREW J. BIDOU
Chief of Police

DATE: 27 APR 17



# THE VALLEJO POLICE DEPARTMENT

THIS IS TO CERTIFY THAT
THE VALLEJO POLICE DEPARTMENT
HAS AWARDED

**THE MEDAL OF MERIT**

TO

***Lieutenant John Whitney***

FOR

OUSTANDING DEDICATION AND CONTRIBUTION TO THE VALLEJO POLICE DEPARTMENT'S OPERATION SAFE-NET

ANDREW J. BIDOU
Chief of Police

DATE: 30 APR 15

MEDAL OF MERIT
THE GREAT SEAL OF THE STATE OF CALIFORNIA
VALLEJO POLICE

# THE VALLEJO POLICE DEPARTMENT

THIS IS TO CERTIFY THAT
THE VALLEJO POLICE DEPARTMENT
HAS AWARDED

**THE MEDAL OF MERIT**

TO

***Lieutenant John Whitney***

FOR

OUSTANDING MANAGEMENT OF THE FIELD TRAINING PROGRAM IN 2013

JOSEPH M. KREINS
Chief of Police

DATE: 29 MAY 14



# VALLEJO POLICE DEPARTMENT

THIS IS TO CERTIFY THAT
THE VALLEJO POLICE DEPARTMENT
HAS AWARDED

## THE MEDAL OF MERIT

TO

***Lieutenant John Whitney***

FOR

OUSTANDING DEDICATION AND CONTRIBUTION TO THE VALLEJO POLICE DEPARTMENT
SWAT TEAM – 10 YEARS

JOSEPH M. KREINS
Chief of Police

DATE: 29 MAY 14



# VALLEJO POLICE DEPARTMENT

THIS IS TO CERTIFY THAT
THE VALLEJO POLICE DEPARTMENT
HAS AWARDED

**THE GOOD CONDUCT MEDAL**

TO

***Lieutenant John Whitney***

FOR
OUTSTANDING JOB PERFORMANCE
FOR THREE CONSECUTIVE YEARS OF SERVICE

JOSEPH M. KREINS
Chief of Police

DATE: 29 MAY 14



# THE VALLEJO POLICE DEPARTMENT

THIS IS TO CERTIFY THAT
THE VALLEJO POLICE DEPARTMENT
HAS AWARDED

**MEDAL OF COURAGE**

TO

*Sergeant John Whitney*

FOR

EXEMPLARY COURAGE AND BRAVERY DISPLAYED ON JULY 7, 2007 IN THE SINGLE-HANDED APPREHENSION OF SEVERAL ARMED AND DANGEROUS SUSPECTS AS THEY FLED IN THEIR VEHICLE.

ROBERT W. NICHELINI
Chief of Police

DATE: April 24, 2008



# THE VALLEJO POLICE DEPARTMENT

THIS IS TO CERTIFY THAT
THE VALLEJO POLICE DEPARTMENT
HAS AWARDED

**THE GOOD CONDUCT MEDAL**

TO

*Sergeant John Whitney*

FOR
AN OUTSTANDING JOB PERFORMANCE
FOR THREE CONSECUTIVE YEARS OF SERVICE

ROBERT W. NICHELINI
Chief of Police

DATE: April 24, 2008

# THE VALLEJO POLICE DEPARTMENT

THIS IS TO CERTIFY THAT
THE VALLEJO POLICE DEPARTMENT
HAS AWARDED

**THE MEDAL OF MERIT**

TO

***Sergeant John Whitney***

FOR

Outstanding dedication and contributions to the Vallejo Police Department's SWAT Team

ROBERT W. NICHELINI
Chief of Police

DATE: 13 JUN 12



# VALLEJO POLICE DEPARTMENT

THIS IS TO CERTIFY THAT
THE VALLEJO POLICE DEPARTMENT
HAS AWARDED

**THE GOOD CONDUCT MEDAL**



TO

*Officer John Whitney*

FOR

OUTSTANDING JOB PERFORMANCE FOR THREE CONSECUTIVE YEARS OF SERVICE

ROBERT W. NICHELINI
Chief of Police

DATE: 4 NOV 10

# The 10851 Award

## The California Highway Patrol

in cooperation with

proudly recognizes

# John Whitney

for superior efforts in

**VEHICLE THEFT RECOVERY**

California Highway Patrol

1st

AAA

# Police department honors staff

By ANDREA WOLF
Times-Herald staff writer

Vallejo Police Officer Scott Yates said he's the ...d of guy who comes to ...rk, does the best he can, ...en goes home to spend ...e with his family.

He and his K-9 partner, ...sso, work the graveyard ...ekend shift together, a ... he says isn't glamorous ...t is still rewarding.

Yates' willingness to do ...at is best for the depart...nt was one of many rea...s he was named Vallejo ...lice Department's Officer ...he Year at the annual ...ards luncheon Thursday.

"Officer Yates is a veter... of the department and ...ld be taking it easy on ... day shift, but he volun...rs to work nights and ...ekends and is always on ...nt chasing suspects and ...rehending them," police ...kesman Sgt. Vic ...ssenkoff said.

Vallejo Police Chief ...ert Nichelini said Yates ... chosen for being a ...der respected both by ... peers and supervisors.

Yates said he went into ...ice work after serving in ... Air Force, and working ... his K-9 partner keeps ... motivated.

"I enjoy the camaraderie of my fellow employees and having opportunities to actually help people, but working with the dogs has been the best part of this job," Yates said.

**Flater:** Civilian of the year

Yates' wife, Nicole, also works for the police department and was recognized last week for her work in the emergency dispatch center.

Along with Yates, several other Vallejo Police Department members were honored Thursday for going above the call of duty.

Nichelini commended his department for continuing to work hard, arrest suspects and solve homicides despite the difficult struggles they are going through with budget cuts.

Sgt. John Whitney was awarded the Medal of Courage for his bravery and quick thinking during a pursuit of armed suspects last year.

Several suspects who had been involved in an attempted homicide were trying to flee on Interstate 80 when Whitney spotted them, rammed them head-on with his patrol car, and was able to hold them at gunpoint until more officers could arrive.

**Whitney:** Awarded Medal of Courage

"The Medal of Courage is rarely given out, but Sgt. Whitney earned it that day by reacting before the armed suspects got on the freeway and endangered citizens," Massenkoff said.

Vallejo police named Craige Flater as Civilian of the Year for his work in the Internal Affairs division.

Flater joined the police department in 2001 after a long career in the hospitality and service industry. He said he was drawn to law enforcement because his father was a member of the Royal Canadian Mounted Police.

When a police clerk position opened in Vallejo, Flater jumped at the chance to combine his customer service skills with law enforcement and at the same time serve his city.

Flater is often the first point of contact for citizens with complaints against the police department.

"I've learned it is important to treat everybody fairly and the same," Flater said. "Very often people just need to have someone listen to them and then we can figure out how best to address their issue."

Massenkoff, who supervises Flater in Internal Affairs, said he epitomizes integrity, honesty, fairness and objectivity.

"These skills are critical to this line of work since he is constantly handling sensitive, confidential matters," Massenkoff said.

Officer Ron Braxton was awarded a Lifesaving Medal for alerting fire crews to a blaze in the Good Day Café last year and assisting in what turned out to be a five-alarm fire.

**VALLEJO POLICE** ... an of the police de... Nicole Yates, was ...

Nichelini also c... ed Braxton for his ... efforts in arresting ... drivers, a task Bra... taken on as a perso... sion. So far this yea... ton alone has made ... arrests.

Nichelini also w...

...CAL BRIEFS

## ...ice arrest man after ...sh, foot pursuit

...ith help from Solano ...nty Sheriff's ...uties, Vallejo police ...ested a San Rafael ... who crashed his car ... then eluded officers ...oot, police said.

...allejo Crime Sup...ssion Unit officers got ... a pursuit with the ...ect near Magazine ... Pine streets around ... p.m. Wednesday ...ing, police said.

...e driver, 24-year-old ... foot, police said.

Police lost sight of him and alerted local agencies to be on the lookout.

Solano County deputies spotted Cosby a short time later near Beverly Drive and Hollywood Avenue and he tried to run from officers again, police said.

He was eventually stunned with a Taser gun and arrested and police suspected he had been driving under the influence, police reported.

...field police arrested a 22-year-old man today on suspicion of brandishing a weapon during a road rage incident Thursday night.

Charles George Silva was arrested early this morning at his girlfriend's apartment in the 1300 block of Phoenix Drive, Sgt. Darrin Moody said.

He was booked into the Solano County Jail for driving under the influence, evading police, driving on a sus...

## MISSING ...

A ... A ... V ... H ... E ... L ... H ... V ...

**Please call: VPD (7...**

# EXHIBIT G

# CITY OF VALLEJO CHARTER

EFFECTIVE: JUNE 8, 2010

**Assembly Concurrent Resolution No. 197**

---

Adopted in Assembly August 7, 1970

James D. Driscoll
*Chief Clerk of the Assembly*

---

Adopted in Senate August 11,1970

Darryl R. White
*Secretary of the Senate*

---

This resolution was received by the Secretary of State this 14th day of August, 1970, at 11 o'clock a.m.

H.P. Sullivan
*Secretary of State*

RESOLUTION CHAPTER 183

*Assembly Concurrent Resolution No. 197 - Approving the adoption of the Charter of the City of Vallejo, County of Solano, State of California, ratified by the qualified electors of the city at a general election held therein on the second day of June, 1970.*

Whereas, Proceedings have been taken and had for the proposal, adoption, and ratification of a charter for the City of Vallejo, a municipal corporation in the County of Solano, State of California, as hereinafter set forth in the certificate of the mayor and city clerk of the city, as follows:

Certificate of Mayor and City Clerk of the City of Vallejo County of Solano, State of California

State of California )
County of Solano )

We, the undersigned, Florence E. Douglas, Mayor of the City of Vallejo, and Helen G. Seeber, City Clerk of the City of Vallejo, do hereby certify and declare as follows:

That the City of Vallejo, a municipal corporation of the County of Solano, State of California, now is and was at all times herein referred to a city containing a population of more than three thousand five hundred (3,500) inhabitants, as ascertained by the last preceding census taken under the authority of the Congress of the United States or the Legislature of the State of California; and

That a general municipal election duly held in said city on the 1st day of April, 1969, under and in accordance with law and the provisions of Section 8 of Article XI of the Constitution of the State of California, a board of fifteen (15) freeholders, duly qualified, was elected in and by said city by the qualified electors thereof to prepare and propose a new charter for the government of said city; and

That said board of freeholders did prepare and propose a charter, and an alternative and separate proposition relating thereto, for the government of said City of Vallejo; and

That said charter, and alternative proposition No. 2 and separate proposition No. 3, were signed by a majority of the board of freeholders on the 4th day of March, 1970, and filed with the City Clerk of said City of Vallejo on the 5th day of March, 1970; and

That said proposed charter, including said alternative and separate propositions relating thereto, was thereafter published in the Vallejo Morning Times-Herald, the official newspaper of said City of Vallejo, said newspaper being of general circulation in said City of Vallejo, and the said charter, including said alternative and separate propositions relating thereto, being published as aforesaid for a period of one (1) day, on the 18th day of March, 1970, the date of publication thereof being made within fifteen (15) days after the filing thereof; and

That said board of freeholders, prior to the filing of said proposed charter and alternative and separate propositions, designated the 2nd day of June, 1970, as the date for submission of said proposed charter and alternative and separate propositions to the electors of said city; and

That the City Council of the City of Vallejo, being the legislative body of said city, pursuant to Section 8 of Article XI of the Constitution of the State of California, duly passed and adopted on the 16th day of March, 1970, its Resolution No.70-202 N.C., calling a special municipal charter election in the City of Vallejo on the 2nd day of June, 1970, for the purpose of submitting said proposed charter, including alternative and separate propositions relating thereto, to the electors of said city, and consolidating said special municipal charter election with the State of California Direct Primary Election to be held on June 2,1970;

That by resolution duly adopted on the 31st day of March, 1970, the Board of Supervisors of the County of Solano ordered consolidation of said special municipal charter election with said Direct Primary Election;

That copies of said proposed charter, including alternative and separate propositions relating thereto, were printed in convenient pamphlet form and in the manner prescribed in Section 8 of Article XI of the Constitution of the State of California, and copies thereof were mailed to each of the qualified electors of said city;

That said legislative body of the City of Vallejo did until the day fixed for the election upon such proposed charter and alternative and separate propositions advertise in said Vallejo Morning Times-Herald a notice that copies thereof might be had upon application therefor;

That said special municipal charter election was duly called, held and conducted in the time, form and manner required by law on said 2nd day of June, 1970, being the date of the general election next following the expiration of sixty days after completion of the publication of said proposed charter, including the alternative and separate propositions relating thereto;

That a majority of the qualified voters on said proposed charter, identified on the printed election ballots as Measure E, voted in favor of the ratification of and did ratify said proposed charter;

That a majority of the qualified voters voting on said alternative proposition No. 2, identified on the printed election ballots as Measure F, voted against the ratification of said alternative proposition No. 2 failed to pass.

That a majority of the qualified voters voting on said separate proposition No. 3, identified on the printed election ballots as Measure G, voted in favor of the ratification of and did ratify said separate proposition No. 3, adding Section 810 to Article VIII of said proposed new Charter.

That the County Clerk of the County of Solano conducted, and on June 23, 1970, officially completed the canvass of all ballots cast at said Consolidated Direct Primary Election and said special municipal charter election consolidated therewith as aforesaid; and that the Board of Supervisors of said County of Solano met on June 23, 1970, at its usual place of meeting and officially approved said canvass of said elections as conducted, completed and presented to said Board of Supervisors by said County Clerk, and said County Clerk on the 1st day of July, 1970, certified the results of said special charter election to the City Council of the City of Vallejo;

That said City Council of the City of Vallejo, in accordance with law and pursuant to said Resolution No. 70-202 N.C., calling said special municipal charter election, did meet on Monday, the 6th day of July, 1970, at its usual place of meeting, and did duly and regularly cause to be spread on its minutes a statement of the results of said special municipal charter election as ascertained by said canvass;

That said charter, including said separate proposition No. 3, adding Section 810 to Article VIII thereof, and being a part thereof, so ratified by the majority of the qualified voters of said city voting at said special municipal charter election, is in the words and figures following, to-wit:

## THE CHARTER OF THE CITY OF VALLEJO

We, the people, of the City of Vallejo, State of California, do ordain and establish this Charter as the fundamental law of said City under the Constitution of said State.

## Article I
## Incorporation: Succession: Form of Government

**Section 100 Name.**

The municipal corporation now existing and known as the City of Vallejo shall remain and continue to exist a body politic and corporate, in fact and in law, by the name of City of Vallejo, and by such name shall have perpetual succession.

**Section 101 Boundaries.**

The boundaries of the City of Vallejo existing at the time this Charter takes effect shall continue as the boundaries of said City until changed in the manner authorized by law.

**Section 102 Rights and Liabilities.**

The City shall continue to own, hold, possess, use, control and in every way succeed to and become the owner of rights and of property of every kind and nature now owned, controlled, possessed or claimed by it and shall be subject to all of its debts, obligations, liabilities and contracts.

**Section 103 Continuance of Laws.**

All lawful ordinances, resolution, rules and regulations or portions thereof now in force and not in conflict or inconsistent herewith are continued in force until they have been duly repealed or amended.

**Section 104 Continuance of Officers and Employees.**

All officers and employees of the City now serving shall continue in their offices or employments until removed or replaced in the manner provided by authority of this Charter.

**Section 105 Transfer of Records and Property.**

The transfer of any function from one department to another by this Charter or by any lawful ordinance or administrative authority, also authorizes the corresponding transfer of all necessary records, property and equipment necessary to such functions.

**Section 106 Form of Government.**

The government provided by this Charter shall be known as the "Council-Manager" form of government.

## Article II
## Powers of the City

**Section 200 Powers.**

The City shall have the right and power to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this Charter and the Constitution of the State of California. It shall also have the power to exercise any and all rights, powers and privileges heretofore or hereafter established, granted or prescribed by the general laws of the State.

The enumeration in this Charter of any particular power shall not be held to be exclusive of or any limitation upon this general grant of power.

**Section 201 Procedures.**

The City shall have the power to act pursuant to procedure established by any law of the State unless a different procedure is required by this Chapter.

**Section 202 Intergovernmental Relations.**

The City may exercise any of its powers or perform any of its functions jointly, or in cooperation, by contract or otherwise, with any one or more cities, counties, states, or civil divisions or agencies thereof, or the United States or any agency thereof.

## Article III
## Mayor and Council

**Section 300 Elective Offices.**

The elective officers of the City shall be the Mayor and six Councilmembers. (Amendment adopted by electors of the city, 11/7/00.)

**Section 301 Qualifications.**

No person shall be eligible to or continue to hold any elective office of the City, either by election or appointment, unless he/she is an elector thereof or of territory lawfully annexed thereto for at least thirty (30) days next preceding the last day for filing of nomination papers as fixed by applicable State law, or an equivalent number of days prior to his/her appointment. The residency requirement provided herein shall apply with equal force to write-in candidates. (Amendment adopted by the electors of the city, 3/8/77: amendment adopted by the electors of the city, 4/17/73: amendment adopted by the electors of the city, 11/7/00.)

**Section 302 Term of Office.**

Each elective officer shall hold office for a term of four (4) years from and after 7:00 p.m. of the first Tuesday in December next succeeding the general municipal election at which he/she was elected, and until his/her successor is elected and qualified. (Amendment adopted by the electors of the city, 11/6/79: amendment adopted by the electors of the city, 3/8/77: amendment adopted by the electors of the city, 6/4/74: amendment adopted by the electors of the city, 11/7/89: amendment adopted by the electors of the city, 11/7/00.)

**Section 302.1 Limitation of Terms of Office.**

No elective officer of the City may hold office for more than two consecutive four-year terms as either Mayor or Councilmember, nor serve in both offices of Mayor and Councilmember for longer than three consecutive four year terms. No person who has held an elective office, or acted as an elected officer for more than two years of a term to which some other person was elected shall be elected to an elective office more than two consecutive subsequent terms. Any person who has served the maximum number of terms as set forth in this Section shall not serve again until at least two years have passed since his/her last date of holding office. (Added by the electors of the city, 3/8/77: amendment adopted by the electors of the city, 11/7/00.)

**Section 303 Vacancies, Filling of.**

Any vacancy occurring in the office of Councilmember during an elected term of office (due to resignation, disqualification, inability to serve or death) shall be filled first by the unsuccessful candidate from the most recent general election receiving the next highest number of votes still remaining on the list of eligibles if the person is available, accepts and is qualified to serve. If no one on the list of eligibles is available, accepts or is ruled unqualified to serve, the Council, by majority vote of the remaining members, shall appoint a qualified person to fill the vacancy. Any such appointee shall hold office until 7:00 p.m. on the first Tuesday in December next succeeding the date of the next general municipal election and until his/her successor qualifies. At the next general municipal election following any vacancy, a successor shall be elected to serve the remainder of the unexpired term. Whenever a vacancy exists in the office of Mayor during an elected term of office (due to resignation, disqualification, inability to serve or death), the vacancy shall be filled by the Vice-Mayor. The Vice-Mayor shall serve a term limited by the existing procedures now

being utilized by the Council to elect a Vice-Mayor. At the next general or "special" municipal election following any vacancy, a successor shall be elected to serve the remainder of the unexpired term. (Amendment adopted by electors of the city, 11/6/79: amendment adopted by the electors of the city, 3/8/77: amendment adopted by the electors of the city, 6/4/74: amendment adopted by the electors of the city, 11/7/89; amendment adopted by the electors of the city, 11/7/00.)

**Section 304 Vacancy, What Constitutes.**

An elective office shall be declared vacant by the Council when the person elected or appointed thereto fails to qualify within fifteen days after his/her certificate of election or appointment has been received, dies, resigns, ceases to be a resident of the City, is absent continuously from the City for a period of more than thirty days without permission from the Council, misses three consecutive regular meetings of the Council without permission from the Council, is convicted of a felony, is judicially determined to be incompetent, forfeits the office under any provision of this Charter, or is removed from office by judicial procedure. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 305 Compensation.**

The Mayor and each Councilmember shall receive the compensation heretofore fixed by Charter until changed by Charter amendment or ordinance. Such compensation fixed by ordinance shall not exceed the amount which the City Council of a general law city, of comparable population, can prescribe under the provisions of State law. In addition, the Mayor and each Councilmember shall receive reimbursement for itemized routine and ordinary expenses incurred in official duty or such reasonable and adequate, as identified in the city's Administrative Rules, in an amount as may be established by ordinance, which amount shall be deemed to be reimbursement to them of routine and ordinary expenses imposed upon them by virtue of their office. (Amendment adopted by the electors of the city, 11/7/89: amendment adopted by the electors of the city, 11/7/00.)

**Section 306 Mayor's Allowance.**

In addition, the Mayor shall receive for use in the discharge of the duties and obligations of the office, an allowance to be fixed by ordinance, payable in equal monthly installments, for which vouchers need not be furnished. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 307 Council.**

The Council shall be composed of the Mayor and six Councilmembers. The Council shall be the governing body of the City. All powers of the City shall be vested in the Council except as otherwise provided by law or in this Charter. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 308 Meetings of the Council.**

At 7:00 p.m. on the first meeting in December following each regular municipal election, the Council shall meet at the established Council meeting place, at which time and place the newly elected Members of Council shall assume the duties of their office. Thereafter, the Council shall meet at least forty (40) times before the next meeting in December following and the Council shall meet at least two (2) times each month. A schedule of regular meetings shall be adopted at the first meeting in December each year for a period of two (2) years hence. Special meetings may be held at the regular place of meeting, either on the call of the Mayor, or on the request of three Members of Council upon twenty-four (24) hours' written notice to each member of the Council. Such notice shall be personally served or left at a place which shall be designated by each Member of Council, provided, however, that such notice may be waived by the written consent of all the members of the Council. Regular meetings may be held at places other than the regular meeting place only in an emergency in which the regular meeting place is untenable, or upon the posting of a public notice at the regular meeting place that the Council is hereby meeting elsewhere, to be designated on the notice, for some purpose of public convenience. Special meetings may be held at locations in the City other than the regular meeting place as determined appropriate by the Council and specified in the notice calling for the special meeting. All regular or special sessions of the Council shall be open to the public, except for executive sessions permitted by law. (Amendment adopted by the electors 11/6/79: amendment adopted by the electors of the city, 3/8/77: amendment adopted by the electors of the city, 6/4/74: amendment adopted by the electors of the city, 11/7/89: amendment adopted by the electors of the city, 11/7/00.)

**Section 309 Quorum.**

A majority of the Council shall constitute a quorum for the transaction of business, but a less number may adjourn from time to time.

**Section 310 Council Action.**

The Council shall provide by ordinance for the order of business and rules of procedure for the conduct of Council meetings. The Council shall act by ordinance, resolution, or motion. The "Ayes" and Noes" shall be taken on the passage of all ordinances and resolutions, and entered upon the journal of proceedings of the Council. Each proposed ordinance or resolution shall be introduced in written or printed form. Except as otherwise provided by this Charter or by general law, the vote of the majority of the members of the Council shall be necessary to adopt any ordinance, resolution, or motion.

**Section 311 Enactment of Ordinances.**

In addition to such acts of the Council as are required by statute or by this Charter to be by ordinance, every act of the Council establishing a penalty or granting a franchise shall be by ordinance. The enacting clause of all ordinances shall be: "The Council of the City of Vallejo does ordain as follows:"

**Section 312 Adoption of Ordinances and Resolutions.**

Except for emergency ordinances, no ordinance shall be adopted by the Council on the day of its introduction, nor within five days thereafter, nor except at a regular or adjourned regular meeting. At the time of adoption of an ordinance or resolution, it shall be read in full unless copies have been available to the public before or during the meeting at which the ordinance or resolution is under consideration, or unless after the reading of its title the further reading thereof is waived by unanimous consent. If an ordinance is altered after its introduction (except for the correction of typographical or clerical errors) it shall not be adopted except at a regular or adjourned regular meeting held not less than five days after the date of such alteration. Any ordinance declared by the Council to be necessary as an emergency measure for preserving the public peace, health or safety and containing a statement of the reasons for its urgency may be introduced and adopted at the same meeting if passed by at least five affirmative votes. Emergency appropriations to meet a pressing need for public expenditure, for other than a regular or recurring requirements, to protect the public health, safety or welfare may be made as an emergency ordinance.

**Section 313 Amendment of Ordinances.**

Any section or subsection of an ordinance may be amended solely by the re-enactment of such section or subsection at length, as amended.

**Section 314 Publication.**

All ordinances and amendments to ordinances shall be published in the manner required by this Charter.

**Section 315 Codification.**

The duly adopted and effective ordinances of the City may be compiled and arranged as a comprehensive ordinance code, which may be adopted by reference by the passage of an ordinance for such purpose. Such code need not be published as required for other ordinances, but not less than three copies thereof shall be available for examination by the public prior to the adoption thereof. Subsequent amendments to the code shall be by ordinance. Detailed regulations pertaining to any subject such as the construction of buildings, plumbing, wiring or other subjects which require extensive regulations, maps, or exhibits, after having been arranged as a comprehensive code, may likewise be adopted by reference in the manner hereinabove provided.

**Section 316 Effective Date of Ordinances.**

No ordinance adopted by the Council shall become effective until 30 days from and after the date of its adoption, except the following, which shall take effect upon adoption or upon a date specified therein:

(a) An ordinance calling or otherwise relating to an election;
(b) An improvement proceeding ordinance adopted under some law or procedural ordinance;
(c) An ordinance declaring the amount of money necessary to be raised by taxation, fixing the rate of taxation, levying the annual tax upon property or making an appropriation for the usual current expenses and outlays of the City;
(d) An emergency ordinance adopted in the manner provided in this Charter; and
(e) An ordinance annexing areas to the City.

**Section 317 Penalty for Violation of Ordinances.**

The Council may make the violation of its ordinances a misdemeanor which may be prosecuted in the name of the people of the State of California or may be redressed by civil action.

**Section 318 Powers and Duties of the Mayor.**

The Mayor shall preside at meetings of the Council, shall have a vote in all matters before the Council, and shall be recognized as the head of the City government for all ceremonial purposes.

**Section 319 The Vice-Mayor.**

At its first meeting in December of each year, the Council shall elect from amongst its members a Vice-Mayor who shall serve for a term of one year and until a successor is elected by the Council. In addition to the regular duties as a Member of Council, the Vice-Mayor shall perform the duties of the Mayor during the Mayor's absence or disability, and may perform at any time any duty of the office of the Mayor as may be delegated by the Mayor. (Amendment adopted by the electors of the city, 11/6/79: amendment adopted by the electors of the city, 3/8/77: amendment adopted by the electors of the city, 6/4/74: amendment adopted by the electors of the city, 11/7/00.)

## Article IV
## Officers Appointed by the Council

**Section 400 City Manager.**

There is hereby created the office of City Manager, who shall be the chief executive and administrative officer of the City. He/She shall be appointed by resolution approved by at least a majority of all the members of the Council solely on the basis of proven executive and administrative qualifications. He/She must be a citizen of the United States, need not when appointed be a resident of the City or State, but shall become a resident of the City within 90 days after the appointment, and remain a resident during his/her tenure. No member of the Council shall be eligible for appointment as City Manager or acting City Manager during the term for which he/she was elected or for one year thereafter. The City Manager shall have the duties and powers prescribed by this Charter or by ordinance. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 401 City Attorney.**

There shall be a City Attorney, appointed by the Council, who shall serve as legal advisor to the Council, the City Manager, and all City departments, offices and agencies, shall represent the City in legal proceedings, and shall perform other duties as directed by the Council. He/She shall have been at the time of his/her appointment admitted to practice and engaged in the practice of law in the State of California. The Council may appoint, or empower the City Attorney, at his/her request to employ, without regard to civil service provisions, special legal counsel, appraisers, engineers, and other technical and expert services necessary for the handling of any pending or proposed litigation, proceeding, or other legal matter. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 402 Boards and Commissions.**

The Council may create by ordinance such boards and commissions as may be required for the proper operation of any function or agency of the City, and prescribe their duties and powers, terms, compensation and reimbursement for expenses, if any, subject to the provisions of this Article. Such boards may be advisory, policy, appellate and/or rule making. Members of boards and commissions shall be appointed by the Council. Vacancies shall be filled for the unexpired terms in the same manner as original appointments are made.

**Section 403 Advisory Boards.**

The Council may create an advisory board for any department or function in which it finds greater citizen participation to be of particular mutual interest to the City government and to the people. Such advisory boards may by ordinance be empowered to advise the Council, the City Manager and the department head on matters of policy and public interest related to the department or function concerned, to investigate and make advisory reports on such matters to appropriate authorities, and to render such other specific services as are consistent with the role of an advisory board.

**Section 404 Policy Boards or Commissions.**

The Council may create policy boards or commissions to assist in the operation of any function or service of the City which is supported in whole or in part by the revenue derived from its operations or which requires the long range investment and management of funds. Such policy board or commission may be authorized to prescribe regulations governing the operation of the function or service; to prescribe rates and conditions for rendering service; to adopt an operating budget; to develop and approve long range capital plans for the acquisition, improvement and extension of properties; and to arrange for the financing thereof in accordance with applicable law.

**Section 405 Rule Making and/or Appellate Boards.**

The Council may create boards and commissions empowered to adopt rules to govern the operations of any City department or function, or to hear appeals from actions taken under such rules or the laws governing the operation of such department or function. Rules and amendments thereto made by such a board or commission shall be effective only on approval by the City Council. The Council may not on its own motion amend such rules, but shall return those it disapproves with a statement of the reasons therefor for further consideration by the board or commission. Decisions by any such board or commission on matters in its jurisdiction, in which it has appellate authority, shall have the force and effect prescribed by this Charter, by ordinance, or by applicable general law.

**Section 406 Composition and Terms.**

Each board or commission shall be composed of not less than five members. The members of boards and commissions holding office at the time this Section takes effect shall continue to hold office for the terms to which they were appointed or until the board or commission is abolished or modified under the authority of this Article. An ordinance creating a policy or rule making or appellate board or commission shall provide for a system of overlapping terms to assure continuity of plans and policy.

**Section 407 Removal of Appointive Personnel.**

a. The affirmative vote of at least five members of the Council shall be required to remove any member of a board or commission serving a fixed term.

b. The affirmative vote of at least a majority of all the members of the Council shall be required to remove the City Manager or the City Attorney except as provided in subsection (c) of this Section.

c. The affirmative vote of at least five members of the Council shall be required to remove the City Manager or the City Attorney within 60 days after their initial appointment or within 60 days after any election at which members are elected to the City Council.

d. Before the City Manager may be finally removed, he/she may file with the Council a written request for a public hearing. This hearing shall be held at a Council meeting not earlier than 15 days nor later than 30 days after the request is filed. The City Manager may file a written reply with the Council not later than five days before the hearing.

(Amendment adopted by the electors of the city, 11/7/00.)

**Section 408 Acting City Manager.**

By letter filed with the City Clerk, the City Manager shall designate (if this classification or position exists and the Manager desires), and subject to approval of the Council, the Assistant City Manager to exercise the powers and perform the duties of the City Manager during his/her temporary absence or disability. The Council may revoke such designation at any time and appoint another officer of the City to serve until the City Manager shall return or his/her disability shall cease; provided, however, that the Council shall designate an acting City Manager pending a new appointment whenever the position is vacant for any other cause. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 409 Conferring Additional Duties.**

The imposing of duties on a particular office by this Charter shall not limit the right of the Council to confer on any officer, board or commision such additional powers as it may find necessary and consistent with the purpose of such officer, board or commission.

## Article V
## City Manager

**Section 500 Powers and Duties of City Manager.**

The City Manager shall be the chief administrative officer of the City. He/She shall be responsible to the Council for the administration of all City affairs placed in his/her charge by or under this Charter or by ordinance not contrary to this Charter. He/She shall have the following powers and duties:

a. He/She shall appoint, and when he/she deems it necessary for the good of the service, suspend or remove all City employees and appointive administrative officers provided for by or under this Charter, except as otherwise provided by law or this Charter. He/She may authorize any administrative officer who is subject to his/her direction and supervision to exercise these powers with respect to subordinates in that officer's department, office or agency.

b. He/She shall direct and supervise the administration of all departments, offices and agencies of the City, except as otherwise provided by this Charter or by law.

c. He/She shall attend all Council meetings unless excused due to temporary absence or disability. In the event of such absence or disability, a designated representative shall attend the Council meetings on the City Manager's behalf. The City Manager or designated representative shall have the right to take part in discussion, but may not vote.

d. He/She shall see that all laws, provisions of this Charter, and acts of the Council, subject to enforcement by him/her or by officers subject to his/her direction and supervision, are faithfully executed.

e. He/She shall prepare and submit the annual budget and capital program to the Council.

f. He/She shall submit to the Council and make available to the public a complete report on finances and administrative activities of the City as of the end of the fiscal year.

g. He/She shall make such other reports as the Council may require concerning the operations of City departments, offices and agencies subject to his/her direction and supervision.

h. He/She shall keep the Council fully advised as to the financial condition and future needs of the City and make such recommendations to the Council concerning the affairs of the City as he/she deems advisable.

i. He/She shall investigate the operations of the departments and other agencies of the City and all contracts to which the City is a party, and assure proper performance.

j. He/She shall investigate complaints concerning utility operations and see that all permits, privileges and franchises granted by the City are faithfully performed.

k. When directed by the City Council, he/she shall represent the City in its inter-governmental relations, and negotiate contracts for joint governmental actions, subject to Council approval.

l. He/She shall perform such other duties as are specified in this Charter or may be required by the Council.

(Amendment adopted by the electors of the city, 11/7/00.)

**Section 501 Department Heads Responsible to City Manager.**

The heads of the administrative departments under the City Manager shall be directly responsible to him/her for the efficient administration of their respective departments. The City Manager may designate acting department heads when necessary to assure the continuity of the City's business. He/She shall have the power, with the approval of the Council, and without reference to personnel provisions of this Charter, to employ experts or consultants to perform work or give advice connected with the departments of the City when he/she finds such work or advice necessary. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 502 Emergency Powers.**

In the case of general conflagrations, riots, floods, or other emergencies menacing life or property, the City Manager shall marshal all the forces of the different departments of the City for the maintenance of the general security, and shall have the power to deputize or otherwise employ without reference to Civil Service such other persons as he/she may consider necessary for the purpose of protecting the City and its residents; provided, that in an emergency in which military control is established under State or National law, the City Manager shall exercise his/her emergency powers subject to lawful military authority. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 503 Noninterference.**

Except for the purpose of inquiry into the affairs of the City and the conduct of any City department, office or agency, the Council or its members shall deal with City officers and employees who are subject to the direction and supervision of the City Manager solely through the City Manager and neither the Council nor its members shall give orders to any officer or employee either publicly or privately nor shall they attempt to coerce or influence the City Manager in respect to any contract or purchase of supplies or any other administrative action or in any manner direct or request the appointment of any person to, or his/her removal from, office by the City Manager or his/her subordinates. Violation of the provisions of this Section by a member of the Council shall be a misdemeanor, conviction of which shall immediately result in forfeiture of the office of the convicted member. (Amendment adopted by the electors of the city, 11/7/00.)

## Article VI
## Administrative Organization

**Section 600 Administrative Organization Authorized.**

The Council shall by ordinance provide the form of organization through which the functions of the City are to be administered. Any combination of duly authorized duties, powers and functions which in the judgment of the Council will provide the most efficient and economical service possible, consistent with the public interest and in keeping with accepted principals of municipal administration, may be authorized by such ordinance. All departments, offices, and agencies of the City except the Office of City Attorney shall be under the direction and supervision of the City Manager and shall be administered by an officer or employee appointed by him/her subject to his/her discretion. With the consent of the Council, the City Manager may serve as the head of one or more departments, offices or agencies or may appoint one person as the head of two or more of them. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 601 Functions and Services Authorized.**

The Council by ordinance, in carrying out the provisions of Section 600, may establish such new departments, offices or agencies or combine or eliminate existing units as are in its judgment desirable.

**Section 602 Continuation of Departments and Offices.**

The departments and offices heretofore created by the Charter, by ordinance or by administrative order, are continued until modified by ordinances adopted pursuant to this Article.

**Section 603 Boards and Commissions Continued.**

The Council shall provide by ordinance for the continuation of the following boards and commissions:

a. The Civil Service Commission, to be a rule making and appellate commission as defined in Section 405 of this Charter.

b. The Library Board, to be an advisory board as defined in Section 403 of this Charter.

c. The Planning Commission, to be a rule making and appellate commission as defined in Section 405 of this Charter.

## Article VII
## Fiscal Administration

**Section 700 Fiscal Year.**

The fiscal year of the City shall commence on the first day of July each year.

**Section 701 Budget Preparation.**

The City Manager and City Council shall prepare a five year strategic and financial plan to be reviewed and updated annually. The annual budget shall correlate to the proposed plan.

At least 45 days prior to the beginning of each fiscal year, the City Manager shall submit to the Council a budget of proposed expenditures and estimated revenues. This shall include a general fund budget in which proposed expenditures shall not exceed estimated revenues accompanied by an explanatory budget message in such form as he/she deems desirable or as the Council may require. For such purpose, the City Manager, on such schedule and under such terms as he/she may prescribe, shall obtain from the head of each department or other agency of the City estimates of revenue and expenditure in such detail and with such supporting plans and data as he/she may require. The City Manager may revise such estimates in any manner he/she deems advisable. The explanatory budget message of the City Manager to the Council shall explain the budget, both in fiscal terms and in terms of work programs, shall outline the proposed financial policies of the City for the ensuing fiscal year, shall propose priorities for capital expenditures, and shall describe other important features of the budget plan. It shall state the reasons for salient changes from the previous year in cost and revenue items, shall explain any major changes in financial policy, and shall enable the Council to compare the prior and current years' revenues and expenditures to which such proposed revenues and expenditures relate. Estimates of revenue shall include surpluses to be carried over from the current year, plus miscellaneous revenues. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 702 Council Hearing and Approval.**

After submission of the budget by the City Manager, the Council shall publish in one or more newspapers of general circulation in the City the following: a general summary of the budget, information as to times and places where copies of the budget are available for inspection by the public, and the time and place for a public hearing on the budget which shall be no less than two weeks after such publication.

After the public hearing, the Council may revise the budget in any manner it finds necessary and shall adopt a budget for the ensuing fiscal year no later than the last day of the current fiscal year.

If it fails to adopt the budget by this date, the amounts appropriated for current operation for the current fiscal year shall be adopted for the ensuing fiscal year on a month-to-month basis, with all items in it prorated accordingly, until such time as the Council adopts a budget for the ensuing fiscal year. Adoption of the budget shall constitute appropriations of the amounts specified therein as expenditures from the funds indicated and shall constitute a levy of the property tax therein proposed. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 703 Budget Revisions.**

At any time during the fiscal year the City Manager may transfer part or all of any unencumbered appropriation balance among programs within a department, office or agency, and upon written request by the City Manager, the Council, after having given one week's notice of intention to do so, may by resolution transfer part or all of any unencumbered appropriation balance from one department, office or agency, to another or may appropriate available funds not included in the budget.

**Section 704** (Repealed by the electors of the city, 11/7/00.)

**Section 705** (Repealed by the electors of the city, 11/7/00.)

**Section 706 Tax Collection.**

The Council shall provide by ordinance for the collection of all taxes and other revenues due the City, either under the direction of the City Manager or by agreement with the County of Solano, the State of California, or any other agency regularly engaged in the collection of a given tax or other revenue.

**Section 707 General Revenues.**

The Council may, by ordinance, provide for any tax, license or permit fee, service charge or other kind of revenue permitted by this Charter or by the Constitution or general laws of the State.

**Section 708** (Repealed by the electors of the city, 11/7/89.)

**Section 709 Capital Outlay Funds.**

The Council shall create such "Capital Outlay Funds" as may be required to finance the improvements specified in the creation of such funds, and each such fund shall remain inviolate to the purposes for which it was created, whether general or specific, unless the use of any such fund for some other purposes is authorized by the affirmative votes of a majority of the voters voting on such a proposition at a general or special election at which such proposition is submitted; provided, that when the purpose for any Capital Outlay Fund has been accomplished, the Council may transfer any unexpended or unencumbered surplus remaining in such fund to any other general or specific Capital Outlay Fund. The money for Capital Outlay Funds may be provided by the apportionment of a specific part of the general tax levy herein provided, by the allotment of all or a portion of other lawfully available revenues, or by the transfer of unencumbered surplus funds not specifically reserved for other purposes.

**Section 710 Unappropriated Reserve Fund.**

The Council shall establish a fund known as the "Unappropriated Reserve Fund" for the purpose of meeting unforeseen contingencies and emergencies of the City, for such amount as may be established by the Council. Said fund shall remain intact except for the affirmative vote of at least five members of the Council, with a statement declaring the reason for its use.

**Section 711 Revolving Funds.**

The Council may by ordinance create revolving funds by the initial appropriation of available money and may require that they shall thereafter be maintained in whole or in part by service charges or other levies appropriate to the purpose of each fund.

**Section 712 Discretionary Funds.**

The Council may from time to time appropriate discretionary funds, not to exceed $1,000 at one time, to be expended at the direction of the City Manager for investigative or other specified purposes, without reference to the auditing provisions of the Charter or any ordinance enacted under it; provided, that the City Manager shall semi-annually and at other times required by Council certify by affidavit that any of such funds expended have been for the purposes specified.

**Section 713   Other Funds.**

The Council shall create by ordinance such other special funds as are required for proper accounting and fiscal management, or required as a condition of receiving funds from any other government.

**Section 714   Control and Use of Public Utilities Funds.**

All funds derived from the operation of any public utility or enterprise by the City shall be deposited in the City treasury, to be managed and expended in accordance with the following policies:

a.   From the proceeds of the operation of the utility or enterprise, there shall first be provisions for payment of all personnel-related costs.

b.   There shall next be provided funds required to redeem and pay interest on any bond issued for that utility or enterprise which will become due and payable during the next fiscal year.

c.   There shall next be provision for current non-personnel operating expenditures, including current maintenance of the physical plant; purchase of materials; supplies and equipment; advertising and the cost of services rendered by other City Departments.

d.   There shall next be provisions for additions and improvements foreseen as necessary to meet future requirements of the public, which is not to exceed in any one year 10 percent of the established value of the utility or enterprise.

e.   There shall next be paid to the general fund an amount equivalent to franchise fees and City taxes as if the utility or enterprise were privately owned, and for the fair value of any commodity or resource received from the City to make possible the operation of the General Fund.

f.   There shall next be provided an adequate reserve to finance replacements required by the normal depreciation of the utility's or enterprise's plant and equipment.

g.   All remaining operating profits, the amount of which has been determined by the City Manager with the approval of the City Council, shall be transferred to the general fund. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 715   Accounting System.**

The City Manager shall direct the establishment and supervise the maintenance of a uniform system of accounting, applicable to all departments and other agencies of the City, conforming to modern and accepted practices of public and governmental accounting, which shall be adequate to account for all money on hand and for all income and expenditures in such detail as will provide complete and informative data concerning the financial affairs of the City, and in such manner as will be readily susceptible to audit and review. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 716   Authorization and Control of Expenditure.**

No expenditure of City funds shall be made except for the purposes and in the manner specified in an appropriation by the Council. The City Manager shall establish and direct such systems of internal control and audit as he/she may find necessary to insure the fulfillment of the purpose of this Section. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 717   Purchasing or Contracts.**

The City Manager shall purchase or contract for the equipment, materials, supplies and services required by the City, for which expenditures have been authorized in the budget or by other action of the Council. The Council shall establish by ordinance the conditions under which competitive bidding shall be required, shall specify those amounts and conditions under which Council approval is required for specific items of purchase, and shall prescribe conditions under which all bids may be rejected and new bids invited. In the case of materials, supplies, equipment, services and public works projects, a preference not to exceed five percent (5%) may be allowed to firms or individuals who regularly maintain a place of business and transact business in the City. The Council shall establish by ordinance a procedure for determining the amount of any such preference and whether a firm or individual is eligible for such preference. (Amendment adopted by the electors of the city, 11/7/89.)

**Section 718   Contracts to Next Lowest Bidder.**

If any contractor fails to enter into any contract awarded to him/her after public advertisement and competitive bidding, the Council may direct the re-advertising of the original proposal or any modification thereof, or may award the contract to the next lowest responsible bidder without re-advertising, provided that such award is not made more than 90 days after the opening of bids. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 719 Conflicts of Interest.**

No officer or employee of the City shall have any financial interest in any contract, sale or transaction to which the City is a party, if having such interest constitutes a violation of the State law. The penalty for violation of this Section shall be as provided by State law.

**Section 720 Inventory and Accountability.**

The City Manager shall establish and maintain an inventory of the City's real and personal property, and shall establish a system for maintaining accountability for such property, and for the orderly disposal of any property for which the City no longer has use. The Council shall establish by ordinance the type or value of items to be regarded as expendable, to be exempt from specific accountability, and may authorize the conditions under which obsolete, damaged or items no longer needed by the City may be disposed of by sale or otherwise.

**Section 721 Independent Audit.**

The Council shall employ at the beginning of each fiscal year an independent public accountant who shall at such time or times as may be specified by the Council and at such other times as he/she shall determine, examine the books, records, inventories and reports of all officers and employees who receive, handle or disburse public funds, and of such other officers, employees or departments as the Council may direct. The Council may direct that such accountant may conduct the independent audit throughout the fiscal year and make reports at intervals required by the Council, but a report for the entire fiscal year shall be filed within 45 days after the closing of the books for said fiscal year, and copies of such reports shall be filed with the Council and with the City Manager, and shall be available for public inspection and review. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 722 Fees.**

All charges, fees, commissions and percentages collected or received by any officer or employee of the City in the performance of any official duty as such officer or employee, or in the performance of the duties of any office held ex officio, shall be the property of the City.

**Section 723 Deposits.**

The City Manager shall arrange for the daily deposit in the City treasury or in designated banks of all funds collected by any department or other agency of the City. Separate records shall be maintained for each separate fund established by this Charter or by ordinance.

**Section 724** (Repealed by the electors of the city, 11/7/00.)

**Section 725 Investments.**

After taking into account the amounts required to meet the current and pending requirements of the City, the City Manager may arrange for the term deposit or investment in securities authorized by law of any balances available for such purpose, and the yield therefrom shall be credited as revenue to each fund from which investments are made.

**Section 726 Bonds.**

The Council shall determine by ordinance which officers and employees shall be subject to group or individual bonds to assure the faithful performance of official duties, shall fix the amount of such bonds, and shall provide payment of the premium of such bonds by the City.

**Section 727 General Bonded Indebtedness.**

Whenever the Council determines that the public interest requires the construction, acquisition, completion, initial equipping, remodeling or repair of any improvement, the cost of which, in addition to the other expenditures of the City, will exceed the income and revenue provided for it in any one year, they may by ordinance submit a proposition to incur an indebtedness evidenced by general obligation bonds for such purpose, and proceed therein as provided in the Constitution and general laws of the State.

**Section 728 Utility Bonded Indebtedness.**

Whenever the electorate, by majority vote of those voting on a proposition submitted at any regular or special municipal election, authorize the acquisition of a public utility by the City, the Council is empowered to finance, by borrowing, the acquisition of privately owned utility properties and/or the purchase of land pertinent thereto, vehicles, machinery, materials and the cost of all construction and property installations for utility purposes. Bonds issued for such purposes shall not be general obligation bonds of the City, but shall be secured by the assets of such utilities only. The Council is also hereby empowered to finance the improvement or extension of any public utility now owned by the City by means of such bonds secured by the assets of the

utility. Resolutions authorizing the issuance of such bonds for acquisition or extension of utilities shall require the affirmative vote of five members of the City Council.

**Section 729 Revenue Bonds.**

Bonds which are payable only out of such revenues as may be specified in such bonds may be issued when the City Council by ordinance shall have established a procedure for the issuance of such bonds. Such bonds payable only out of revenues, shall not constitute all indebtedness or general obligation of the City. (Amendment adopted by the electors of the city, 11/7/89.)

## Article VIII
## Personnel Administration and Civil Service

**Section 800 Appointments and Promotions.**

All appointments and promotions in the competitive civil service shall be based on ability and experience as determined by tests and records of achievement, subject to such more specific standards as set forth in personnel rules as adopted under provisions of Section 803 of this Charter.

**Section 801 The Competitive Civil Service.**

The competitive civil service of the City shall include all offices and employments in the City government except the following which shall be in the unclassified service:

a. Offices required by this Charter to be filled by election or appointment by the City Council.
b. The heads of the separate departments and the executive officers of boards and commissions established by this Charter or by ordinance pursuant thereto.
c. One assistant and one secretary to the City Manager and one secretary to the Mayor.
d. The heads of major divisions of departments and technical, professional or confidential employees when recommended by the City Manager with the concurrence of the City Council and approval of the Civil Service Commission, upon such terms, conditions and limitations as the Civil Service Commission may impose at the time of its approval.
e. Part-time employees who are regularly employed for less than one-third time throughout the year, or who are employed in seasonal employment for not more than 90 days in any consecutive 12 months.
f. Those engaged by contract for special services of a professional, scientific or technical character, or where the service is essentially nonpersonal in character.
g. Employees whose salary is paid, in whole or in part, from funds received by the City of Vallejo by reason of a gift, grant or loan from the federal or state government, or both, or from a private, tax-exempt entity and whose employment is subject to special qualifications, terms or limitations imposed as a condition of receiving such funding not applicable to employees in the competitive civil service of the City. (Amendment adopted by the electors of the city, 6/4/74.)

**Section 802 Provisional Appointments.**

Provisional appointments to positions in the competitive civil service, in the absence of an appropriate eligible list may be made pending the creation of an eligible list, but such provisional appointments may not exceed six months and may not be renewed or extended. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 803 Personnel Ordinance.**

The City Council shall by ordinance provide a modern system of personnel administration, including but not necessarily limited to provisions for:

a. An orderly system of positive recruiting and competitive examinations for entrance to the civil service, free of all political, religious, racial and other considerations not consistent with the merit principle, and properly advertised;
b. A system for promotions within the service based on competitive examinations or demonstrated merit as shown by records of performance and seniority, or some combination thereof;
c. Appointment from among the candidates on the eligible lists;
d. A probationary or working test period of employment for the various job classifications, during which an employee may be removed from the service without right of appeal;
e. The classification of positions according to their duties and responsibilities;
f. Vacation, sick leave and holidays with pay under terms reasonably consistent with prevailing practice in other places of public and private employment and for leaves of absence without pay;

g. Payment for authorized and required overtime work;

h. The conditions under which the City may adopt and support a plan of health and welfare benefits for the employees;

i. The training of employees both in their current duties and for advancement;

j. The setting of performance standards and goals and the evaluation of employees a minimum of every twelve (12) months in relation to such standards and goals, to the end of improved public service and the development of the individual employee;

k. Established procedures for the timely and orderly adjustment of grievances or complaints by an employee or a group of employees concerning the application or interpretation of this Charter, or of ordinances, rules, policies, practices, or procedures affecting the relationship of the City as an employer and the employee or group of employees and for which no other method of solution is authorized or required by this Charter or other applicable provisions of law;

l. The effect of resignation from the competitive service on the status of the employee and his/her rights to reinstatement within a limited period of time;

m. Adequate assurance that the tenure of employees who pass the probationary period shall be permanent, subject to good behavior, the satisfactory performance of duties, the availability of funds and the need for service;

n. The disciplining of employees by suspension with or without pay or by demotion or dismissal by the City Manager or other appropriate appointing authority upon charges duly filed and based on causes named in the ordinance;

o. The hearing of appeals by the Civil Service Commission from action taken under (n) above when such appeal is filed within a specified time and in accordance with specified procedures and the reversal or modification of suspensions, demotions, or dismissals by the Civil Service Commission when in its judgment equity so requires; the decision of the Civil Service Commission in such matters shall be final;

p. Procedure for laying off employees for lack of work or lack of funds in accordance with seniority and quality of service, and or the subsequent preference in reemployment of those laid off;

q. Conferring probationary or permanent status on employees of any other governmental agency or public utility whose functions are assumed by the City;

r. The making of rules by the Civil Service Commission to give effect to this Article and to the ordinance adopted pursuant hereto. (Amendment adopted by the electors of the city, 11/7/89.)

**Section 804**  (Repealed by the electors of the city, 11/7/89.)

**Section 805     Continuation.**

The rules of the Civil Service Commission shall remain effective until modified as authorized by charter or ordinance. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 806     Improper Political Activity.**

No City officer or employee shall engage in or participate in any political activity which the City Council, consistent with law, may proscribe by ordinance, nor shall any City officer or employee engage in or participate in any political activity contrary to any general law applicable to such officer or employee. However, a City employee holding a position in the competitive service and filing as a candidate for a compensated City office shall be required to request, and he/she shall be granted, a leave of absence without pay until the date of the election and until his/her term of office expires if he/she is elected. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 807     Public Employees Retirement System.**

Plenary authority and power are hereby vested in the City, its Council and its several officers, agents, and employees to do and perform any act, or exercise any authority granted, permitted, or required under the provisions of the Public Employees' Retirement Law as it now exists or hereafter may be amended, to enable the City to continue as a contracting City under such retirement system. The Council may terminate any such contract with the Board of Administration of the Public Employees' Retirement System without reducing benefits only under authority granted by ordinance adopted by a majority of the voters of the City voting on such proposition at an election at which such proposal is presented.

**Section 808      Subpoena Power by Civil Service Commission.**

The Civil Service Commission shall have the power to issue subpoenas to compel the production of books, papers and documents and to take testimony on any matter pending before it. If any person subpoenaed fails or refuses to appear or to produce required documents or to testify, a majority of the Commission may find him/her in contempt, and shall have the power to take proceedings in that behalf provided by the general law of the State. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 809**      (Amendment adopted by the electors of the city, 11/4/80; amendment adopted by the electors of the city, 11/7/00; Section 809 repealed by the electors of the city, 6/8/10.)

**Section 810**      (Repealed by vote of the electors of the city, 11/4/80.)

## Article IX
## Franchises

**Section 900      Franchises.**

The Council shall have authority to grant or issue franchises by ordinance for the transaction of business or the providing of services or for the use of public streets or other public places. The Council shall provide by ordinance the procedure for the granting or issuing thereof, the taxes, charges, fees or other compensation to be paid therefor and the penalties for the violation thereof.

**Section 901      Notice of Intention and Public Hearing.**

Not less than fifteen days prior to the granting of any franchise the Council shall by resolution declare its intent to take such action, naming the proposed grantee, the character of the franchise, and the terms and conditions under which it is proposed to be granted. Such resolution shall set the time and place of public hearing at which protests will be heard. If after such hearing the Council shall decide to issue the franchise with any substantive change in grantee or terms and conditions, further public hearings shall be called and held in the same manner for the hearing of objections to such proposed changes.

**Section 902      Term of Franchise.**

Each franchise shall state the term for which it is granted, which shall not exceed 30 years.

**Section 903      Right to Acquire.**

No franchise grant shall be construed to impair or affect the right of the City, acting pursuant to law, to acquire the property of the grantee either by purchase or through the exercise of the right of eminent domain.

## Article X
## Elections

**Section 1000      General Municipal Elections.**

General municipal elections for the election of officers and for such other purposes as the Council may prescribe shall be held in the City on the first Tuesday after the first Monday in November in each odd-numbered year. (Amendment adopted by the electors of the city, 11/6/79: amendment adopted by the electors of the city, 6/4/74.)

**Section 1001      Special Municipal Elections.**

All other municipal elections that may be held by authority of this Charter or of any law shall be known as special municipal elections.

**Section 1002      Procedure for Holding Elections.**

Unless otherwise provided by ordinance, all elections shall be held in accordance with the provisions of the Elections Code of the State of California, as the same now exist or hereafter may be amended, for the holding of municipal elections so far as the same are not in conflict with this Charter.

**Section 1003      Initiative, Referendum and Recall.**

The People of the City reserve to themselves the powers of initiative and referendum and the recall of elected officials, to be exercised in the manner prescribed by general law of the State.

## Article XI
## General Provisions

**Section 1100      Publication.**

The Council shall annually, after competitive bidding, designate an "Official Newspaper" and award to it a contract for the publication of all notices required by this Charter, by ordinance or general law. To qualify as

the official newspaper, it must be published in the City at least weekly and have a verified paid circulation of at least 2,000 copies. The Council may reject bids which it finds to propose rates exceeding those customarily charged by the bidder for the publication of legal notices of a private character. The Council shall by ordinance designate the times and conditions under which notice shall be published of the enactment of ordinances, invitations to bid and awards of contracts, notices of intention to grant franchises, holding of elections and other matters requiring public notice in accordance with this Charter, any ordinance enacted pursuant thereto or general State law. Such ordinance governing publication may modify the times and conditions provided by general State law for any publication, but in the absence of such specific modification or waiver of notice required by State law, such State law shall govern.

**Section 1101 Prevailing Wage.**

Every contract for the construction of public works to be performed at the expense of the City must provide that the contractor, and all sub-contractors shall pay their employees on said work a salary or wage at least equal to the prevailing salary or wage for work of similar character in the locality in which the public work is performed. The contractor or subcontractor shall as a penalty forfeit to the City an amount as provided by State law for each calendar day or portion thereof for each employee paid less than the prevailing salary or wage for any public work done under the contract, and all contracts for public works awarded by the City shall include a stipulation to this effect. (Amendment adopted by the electors of the city, 11/7/89: amendment adopted by the electors of the city, 11/7/00.)

**Section 1102 Gifts in Trust.**

The Council shall have power to accept gifts in trust for the City and control, manage, dispose of and otherwise administer the same in accordance with the terms thereof.

**Section 1103 Oaths and Affirmations.**

Every officer of the City and every member of a policy and rule making and appellate board and commission (including the secretaries thereof) shall have, in all matters relevant to the office, the power to administer oaths and affirmations. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 1104 Suits Against the City.**

No suit shall be brought on any claim for money or damages against the City or any of its agencies unless a demand has first been presented to the appropriate official and rejected in whole or in part. If rejected in part, suit may be brought to recover the whole. Except where a shorter period of time is otherwise provided by law, all claims for damages against the City must be presented within six months after the occurrence or transaction on which the claim is based. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 1105** Repealed by the electors of the city, 11/7/89.)

**Section 1106 Oath of Office.**

Every officer of the City before entering upon the duties of his/her office shall take the oath of office as provided by the Constitution of this State. (Amendment adopted by the electors of the city, 11/7/00.)

**Section 1107 Definitions.**

Unless the provision or the context other requires, as used in this Charter:

a. "Shall" is mandatory and "may" is permissive.
b. "City" is the City of Vallejo and "department," "board," "commission," "agency," "officer" or "employee" is a department, board, commission, agency, officer or employee, as the case may be, of the City of Vallejo.
c. "County" is the County of Solano.
d. "State" is the State of California.
e. "Council" is the City Council of the City of Vallejo.
f. "Member" or "Member of the Council" means any one of the seven members of the Council, including the Mayor.
g. "Officer" means the elective and appointive officers provided in this Charter and the administrative head of any department or agency or major subdivision thereof created by authority of Article VI.
(Amendment adopted by the electors of the city, 11/7/00.)

**Section 1108 Headings.**

Article and Section headings appearing in this Charter are for illustration and information and do not in any manner affect the scope, meaning or intent of the provisions of this Charter.

**Section 1109 Violations.**

The violation of any provisions of this Charter shall be deemed a misdemeanor.

**Section 1110 Validity and Separability.**

If any provision of this Charter or the application thereof to any person or circumstance is held invalid, the remainder of the Charter and the application of such provisions to other persons or circumstances shall not be affected thereby.

**Section 1111 Effective Date.**

For the purposes of nominating and electing the Mayor and members of the City Council, this Charter shall take effect from the time of its approval by the State Legislature. For all other purposes, it shall take effect at 8:00 p.m. on the Tuesday next succeeding the date of the general municipal election after its approval by the Legislature. (Amendment adopted by the electors of the city, 11/7/00.)

**CHARTER FOOTNOTES**

1. Charter was adopted by the voters of the City of Vallejo on June 2, 1970.
2. Charter was ratified by the California Legislature on August 11, 1970.
3. The effective date of Charter is April 27, 1971.

## CHARTER INDEX

—A—

ACCOUNTING SYSTEM
- Establishment, Supervision 715

ADMINISTRATIVE ORGANIZATION
- See COUNCIL

ATTORNEY, CITY
- Appointment, Duties, Qualifications 401
- Removal, Council Vote Required 407

AUDITOR, CITY
- Continuation 716

—B—

BOARDS See COUNCIL

BOND
- Determination 726
- General Obligation 727
- Revenue 729
- Utilities 728

BUDGET
- Council Hearing, Approval 702
- Preparation 701
- Revision 703

—C—

CHARTER
- City Defined 1107
- County Defined 1107
- Definitions 1107
- Effective Date 1111
- Headings Not Exclusive 1108
- Member Defined 1107
- Officer Defined 1107
- Shall, May Defined 1107
- State Defined 1107
- Validity, Separability 1110
- Violation Deemed Misdemeanor 1109

CITY
- Administrative Organization See COUNCIL
- Boundaries 101
- Budget See BUDGET
- Intergovernmental Relations 202
- Name 100
- Powers 200
- Procedures 201
- Rights, Liabilities 102
- Suit Against, Procedure 1104

CIVIL SERVICE
- Appointments, Promotions, Basis 800
- Commission
  - continuation 603
  - rules, continuation 805
  - subpoena power 808
- Officers Excluded 801
- Provisional Appointments 802

COMMISSIONS See COUNCIL

COUNCIL
- Accountant, Employment 721
- Actions By Ordinance 310
- Additional Duties, Conferring 409
- Administrative Organization
  - boards, commissions continued 603
  - departments, offices, continuation 602
  - form 600
  - functions, services authorized 601
- Attorney, City
  - appointment 401
  - removal, vote required 407
- Boards
  - advisory board, creation, purpose 403
  - composition, terms 406
  - creation authority 402
  - member removal, vote required 407
  - policy board, creation, purpose 404
  - rule making, appellate boards, creation, purpose 405
- Bond Determination 726
- Budget Hearting, Approval 702
- Commissions
  - composition, terms 406
  - creation, authority 402
  - member removal, vote required 407
  - policy commissions, creation, purpose 404
- Compensation 305
- Elective Officers 300
- Franchise Issuance Authority 900
- Funds
  - capital outlay 709
  - city
    - deposit 723
    - disbursement 724
  - discretionary 712
  - expenditures, authorization, control 716
  - other 713
  - public utility, control, use 714
  - revolving 711
  - unappropriated reserve 710
- Gifts In Trust, Acceptance 1102

Manager, City
  appointment 400
  interference with prohibited 503
  removal, vote required 407
Mayor See MAYOR
Meetings, Time, Place 308
Membership, Qualifications 301
Newspaper, Official, Designation
  1100
Ordinances
  actions by 310, 311
  adoption 312
  amendment 313
  codification 315
  effective date 316
  enactment 311
  publication 314
  violation, penalty 317
Organization, Powers 307
Personnel System Adoption 803
Property Tax
  assessment 705
  collection 706
  rate fixing 704
Purchasing, Competitive Bidding
  Procedure Establishment 717
Quorum 309
Resolutions, Adoption 312
Revenue Provision 707
Term
  generally 302
  limitation 302.1
Vacancy
  filing 303
  what constitutes 304
Vice Mayor Election 319

—E—

ELECTION
  General 1000
  Holding, Procedure 1002
  Special 1001
EMPLOYEE, CITY
  See also CIVIL SERVICE
    PERSONNEL
  Continuance 104
  Fees, City Property 722
  Political Activity, Improper,
    Prohibited 806
  Retirement System, Authority 807

—F—

FISCAL YEAR
  Designated 700
FRANCHISE
  Granting Authority 900
  Notice of Intention, Hearing 901
  Property Acquisition, City Right
    Not Affected 903
  Term 902
FUNDS, COUNCIL-CREATED See COUNCIL

—G—

GOVERNMENT, CITY
  Form 106

—L—

LAWS
  Continuance 103
LIBRARY BOARD
  Continuation 603

—M—

MANAGER, CITY
  Accounting System, Establishment, Supervision
    715
  Acting Manager, Designation 408
  Appointment, Qualifications 400
  Budget
    preparation 701
    revision 703
  City Property Inventory, Accountability
    720
  Council Interference Prohibited 503
  Department Heads Responsible To 501
  Emergency Powers 502
  Powers, Duties 500
  Purchasing Authority 717
  Removal, Council Vote Required 407
  Securities, Investment 725
MAYOR
  Allowance 306
  Elective Officer 300
  Powers, Duties 318
  Qualifications 301
  Term
    generally 302
    limitation 302.1
  Vacancy
    filing 303
    what constitutes 304

Vice Mayor Election, Duties 319
WP 305

—N—

NEWSPAPER, OFFICIAL
Designation 1100

—O—

OFFICER, CITY
See also CIVIL SERVICE
PERSONNEL
Continuance 104
Council-Appointed
See ATTORNEY-CITY
MANAGER, CITY
Elective See COUNCIL
MAYOR
Fees, City Property 722
Oath, Affirmation, Administration
Authority 1103
Oath of Office 1106
Political Activity, Improper,
Prohibited 806
ORDINANCES See COUNCIL

—P—

PERSONNEL
See also EMPLOYEE, CITY
Civil Service See CIVIL SERVICE
System Adoption, Provisions 803
PLANNING COMMISSION
Continuation 603
PROPERTY
City, Inventory, Accountability 720
Tax
assessment 705
collection 706
rate 704
Transfer 105
PUBLIC WORKS
Contracts, Prevailing Wage 1101
PURCHASING
Contract to Lowest Bidder When 718
Procedure 717

—R—

RECORDS
Transfer 105

—T—

TAX PROPERTY See PROPERTY

—V—

VICE MAYOR See MAYOR

# EXHIBIT H



# About The Police Department

## ABOUT THE POLICE DEPARTMENT

As an integral part of the community we are committed to providing a highly professional, ethical and quality Police service. The proud men and women of the Department are dedicated to maintaining law and order by proactively addressing crime, protecting welfare, property, and the rights of all people. In partnership with the community, community groups and other city departments we continually endeavor to improve our service making Vallejo is a safe place to live, work and visit. We invite you to help us in our mission by supporting your local neighborhood watch and by reporting anything unusual or suspicious you see in your area to the Police immediately.

## MISSION STATEMENT:

To provide professional law enforcement service that enhance, protect, and promote the quality of life for persons residing, visiting, or doing business in the City of Vallejo.

## CORE VALUES:

**Professionalism**

The City of Vallejo Police Department will conduct itself consistent with our professional

and ethical standards of leadership, communication and responsibility. We will adhere to our mission statement and core values and will be accountable for ourselves and our actions and will at all times treat others with honor, respect and compassion.

**Integrity**

We are a responsive, empowered, professional organization with clear priorities. We will uphold our professional reputation with well managed resources and at all times conduct ourselves in a manner that gains the respect and trust of those we serve. We will deliver police services that satisfy customer needs; develop, empower, and sustain a highly professional workforce; employ management systems that improve organizational effectiveness; promote awareness and understanding between the Police Department and its customers, and foster a quality culture throughout the organization.

**Pride**

We have pride and belief in ourselves, our service and in the effective performance of our duties.

We are a premier law enforcement agency that is second to none, championed by our customers and benchmarked by our counterparts. We are a high performance team, focused, flexible, empowered and highly responsive to new challenges.

© 2018 City of Vallejo | All Rights Reserved |
Powered by CivicLive | © 2018 West Corporation

Site Map | Accessibility | Site Policy |
555 Santa Clara Street, Vallejo, CA 94590

# EXHIBIT I



City of
VALLEJO
California

Office of the Mayor · 555 Santa Clara Street · Vallejo · CA · 94590 · 707.648.4377

Dear Sir/Madam,

This letter serves as an endorsement for Mr. John Whitney for a position with your agency.

I have known John for many years. I was one of his training officer's when he first came to the Vallejo Police Department in 2000 and was also his Sergeant when he worked for me in the Patrol Division in 2003.

I was absolutely shocked to learn that John's integrity, ethics and professionalism was doubted and questioned. For as long as I've known John, his integrity has always been above reproach. Those that know John either professionally or socially will say the same.

Frankly, I believe that because John spoke out about a negative culture on the Vallejo Police Department, his reputation was soiled by those that did not want any "dirty laundry" aired. As the Mayor of Vallejo, I look at ethics and integrity as one of the most important characteristics of the command staff of any of our departments. His concerns only go to show that he is mindful of what may become public during any litigation and that early intervention would be prudent.

During bankruptcy, John was demoted from Sergeant to Officer as were several others. Instead of leaving for another department, John stayed with VPD and was ultimately reinstated as a Sergeant in 2012. This speaks volumes of his dedication to the City, its residents and the police department. I could go on and on describing John and his abilities but I believe that his resume and the positive comments from others speak volumes towards his character and his abilities. I am nothing but impressed with John and what he has accomplished in his career. I highly endorse him for a position with your agency.

Should you have any questions, please give me a call at 707.648.4377.

Sincerely,

Bob Sampayan

Bob Sampayan
Mayor